Michael R. Dufour – SBN 290981
mdufour@swlegalgrp.com
SOUTHWEST LEGAL GROUP
22440 Clarendon Street, Suite 200
Woodland Hills, CA 91367
Tel: (818) 591-4300
Fax: (818) 591-4315

W. Craft Hughes (Admitted *Pro Hac Vice*)
craft@hughesellzey.com
Jarrett L. Ellzey (Admitted *Pro Hac Vice*)
jarrett@hughesellzey.com
HUGHES ELLZEY, LLP
Galleria Tower I
2700 Post Oak Boulevard, Suite 1120
Houston, TX 77056
Tel: (713) 554-2377
Fax: (888) 995-3335

*Counsel for Plaintiff and the Putative Class*

# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| MATTHEW SCOTT ROBINSON, individually and on behalf of all others similarly situated,<br><br>  *Plaintiff*,<br><br>v.<br><br>PARAMOUNT EQUITY MORTGAGE, LLC,<br><br>  *Defendant*. | Case No.  2:14-cv-02359-TLN-CKD<br><br>**PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: June 18, 2015<br>Time: 2:00 p.m.<br>Judge: Hon. Troy L. Nunley<br>Action Filed: October 8, 2014 |

## NOTICE OF MOTION

NOTICE IS HEREBY GIVEN that on Thursday, June 18, 2015 at 2:00 p.m., or at such other time as may be set by the Court, Plaintiff Matthew Scott Robinson will move the Court, pursuant to Federal Rule of Civil Procedure 23(e) and L.R. 205, to grant preliminary approval of the class action settlement reached by Plaintiff and Defendant Paramount Equity Mortgage, LLC, in Courtroom 2, 15th Floor, 501 I Street, Sacramento, CA 95814, before the Honorable Troy L. Nunley.

1        The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities,

2   oral argument of counsel, all documents in the record, the Eastern District of California's Procedural

3   Guidance for Class Action Settlements, and any other matter that may be submitted at the hearing.

4   Plaintiff Matthew Scott Robinson ("Plaintiff") will and hereby does move this Court for an order:

5        (1)   preliminarily approving the Stipulation of Settlement and Release Between Plaintiff,

6             on Behalf of the Class, and Defendant ("Stipulation of Settlement");

7        (2)   conditionally certifying the proposed Settlement Class;

8        (3)   appointing Plaintiff as Class Representative;

9        (4)   appointing Plaintiff's Counsel as Class Counsel;

10       (5)   approving the designation of the Settlement Administrator;

11       (6)   approving and directing the distribution and publication of the class notice forms,

12            including the Long Form Notice and Postcard Notice pursuant to the proposed notice

13            plan;

14       (7)   approving the Settlement Website and hyperlink to the Settlement Website; and

15       (8)   scheduling a fairness hearing for final approval of the Settlement.

16       The motion is based on this notice of motion and motion, the attached memorandum of

17  points and authorities, the Stipulation of Settlement, the Declaration of W. Craft Hughes, the

18  proposed order, the pleadings and papers filed in this case, and any oral argument the Court permits.

19  Defendant Paramount Equity Mortgage, LLC does not oppose this motion.

20

21

22

23

24

25

26

27

28

1   Dated:  May 19, 2015.                          Respectfully Submitted,

2                                                  MATTHEW SCOTT ROBINSON,
                                                   individually and on behalf of the Class
3                                                  of similarly situated individuals,

4
                                                   _____/s/ W. Craft Hughes_____
5                                                  W. Craft Hughes (Admitted *Pro Hac Vice*)
                                                   craft@hughesellzey.com
6                                                  Jarrett L. Ellzey (Admitted *Pro Hac Vice*)
                                                   jarrett@hughesellzey.com
7                                                  **HUGHES ELLZEY, LLP**
                                                   Galleria Tower I
8                                                  2700 Post Oak Boulevard, Suite 1120
                                                   Houston, TX 77056
9                                                  Tel: (713) 554-2377
                                                   Fax: (888) 995-3335
10
                                                   Michael R. Dufour – SBN 290981
11                                                 mdufour@swlegalgrp.com
                                                   **SOUTHWEST LEGAL GROUP**
12                                                 22440 Clarendon Street, Suite 200
                                                   Woodland Hills, CA 91367
13                                                 Tel: (818) 591-4300
                                                   Fax: (818) 591-4315
14
                                                   *Counsel for Plaintiff and the Putative Class*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Table of Contents**

I.     INTRODUCTION ..................................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 1

       A.   Plaintiff's Allegations and the Litigation History........................................ 1

       B.   Settlement Discussions, Mediation, and Resolution.................................... 2

III.   TERMS OF THE SETTLEMENT AGREEMENT.............................................................. 4

       A.   Class Definition............................................................................................ 4

       B.   Monetary Relief ........................................................................................... 5

       C.   Release ......................................................................................................... 5

       D.   Notice and Settlement Administration Expenses......................................... 5

       E.   Incentive Award........................................................................................... 5

       F.   Attorney's Fees and Expenses ..................................................................... 6

IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ........................ 6

       A.   The Requirement of Numerosity Is Satisfied............................................... 7

       B.   The Requirement of Commonality Is Satisfied............................................ 7

       C.   The Requirement of Typicality Is Satisfied ................................................ 9

       D.   The Requirement of Adequate Representation Is Satisfied ...................... 10

       E.   The Proposed Settlement Class Meets Rule 23(b)(3) Requirements ....................... 11

            1.   Common Questions of Law and Fact Predominate.......................... 11

            2.   This Class Action Is the Superior Method of Adjudication ............................ 12

V.     THE COURT SHOULD AFFIRM THE APPOINTMENT OF CLASS
       COUNSEL.................................................................................................................. 13

VI.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
       APPROVAL ............................................................................................................... 14

VII.   THE PROPOSED NOTICE PLAN ............................................................................... 16

VIII.  CONCLUSION ........................................................................................................... 18

1

**Table of Authorities**

2

3                                                                    **Page**

**Cases**

4   *Alberto v. GMRI, Inc.,*
        252 F.R.D. 652 (E.D. Cal. 2008) ...........................................................6
5
    *Amchem Prods. Inc. v. Windsor,*
6       521 U.S. 591 (1997)...............................................................6, 11, 12

7   *Andrews Farms v. Calcot, Ltd.,*
        258 F.R.D. 640 (E.D. Cal. 2009) ...........................................................7
8
    *Boring v. Bed Bath & Beyond of Cal. LLC,*
9       2013 WL 6145706 (N.D. Cal. Nov. 21, 2013)....................................14, 15

10  *Chamberlan v. Ford Motor Co.,*
        223 F.R.D. 524 (N.D. Cal. 2004)..........................................................13
11
    *Ching v. Siemens Indus., Inc.,*
12      2013 WL 6200190 (N.D. Cal. Nov. 26, 2013)....................................14, 16

13  *Cordy v. USS-Posco Indus.,*
        2014 WL 212587 (N.D. Cal. Jan. 17, 2014) ......................................14, 16
14
    *Eisen v. Carlisle & Jacquelin,*
15      417 U.S. 156 (1974)...........................................................................16

16  *Estrella v. Freedom Financial Network, LLC,*
        2010 WL 2231790 (N.D. Cal., June 2, 2010) .........................................9
17
    *Hanlon v. Chrysler Corp.,*
18      150 F.3d 1011 (9th Cir. 1998)....................................................8, 9, 10, 11

19  *Hanon v. Dataproducts Corp.,*
        976 F.2d 497 (9th Cir. 1992).................................................................9
20
    *Harris v. Marketing Corp.,*
21      2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ......................................15

22  *Holloway v. Full Spectrum Lending,*
        2007 WL 7698843 (C.D. Cal. June 26, 2007) ......................................12
23
    *In re Syncor ERISA Litig.,*
24      516 F.3d 1095 (9th Cir. 2008)...............................................................14

25  *In re Tableware Antitrust Litig.,*
        484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..........................................14, 15, 16
26
    *Kagan v. Wachovia Sec., L.L.C.,*
27      No. 09-5337 SC, 2012 WL 1109987 (N.D. Cal. Apr. 2, 2012) .........................7

28

**Table of Authorities**
(continued)

Page

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) *cert. denied*, 134 S. Ct. 8......................................................4

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001)........................................................................................12

*Mitchell v. Cate*,
  2014 WL 3689287 (E.D. Cal. July 23, 2014) ................................................................8

*Moshogiannis v. Security Consultants Group, Inc.*,
  2012 WL 423860 (N.D. Cal., Feb. 8, 2012) .................................................................15

*Murray v. GMAC Mortg. Corp.*,
  434 F.3d 948 (7th Cir. 2006)..........................................................................................12

*Otey v. CrowdFlower, Inc.*,
  2014 WL 1477630 (N.D. Cal. 2014) ...............................................................................4

*Parra v. Bashas', Inc.*,
  536 F.3d 975 (9th Cir. 2008)............................................................................................8

*Pierce v. Cnty. of Orange*,
  526 F.3d 1190 (9th Cir. 2008)........................................................................................11

*Tijero v. Aaron Bros., Inc.*,
  2013 WL 6700102 (N.D. Cal. Dec. 19, 2013) ..............................................................15

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996)..........................................................................................12

*Vandervort v. Balboa Capital Corp.*,
  287 F.R.D. 554 (C.D. Cal. 2012) ...................................................................................13

*Vasquez v. Coast Valley Roofing, Inc.*,
  670 F. Supp. 2d 1114 (E.D. Cal. 2009)............................................................................7

*Villegas v. J.P. Morgan Chase & Co.*,
  2012 WL 5878390 (N.D. Cal. Nov. 21, 2012)...............................................................16

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011)......................................................................................7, 8, 10, 11

*West v. Circle K Stores, Inc.*,
  2006 WL 1652598 (E.D. Cal. 2006) .................................................................................6

*Williams v. Costco Wholesale Corp.*,
  2010 WL 761122 (S.D. Cal. Mar. 4, 2010) ...................................................................15

*Wolin v. Jaguar Land Rover North America, LLC*,
  617 F.3d 1168 (9th Cir. 2010).....................................................................................9, 12

**Table of Authorities**
(continued)

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010)..........................................................................................12

**Statutes**

47 U.S.C § 227 .......................................................................................................passim

**Rules**

FED. R. CIV. P. 23(a) ..............................................................................................passim

FED. R. CIV. P. 23(b) ...........................................................................................7, 11

FED. R. CIV. P. 23(c) ................................................................................................16

FED. R. CIV. P. 23(e) .......................................................................................4, 14, 17

FED. R. CIV. P. 23(g) ................................................................................................13

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (2nd ed. 1985)..........................................................14

MANUAL FOR COMPLEX LITIGATION (4th ed. 2004).................................................6, 14

NEWBERG ON CLASS ACTIONS (5th ed. 2014) ...........................................6, 7, 14, 17

## I.      INTRODUCTION

On October 8, 2014, Plaintiff filed his Class Action Complaint against PEM (the "Action") on behalf of a putative class that were injured as a result of the alleged actions of Paramount Equity Mortgage, LLC ("PEM" or "Defendant"). On February 19, 2015, Plaintiff filed his First Amended Class Action Complaint ("FAC") further alleging he and other class members were registered on the National Do Not Call Registry ("DNC") at the time Defendant called them.

PEM is a company in the business of offering refinance loans and purchase home loans. PEM is organized under the laws of the State of California, and maintains its principle place of business at 8781 Sierra College Blvd., Roseville, CA 95661. Plaintiff and PEM are collectively referred to herein as the "Parties." The Parties' Stipulation of Settlement and Release is attached hereto as **Exhibit 1**, and incorporated herein for all purposes ("Stipulation of Settlement"). The proposed notice forms are attached hereto as follows: Settlement Claim Form (**Exhibit 1-A**), Postcard Notice (**Exhibit 1-B**), Long Form Notice (**Exhibit 1-C**), and Opt-Out Form (**Exhibit 1-D**) (collectively the "Settlement Notice Forms"). The Declaration of W. Craft Hughes is attached hereto as **Exhibit 2**, and incorporated herein for all purposes ("Hughes Decl.").

The TCPA limits the use of automatic telephone dialing systems ("ATDS"), artificial or prerecorded voice messages, SMS text messages, and fax machines. As of October 16, 2013, unless the recipient has given prior express written consent, the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line, a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call. The TCPA and FCC rules also generally prohibit any call to a person registered on the National Do Not Call Registry without prior express written consent.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.      Plaintiff's Allegations and the Litigation History

The Action alleges, *inter alia,* that PEM violated the TELEPHONE CONSUMER

1    PROTECTION ACT ("TCPA"), 47 U.S.C. § 227, *et seq.*, by causing unsolicited calls to be made

2    to Plaintiff's and other class member's cellular telephones through the use of an auto-dialer

3    and/or artificial or pre-recorded or artificial voice message. **Ex. 2**, Hughes Decl. ¶ 6; *see also*

4    Dkt. No. 17 at ¶¶ 1-5. Plaintiff alleges that between September 8, 2014 and September 16, 2014,

5    Defendant contacted Plaintiff on his cellular telephone number *via* an ATDS eight times

6    without first obtaining Plaintiff's consent. **Ex. 2**, Hughes Decl. ¶ 7.  Plaintiff further alleges that

7    Defendant's conduct in calling Plaintiff was willful and knowing. *Id.*

8         Defendant's records indicate that Plaintiff was actually called twelve times by

9    Defendant on his cellular telephone. *Id.*  Defendant claims it had Plaintiff's consent to call him

10   on his cell phone, and obtained such consent before the FCC rules changed to require written

11   consent. Defendant claims it did not use a dialer with "a random or sequential number

12   generator" and thus did not use an ATDS.  Finally, Defendant claims it did not use any artificial

13   or prerecorded voice in any call made to Plaintiff.  Defendant does not admit any liability,

14   including liability for violating the TCPA.

15        On October 31, 2014, Defendant filed an Answer to Plaintiffs' Original Class Action

16   Complaint. *See* Dkt. No. 10.  On November 21, 2014, Defendant filed its First Amended Answer to

17   Plaintiff's Original Class Action Complaint. *See* Dkt. No. 11.  On April 2, 2015, Defendant filed its

18   Answer to Plaintiff's FAC. *See* Dkt. No. 21.

19        **B.**     **Settlement Discussions, Mediation, and Resolution**

20        PEM has vigorously denied all of the allegations in their entirety. To date, no class has been

21   certified and no court has made any findings that Defendant engaged in any wrongdoing or in any

22   wrongful conduct or otherwise acted improperly or in violation of any state law, rule or regulation,

23   with respect to the issues presented in this action.

24        In January of 2015, the Parties commenced informal discovery and exchanged confidential

25   documents related to the claims and defenses at issue in this Action. **Ex. 2**, Hughes Decl. ¶ 9.  The

26   Parties achieved a reasonable sense of the strengths and weaknesses of their claims through informal

27   discovery and the exchange of documents.  On February 13, 2015, all Parties and their counsel

28   attended mediation with former Texas District Court Judge, the Hon. Susan Soussan (Ret.), an

1   independent third-party neutral, and thereafter reached a settlement during mediation subject to

2   confirmatory discovery and approval of the Court. *Id*. Class counsel's attorney's fee was never

3   negotiated or discussed until after the tentative settlement of the class' claims was reached through

4   arms-length negotiations and agreed upon by the Parties at mediation. **Ex. 2**, Hughes Decl. ¶ 9.

5          After mediation and the Parties' agreement to settle this Action, Plaintiff's counsel began

6   conducting confirmatory discovery. Specifically, on February 26, 2015 Plaintiff's counsel sent a

7   combine fifty-six (56) Requests for Production of Documents and Interrogatories to Defendant, in

8   addition to the one-hundred and twenty-two (122) previously sent written discovery requests. **Ex. 2**,

9   Hughes Decl. ¶ 10. On April 1, 2015, Plaintiff received and reviewed Defendant's responses and

10  production of documents.  Defendant produced over 33,500 pages of documents and four separate

11  audio recordings, all reviewed and analyzed by Plaintiff's counsel to confirm the claims of the

12  Settlement Class in this Action. *Id*. As a result of what Plaintiff's counsel learned from the documents

13  and information produced by Defendant, Plaintiff's counsel served a third-party subpoena for

14  production of documents to Azevedo Marketing Solutions ("AVS") in Santa Rosa, California, on

15  April 1, 2015 to confirm the representations made by Defendant in its discovery responses. *Id*. On

16  April 20, 2015, Plaintiff's counsel received, reviewed, and confirmed the additional information and

17  documents produced by AVS in response to the subpoena. *Id*. Plaintiff's counsel also received and

18  reviewed supplemental responses to a number of Plaintiff's Interrogatories. *Id*.

19         Armed with this data and information, the Parties were able to engage in informed, arms'-

20  length negotiations of possible settlement alternatives and were able to reach a resolution of their

21  dispute and ultimately entered into a more detailed, formalized settlement agreement. All terms of

22  the Parties' settlement agreement are set forth in the Stipulation of Settlement and release between

23  Plaintiff, on behalf of the class, and PEM. *See* **Ex. 1**.  According to Defendant's records, PEM made

24  telephone calls to approximately 22,998 unique telephone numbers of individuals in the proposed

25  settlement class ("Settlement Class") during the Class Period. *See* **Ex. 1**, Stipulation of Settlement ¶

26  23(a); and **Ex. 2**, Hughes Decl. ¶¶ 14, 29. The "Class Period" is defined as the period from October

27  16, 2013 to May 15, 2015, inclusive, and the Settlement Class includes Plaintiff.  *See* **Ex. 1**

28  Stipulation of Settlement ¶ 8.

III.     **TERMS OF THE SETTLEMENT AGREEMENT**

The Stipulation of Settlement provides an extraordinary result. The value of the benefits provided to the class by this settlement exceeds $700,000. *See* **Ex. 1**, Stipulation of Settlement p. 2. The Stipulation of Settlement provides that PEM will establish a $660,000 non-reversionary common settlement fund from which injured class members will receive a *pro rata* share of up to $200 per class member. *See* **Ex. 1** Stipulation of Settlement ¶¶ 20, 21(a).  Plaintiff therefore requests that the Court grant preliminary approval of the settlement, approve the form and manner of notice to the class, and confirm the appointment of class counsel.

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals. *Otey v. CrowdFlower, Inc.*, 2014 WL 1477630, *4 (N.D. Cal. 2014) ("The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions.").  Rule 23(e) mandates that a court can approve a proposed class action settlement if it is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). The Ninth Circuit generally requires a trial court to evaluate both the fairness of the settlement process and the adequacy of the settlement's terms. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) *cert. denied*, 134 S. Ct. 8 (2013) ("A number of factors guide the district court in making [the settlement fairness] determination, including: 'the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement"). The key terms of the Stipulation of Settlement are briefly summarized as follows:

A.     **Class Definition**

The Settlement Class is defined as "All persons whom Defendant called for marketing purposes on a cellular telephone without prior express written consent from October 16, 2013 to May 15, 2015, and all persons whom Defendant called on a telephone number which was registered on the National Do Not Call Registry without prior express written consent from October 16, 2013 to May 15, 2015." *See* **Ex. 1**, Stipulation of Settlement ¶ 8. This proposed settlement class definition

1   is substantively identical to the class definition contained in Plaintiff's FAC. *See* Dkt. No. 17 at ¶

2   73. The Settlement Class includes Plaintiff, but does not include current employees of Defendant or

3   the Court or its staff.

4        **B.    Monetary Relief**

5        PEM has agreed to establish a $660,000 non-reversionary settlement fund (the "Settlement

6   Fund") from which each member of the Settlement Class who submits a valid claim confirming they

7   received an unsolicited call from PEM to their cellular telephone shall be entitled—after payment of

8   notice and administration costs, attorneys' fees, and an incentive award—to a *pro rata* distribution

9   of up to two-hundred dollars. *See* **Ex. 1**, Stipulation of Settlement ¶ 21(a).

10       No amount of the Settlement Fund shall revert back to Defendant. If any funds remain in

11  the Settlement Fund after all valid claims have been paid, such funds shall be distributed to Privacy

12  Rights Clearinghouse ("PRC"), subject to this Court's approval, as a *cy pres* recipient. *Id.*  PRC is a

13  California nonprofit corporation with 501(c)(3) tax exempt status. *Id.* Their mission is to engage,

14  educate and empower individuals to protect privacy (https://www.privacyrights.org). *Id.*

15       **C.    Release**

16       In exchange for the relief described above, the Defendant, and each of its related and

17  affiliated entities will receive a full release of all claims arising under federal or state law out of any

18  telephone call they received from Defendant (but not including any claims based upon goods or

19  services provided by Defendant), which were brought or could have been brought in the Action,

20  including without limitation all claims for violating the TCPA, 47 U.S.C. § 227 ("the Released

21  Claims"). *See* **Ex. 1**, Stipulation of Settlement ¶ 28 for full release language.

22       **D.    Notice and Settlement Administration Expenses**

23       The Parties have agreed to the appointment of CPT Group, Inc. ("CPT Group") to act as

24  Settlement Administrator and to provide notice to the proposed class in the manner set out below.

25  *See* **Ex. 1**, Stipulation of Settlement ¶ 15. The costs of notice and settlement administration, which

26  are estimated to be approximately $43,000, shall be paid by Defendant. *See* **Ex. 1**, Stipulation of

27  Settlement ¶ 16.

28       **E.    Incentive Award**

1   In recognition of Plaintiff's time and effort serving as class representative, class counsel

2   will petition the Court for an incentive award not to exceed $10,000. *See* **Ex. 1**, Stipulation of

3   Settlement ¶ 25. PEM has agreed not to oppose this request. Should the Court award an incentive

4   award in an amount less than that requested, the difference will remain in the settlement fund to pay

5   valid claims or, if funds remain after paying all valid claims, be given to the *cy pres* recipient. *Id.*

6   **F.      Attorney's Fees and Expenses**

7   Class counsel will petition the Court for reasonable attorneys' fees and reimbursement of

8   costs from the settlement fund. *See* **Ex. 1**, Stipulation of Settlement ¶ 24. Class counsel have agreed

9   to petition the court for no more than $199,500 in attorneys' fees, plus up to $15,000 in costs and

10  expenses, both payable from the Settlement Fund, and PEM has also agreed not to oppose class

11  counsel's request. Should the Court award of fees and expenses in an amount less than that requested,

12  the difference will remain in the settlement fund to pay valid claims or, if funds remain after paying

13  all valid claims, be given to the *cy pres* recipients. *Id.*

14  **IV.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED**

15  Preliminary approval is the first stage of the settlement process, and the court's primary

16  objective at this point is to establish whether to direct notice of the proposed settlement to the class,

17  invite the class's reaction, and schedule a final fairness hearing. *See* NEWBERG ON CLASS ACTIONS,

18  § 3.10 (5th ed. 2014).  Given that the Court will have the opportunity to weigh the settlement's

19  strengths and weaknesses with more information at the final approval hearing, the preliminary

20  approval hearing need not substitute for that level of review. *Alberto v. GMRI, Inc.*, 252 F.R.D. 652,

21  665 (E.D. Cal. 2008) ("[A] full fairness analysis is unnecessary at this stage." (quoting *West v. Circle*

22  *K Stores, Inc.*, 2006 WL 1652598, *9 (E.D. Cal. 2006))).

23  The Court's first step in the process of granting preliminary approval of a settlement is to

24  determine that the proposed settlement class is appropriate for certification. MANUAL FOR COMPLEX

25  LITIGATION § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To

26  certify a class, the plaintiff must demonstrate that the proposed class and proposed class

27  representative meet four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4)

28  adequacy of representation. FED. R. CIV. P. 23(a)(1–4).

1  In addition, a plaintiff seeking class certification must also meet at least one of the

2  requirements of Rule 23(b). FED. R. CIV. P. 23(b); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,

3  2548 (2011). Where, as here, plaintiff seeks certification of a class under Rule 23(b)(3), he must

4  demonstrate "that questions of law or fact common to class members predominate over any questions

5  affecting only individual members, and that a class action is superior to other available methods for

6  fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3); *Kagan v. Wachovia*

7  *Sec., L.L.C.*, No. 09-5337 SC, 2012 WL 1109987, at *4 (N.D. Cal. Apr. 2, 2012). Here, the proposed

8  settlement class meets each of the elements of certification under Rule 23(a) and satisfies the

9  requirements of Rule 23(b)(3).

10  **A.    The Requirement of Numerosity Is Satisfied**

11  The first prerequisite to class certification under Rule 23 is that the "class is so numerous

12  that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1); *see also Andrews Farms v.*

13  *Calcot, Ltd.*, 258 F.R.D. 640, 651 (E.D. Cal. 2009), order clarified on reconsideration, 268 F.R.D.

14  380 (E.D. Cal. 2010) (holding that a class of at least 2,264 members satisfied numerosity requirement

15  for class certification); *see also* NEWBERG ON CLASS ACTIONS, § 3.12 (5th ed. 2014). There is no

16  specific minimum number of proposed class members required to satisfy the numerosity

17  requirement, but generally a class of forty or more members is considered sufficient. *Vasquez v.*

18  *Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (concluding that the

19  presence of 150 class members would satisfy the numerosity requirement).

20  Here, based on information provided by PEM, the Settlement Class consists of 22,998

21  individuals. *See* **Ex. 1**, Stipulation of Settlement ¶ 23(a); **Ex. 2**, Hughes Decl. ¶¶ 14, 29. Accordingly,

22  the proposed class is so numerous that joinder of their claims is impracticable, and the numerosity

23  requirement is easily satisfied.

24  **B.    The Requirement of Commonality Is Satisfied**

25  Second, Rule 23 requires that "there are questions of law or fact common to the class." FED.

26  R. CIV. P. 23(a)(2). Commonality is demonstrated when the claims of all class members "depend

27  upon a common contention," with "even a single common question" sufficing. *Dukes*, 131 S. Ct. at

28  2545, 2557 (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.

1    1998) ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a

2    common core of salient facts coupled with disparate legal remedies within the class.") The common

3    contention must be of such a nature that it is capable of class-wide resolution, and that the

4    "determination of its truth or falsity will resolve an issue that is central to the validity of each one of

5    the claims in one stroke." *Dukes*, 131 S. Ct. at 2545. Moreover, the permissive standard of

6    commonality provides that "[w]here the circumstances of each particular class member vary but

7    retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra*

8    *v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008); *see also Mitchell v. Cate*, No. 2:08-CV-

9    01196 TLN, 2014 WL 3689287, at *6 (E.D. Cal. July 23, 2014) (finding commonality was satisfied

10   when defendant's express policy was utilized on all male inmates).

11          Here, the class shares identical statutory claims under the TCPA premised on Plaintiff's

12   allegations that PEM violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227,

13   *et seq.*, by causing unsolicited calls to be made to Plaintiff's and other class member's cellular

14   telephones through the use of an auto-dialer and/or artificial or pre-recorded or artificial voice

15   message without their prior express written consent. *See* **Ex. 2**, Hughes Decl. ¶ 6.  Plaintiff alleges

16   that PEM made the same unsolicited telephone calls to each class member. These common factual

17   predicates lead to numerous common questions, such as (1) whether PEM violated the TCPA by

18   causing unsolicited calls to be made Class Members' cellular telephones through the use of an auto-

19   dialer and/or artificial or pre-recorded or artificial voice message without their prior express written

20   consent, (2) whether the violations were willful, (3) whether Defendant systematically made

21   telephone calls to consumers who did not previously provide Defendant and/or its agents with prior

22   express written consent to receive such phone calls after October 16, 2013, and (4) whether

23   Defendant systematically made telephone calls to consumers whose telephone numbers were

24   registered with the National Do Not Call Registry, among others. *See* Dkt. No. 17 at ¶ 81.  Any

25   factual variations among class members, such as differences in the number of calls they received,

26   the time of day when a call was received, or at what geographical location the calls were received,

27   have no bearing on these common legal questions. All proposed Class Members share the common

28   interest of determining whether PEM's unsolicited calls were lawful and whether they are entitled

1   to statutory damages under the TCPA for Defendant's allegedly willful violations. *See* **Ex. 2**, Hughes

2   Decl. ¶ 30. Under these circumstances, the requirements that common questions of law and/or fact

3   exist among the Settlement Class members, and will predominate over individual questions, are

4   satisfied for purposes of certifying the proposed Class for settlement. Answering these questions,

5   regardless of the outcome, will resolve the allegations for the whole class "in one stroke," thereby

6   effectuating "class wide resolution." Thus, the proposed settlement class meets the requirement of

7   commonality.

8        **C.**    **The Requirement of Typicality Is Satisfied**

9        Rule 23 next requires that the class representative's claims be typical of those of the putative

10  class she seeks to represent. Fᴇᴅ. R. Cɪᴠ. P. 23(a)(3). The typicality requirement ensures that "the

11  interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land*

12  *Rover North America, LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Typicality is measured under a

13  permissive standard and does not require that the representative's claims be substantially identical,

14  but only that they are "reasonably co-extensive with [the claims] of absent class members…"

15  *Hanlon*, 150 F.3d at 1020. Typicality is present when a defendant acts uniformly toward the class

16  members, where that uniform conduct results in injury to the class members, and where the named

17  plaintiffs suffer a similar injury to that of the class members as a result. *Hanon v. Dataproducts*

18  *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

19        In the instant case, Plaintiff has the same claims and interests as the proposed Settlement

20  Class. Every member of the proposed Settlement Class (including Plaintiff) alleges PEM violated

21  the TCPA by causing unsolicited calls to be made to Plaintiff's and other class member's

22  cellular telephones through the use of an auto-dialer and/or artificial or pre-recorded or

23  artificial voice message without prior express written consent. *See* **Ex. 2**, Hughes Decl. ¶¶ 6, 31;

24  *see also* Dkt. No. 17 at ¶¶ 1-5.  As such, the typicality requirement is satisfied. *See, e.g., Estrella v.*

25  *Freedom Financial Network, LLC*, C-09-03156-SI, 2010 WL 2231790, at *10 (N.D. Cal., June 2,

26  2010) ("[B]ecause plaintiffs' allegations are amenable to proving reliance on a classwide basis, and

27  because [defendant] does not argue that any of its customers received disclosure statements that were

28  materially different from those received by the named plaintiffs, [plaintiffs] are typical of the

1    proposed class.").

2              **D.      The Requirement of Adequate Representation Is Satisfied**

3              Finally, Rule 23(a) requires that the proposed class representative has and will continue to

4    "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). To determine if

5    representation is in fact adequate, the Court must ask "(1) do the named plaintiffs and their counsel

6    have any conflicts of interest with other class members and (2) will the named plaintiffs and their

7    counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Further,

8    where a plaintiff's claims are found to be typical of those of the class, appointing that plaintiff as the

9    class representative will also ensure that interests of the class remain adequately protected. *See*

10   *Dukes*, 131 S. Ct. at 2551 n.5 (discussing how the fulfillment of the typicality requirement usually

11   also supports a finding of adequacy because an adequate representative will have claims that are

12   typical of those of the class.)

13             Here, Plaintiff clearly meets the requirements to be named class representative in this case.

14   *See* **Ex. 2**, Hughes Decl. ¶¶ 32-33.  First, as discussed above, Plaintiff shares the same interests in

15   securing relief for the claims in this case as every other member of the proposed settlement class and

16   there is no evidence of any conflict of interest. Next, Plaintiff has demonstrated his continued

17   willingness to vigorously prosecute this case, has regularly consulted with his counsel, has aided in

18   the prosecution of the litigation, has supplied documents about the claims and allegations made

19   against PEM, has reviewed documents and the proposed settlement, provided his opinions on the

20   terms of the class relief negotiated at mediation and throughout the drafting of the settlement

21   documents, and has indicated his desire to continue protecting the interests of the class though

22   settlement or continued litigation. *See* **Ex. 2**, Hughes Decl. ¶ 33.  As such, he should be appointed

23   as representative of the class.

24             Plaintiff's counsel similarly will continue to adequately protect the interest of the proposed

25   Settlement Class. Proposed class counsel have regularly engaged in major complex litigation,

26   obtained numerous verdicts in civil trials, have extensive experience in consumer TCPA class action

27   lawsuits, and have been appointed class counsel in these efforts. *See, e.g.*, **Ex. 2**, Hughes Decl. ¶¶ 2-

28   4. Moreover, class counsel have diligently investigated, prosecuted, and dedicated substantial

1   resources to the claims in this action, and will continue to do so throughout its pendency. *Id*. at ¶¶ 9-

2   12, 15, 24.  As such, the Plaintiff and proposed class counsel will adequately represent the members

3   of the Settlement Class and their interests.

4   **E.     The Proposed Settlement Class Meets Rule 23(b)(3) Requirements**

5       In addition to meeting the requirements of Rule 23(a), the proposed settlement class must

6   also satisfy one of the three requirements of Rule 23(b) in order to be certified. *Dukes*, 131 S. Ct. at

7   2548. Rule 23(b)(3) provides that a class action can be maintained where: (1) the questions of law

8   and fact common to members of the class predominate over any questions affecting only individuals;

9   and (2) the class action mechanism is superior to the other available methods for the fair and efficient

10   adjudication of the controversy. FED. R. CIV. P. 23(b)(3); *Pierce v. Cnty. of Orange*, 526 F.3d 1190,

11   1197 n.5 (9th Cir. 2008). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever

12   the actual interests of the parties can be served best by settling their differences in a single action."

13   *Hanlon*, 150 F.3d at 1022. Here, common questions of law and fact predominate, and the present

14   class action is the best method of adjudication. *See* **Ex. 2**, Hughes Decl. ¶¶ 26, 30-31.

15   **1.     Common Questions of Law and Fact Predominate**

16       The predominance requirement focuses on whether the proposed class is sufficiently

17   cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623. Predominance exists

18   "[w]hen common questions present a significant aspect of the case and they can be resolved for all

19   members of the class in a single adjudication…" *Hanlon*, 150 F.3d at 1022. Here, as noted above,

20   the common factual and legal questions presented are (1) whether PEM violated the TCPA by

21   causing unsolicited calls to be made Class Members' cellular telephones through the use of an auto-

22   dialer and/or artificial or pre-recorded or artificial voice message without their prior express written

23   consent, (2) whether the violations were willful, (3) whether Defendant systematically made

24   telephone calls to consumers who did not previously provide Defendant and/or its agents with prior

25   express written consent to receive such phone calls after October 16, 2013, and (4) whether

26   Defendant systematically made telephone calls to consumers whose telephone numbers were

27   registered with the National Do Not Call Registry, among others. *See* Dkt. No. 17 at ¶ 81. These

28   common questions can be resolved for all members of the proposed class in a single adjudication,

1   and are the central focus of this class action. Indeed the only even potentially individual issues in

2   this litigation are the amount of statutory damages each class member suffered for TCPA violations.

3   But this issue is insufficient to defeat certification, and the common questions predominate. *See*,

4   *e.g.*,*Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) (holding that

5   individual nature of damages does not defeat class certification).

6                    **2.    This Class Action Is the Superior Method of Adjudication**

7            Finally, certification of this suit as a class action is superior to other methods available to

8   fairly, adequately, and efficiently resolve the claims of the class. Lack of a viable alternative to a

9   class action necessarily means that a class action satisfies the superiority requirement. "[I]f a

10  comparative evaluation of other procedures reveals no other realistic possibilities, this [superiority]

11  portion of Rule 23(b)(3) has been satisfied." *Local Joint Executive Bd. of Culinary/Bartender Trust*

12  *Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (citations omitted). To meet the

13  requirement of superiority, a plaintiff must show that a class action is the "most efficient and

14  effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175–76; *see also Valentino v.*

15  *Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996) (describing a class action as superior

16  when it will reduce the costs inherent in litigation and "no realistic alternative exists" for the class

17  members). "Where recovery on an individual basis would be dwarfed by the cost of litigating on an

18  individual basis, this factor weighs in favor of class certification." *Wolin*, 617 F.3d at 1175.

19  Moreover, the class action mechanism is superior to individual actions in consumer cases with

20  thousands of members as "Rule 23(b)(3) was designed for situations such as this…in which the

21  potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."

22  *Holloway v. Full Spectrum Lending*, No. 06-cv-5975, 2007 WL 7698843, at *9 (C.D. Cal. June 26,

23  2007) (quoting *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006)). Finally, as in

24  this action, when parties have already negotiated a compromise, courts need not focus on issues that

25  could surface at trial, because a finally approved settlement would extinguish the need for one.

26  *Amchem*, 521 U.S. at 620.

27          Here, the proposed settlement class is comprised of approximately 22,998 persons and, if

28  each were to pursue their claims against PEM individually, they would each need to provide nearly

1   the same—if not identical—legal and factual arguments and evidence. *See* **Ex. 1**, Stipulation of

2   Settlement ¶ 23(a); and **Ex. 2**, Hughes Decl. ¶¶ 14, 29.  The result would be thousands of trials at

3   enormous expense to the proposed class members, PEM, and the courts. Comparing the relative

4   small amount of damages each class member seeks to recover—*i.e.*, the portion of their statutory

5   damages under the TCPA—with the costs of actually prosecuting those claims makes clear that

6   individual class members would have little incentive to pursue them on their own. *See Vandervort*

7   *v. Balboa Capital Corp.*, 287 F.R.D. 554, 562 (C.D. Cal. 2012) (holding that a class action is superior

8   to maintaining individual claims for a small amount of damages). Where, as here, individual

9   recoveries for Plaintiff and the proposed class would be small and, but for the class action, would

10  likely not even be pursued, the practical utility of the class action mechanism under federal law is

11  apparent. *See Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 527 (N.D. Cal. 2004).

12          Accordingly, this class action is the superior method for adjudicating the controversy

13  between the Parties, and, as all requirements of class certification under Rule 23 are met, the

14  proposed settlement class should be certified.

15  **V.       THE COURT SHOULD AFFIRM THE APPOINTMENT OF CLASS COUNSEL**

16          Under Rule 23, "a court that certifies a class must appoint class counsel…[who] must fairly

17  and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B). In making this

18  determination, the Court must consider the following attributes of counsel: (1) work in identifying

19  or investigating potential claims; (2) experience in handling class actions or other complex litigation,

20  and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources

21  committed to representing the class. FED. R. CIV. P. 23(g)(1)(A)(i–iv).

22          As discussed above, proposed class counsel have extensive experience in prosecuting

23  similar class actions and other complex litigation. *See* **Ex. 2**, Hughes Decl. ¶¶ 2-4, 9-12, 15, 24. They

24  have been appointed as class counsel in several other class action matters. *Id*. Specific to this case,

25  proposed class counsel have diligently investigated this matter by dedicating substantial resources

26  to the investigation of the claims at issue, which has included exchange of information with PEM's

27  attorneys. *Id*. Accordingly, the Court should confirm the appointment of W. Craft Hughes and Jarrett

28  L. Ellzey of Hughes Ellzey, LLP as class counsel.

1    **VI.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

2            After determining that the proposed settlement class should be certified, this Court must

3    approve any settlement of this class action lawsuit. The procedure for review of a proposed

4    settlement is a well-established two-step process. FED. R. CIV. P. 23(e); *see also* NEWBERG ON CLASS

5    ACTIONS § 13.13 (5th ed. 2014). The first step is a preliminary, pre-notification hearing to ensure

6    that the settlement is not "unacceptable at the outset." *Id*. The Manual for Complex Litigation

7    characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed

8    settlement made by a court on the basis of written submissions and informal presentations from the

9    settling parties. MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.632 (2004).

10           While the Ninth Circuit has expressed a strong judicial policy favoring the voluntary

11   conciliation and settlement of complex class action litigation, *In re Syncor ERISA Litig.*, 516 F.3d

12   1095, 1101 (9th Cir. 2008), it has not specified a particular standard for granting preliminary

13   settlement approval. Nevertheless, courts in this district generally look to four factors in making this

14   determination. Specifically, preliminary approval should be given and notice of the settlement

15   disseminated to class members where "[1] the proposed settlement appears to be the product of

16   serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not

17   improperly grant preferential treatment to class representatives or segments of the class, and [4] falls

18   within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079

19   (N.D. Cal. 2007) (quoting MANUAL FOR COMPLEX LITIGATION (SECOND) § 30.44 (1985)). *See also*

20   *Boring v. Bed Bath & Beyond of Cal. LLC*, No. 12-cv-05259-JST, 2013 WL 6145706, at *7 (N.D.

21   Cal. Nov. 21, 2013) (quoting *Tableware*); *Cordy v. USS-Posco Indus.*, No. 12-cv-00553-JST, 2014

22   WL 212587, at *2 (N.D. Cal. Jan. 17, 2014) (same); *Ching v. Siemens Indus., Inc.*, No. C-11-4838

23   MEJ, 2013 WL 6200190, at *5 (N.D. Cal. Nov. 26, 2013) (same). The proposed settlement here—

24   which achieves the Action's objectives of obtaining both monetary payments for the class and strong

25   prospective relief easily satisfies these four factors.

26           First, the proposed settlement is the product of serious, informed, non-collusive

27   negotiations. *See* **Ex. 1**, Stipulation of Settlement ¶¶ 5-7, 10; **Ex. 2**, Hughes Decl. ¶¶ 9-12, 25.

28   Settlement negotiations are generally found to be non-collusive when reached with the assistance of

a third-party neutral, *see, e.g., Boring*, 2013 WL 6145706, at \*7, and are found to have been informed where the parties exchanged evidence and information prior to negotiations. *See*, *e.g.*, *Moshogiannis v. Security Consultants Group, Inc.*, No. 5:10-CV-05971-EJD, 2012 WL 423860, at \*5 (N.D. Cal., Feb. 8, 2012) (holding that settlement was fair, reasonable, and adequate where, *inter alia*, "the parties conducted a significant amount of informal discovery…"). Here, the Parties engaged in the informal exchange of information and decided to broach the issue of possible settlement. *See* **Ex. 1**, Stipulation of Settlement ¶¶ 5-7; **Ex. 2**, Hughes Decl. ¶¶ 9-12. In fact, all settlement negotiations were conducted after the exchange of information and in the presence of former Texas District Court Judge, the Hon. Susan Soussan (Ret.), an independent third-party neutral, and thereafter reached a settlement during mediation subject to confirmatory discovery and approval of the Court. *Id*. As such, this first factor is satisfied. *See, e.g.*, *Williams v. Costco Wholesale Corp.*, No. 02-cv-2003, 2010 WL 761122, at \*5 (S.D. Cal. Mar. 4, 2010) ("Plaintiff ha[d] sufficient information from investigation and from informal discovery to have a clear view of the strengths and weaknesses of the case and to support the settlement."); *Harris v. Marketing Corp.*, No. 08-cv-5198, 2011 WL 1627973, at \*8 (N.D. Cal. Apr. 29, 2011) ("With the Court's prior rulings as guidance, the parties were in a position to assess the strengths and weaknesses of their arguments and evidence, and make an informed decision about the risks associated with proceeding…to trial.").

Second, there are no obvious deficiencies in the proposed settlement. While Plaintiff believes that the class would have been certified and that he would have ultimately succeeded at summary judgment or trial, balancing the strength of the class's claims against the legal and factual obstacles remaining, Plaintiff and class counsel concluded that accepting the relief afforded by the proposed settlement was in the best interest of the class. *See* **Ex. 1**, Stipulation of Settlement ¶¶ 7, 10; **Ex. 2**, Hughes Decl. ¶¶ 25-26, 28. In light of the monetary relief under the settlement (especially when weighed against continued litigation), the agreement here is not certainly not "obviously deficient." *See, e.g., Tableware*, 484 F. Supp. 2d at 1080 ("Based on [the] risk and the anticipated expense and complexity of further litigation, the court cannot say the proposed settlement is obviously deficient…"); *Tijero v. Aaron Bros., Inc.*, No. C 10-01089-SBA, 2013 WL 6700102, at \*8 (N.D. Cal. Dec. 19, 2013) ("[T]here are no obvious deficiencies. To the contrary, the settlement

1   confers tangible monetary benefits to the class…"); *Ching*, 2013 WL 6200190, at *6 (finding "no

2   obvious deficiencies" in settlement providing monetary relief to class).

3         Third, the settlement provides no preferential treatment to any individual member of the

4   proposed settlement class. Under the settlement, everyone in the class is treated exactly the same:

5   each class member seeking to recover a portion of the Settlement Fund must submit exactly the same

6   claim form, and each class member submitting a valid claim form will receive the same *pro rata*

7   distribution from the Fund. *See* **Ex. 1**, Stipulation of Settlement ¶¶ 19-21; **Ex. 2**, Hughes Decl. ¶¶

8   17-20. While Plaintiff will be seeking from this Court an incentive award in recognition of the time

9   and effort he spent acting as class representative, such awards are common and in no way preclude

10  preliminary approval. *See*, *e.g.*, *Villegas v. J.P. Morgan Chase & Co.*, No. 09-cv-00261, 2012 WL

11  5878390, at *7 (N.D. Cal. Nov. 21, 2012); *Cordy*, 2014 WL 212587, at *1, 3.

12        Finally, this settlement falls well within the range of possible approval. In evaluating this

13  factor, "courts primarily consider plaintiffs' expected recovery balanced against the value of the

14  settlement offer." *Tableware*, 484 F. Supp. 2d at 1080. The monetary relief here places the settlement

15  well within the range of possible approval as discussed more fully (above). The settlement in the

16  present case satisfies each of the four factors generally considered by courts in this district on

17  preliminary approval, this Court should—consistent with the Ninth Circuit's strong judicial policy

18  favoring settlement—preliminarily approve the Settlement Agreement.

19  **VII.   THE PROPOSED NOTICE PLAN**

20        To satisfy the requirements of both Rule 23 and Due Process, "[f]or any class certified under

21  Rule 23(b)(3), the court must direct to class members the best notice practicable under the

22  circumstances, including individual notice to all members who can be identified through reasonable

23  effort." FED. R. CIV. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

24  Rule 23(c)(2)(B) also provides that the substance of the "notice must clearly and concisely state in

25  plain, easily understood language" the nature of the action, the definition of the class to be certified,

26  the class claims and defenses at issue, as well as explain that class members may enter an appearance

27  through counsel if so desired, request to be excluded from the settlement class, and that the effect of

28  a class judgment shall be binding on all class members. FED. R. CIV. P. 23(c)(2)(B). Notice must be

1  "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of

2  the action and afford them an opportunity to present their objections." NEWBERG ON CLASS ACTIONS,

3  § 8.15 (5th ed. 2014). Rule 23 similarly advises that "[t]he court must direct notice in a reasonable

4  manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(1).

5        Here the Parties have agreed on a notice plan, described in **Ex. 1**, Stipulation of Settlement

6  ¶¶ 23, 26-27, that satisfies these requirements (the "Notice Plan"), and Plaintiff respectfully requests

7  this Court approve the Notice Plan. *See* **Ex. 2**, Hughes Decl. ¶¶ 17-20, 22-23. The Notice Plan

8  specifically provides, among other things, the following:

9    • Defendant will incur and pay for all notice costs including the notice costs incurred

10      by the Settlement Administrator. Defendant made telephone calls to approximately

11      22,998 unique telephone numbers in the Settlement Class during the Class Period,

12      and Defendant represents it has been provided mailing addresses by approximately

13      99% of the recipients of those calls. The mailing addresses were obtained by through

14      leads submitted directly to Azevedo Marketing Solutions ("AVS"), then provided to

15      Defendant, which is expected to produce a high percentage of accurate mailing

16      addresses for members of the Settlement Class.

17    • Notice will be made to the Settlement Class through (1) Postcard Notice by Regular

18      Mail, and (2) a Settlement Website published by the Settlement Administrator on the

19      Internet at the URL www.PESettlement.com (or a similar name if that one is not

20      available) ("Settlement Website").  The Settlement Website will remain active for

21      six months after the Settlement Effective Date then automatically expire.

22    • The Settlement Website will set forth a summary of the terms of the settlement, and

23      will state the means by which Settlement Class members may communicate with the

24      Settlement Administrator (including, but not limited to, the Settlement

25      Administrators business name, address, phone number, and e-mail address),

26      instructions on how to make a claim (both electronically and by mail) and deadline(s)

27      associated therewith, instructions on how to Opt-Out of the Settlement and

28      deadline(s) associated therewith, instructions on how to file and objection and

deadline(s) associated therewith, and a toll-free telephone number which Settlement Class members may call to reach the Settlement Administrator for questions.

- The Settlement Website shall also provide, free of charge, a viewable, printable and downloadable copy, in PDF file format, of each of the following documents: this Settlement Agreement; the Complaint; the Answer; the Court's Order preliminarily approving the settlement and certifying the Settlement Class; Settlement Claim Form (**Exhibit 1-A**), Postcard Notice (**Exhibit 1-B**), Long Form Notice (**Exhibit 1-C**), and Opt-Out Form (**Exhibit 1-D**).

Accordingly, the proposed Notice Plan comports with Rule 23 and the requirements of Due Process and should be approved by this Court.

## VIII.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order (1) certifying the proposed Settlement Class; (2) naming Plaintiff as class representative; (3) appointing W. Craft Hughes and Jarrett L. Ellzey of Hughes Ellzey, LLP as class counsel; (4) granting preliminary approval to the Settlement Agreement; (5) approving the proposed Notice Plan; (6) scheduling a final fairness hearing; and (7) granting such further relief the Court deems reasonable and just.

Dated:  May 19, 2015.                              Respectfully Submitted,

                                                   MATTHEW SCOTT ROBINSON,
                                                   individually and on behalf of the Class
                                                   of similarly situated individuals,


                                                   _____/s/ W. Craft Hughes_____
                                                   W. Craft Hughes (Admitted *Pro Hac Vice*)
                                                   craft@hughesellzey.com
                                                   Jarrett L. Ellzey (Admitted *Pro Hac Vice*)
                                                   jarrett@hughesellzey.com
                                                   HUGHES ELLZEY, LLP
                                                   Galleria Tower I
                                                   2700 Post Oak Boulevard, Suite 1120
                                                   Houston, TX 77056
                                                   Tel: (713) 554-2377
                                                   Fax: (888) 995-3335

                                                   Michael R. Dufour – SBN 290981
                                                   mdufour@swlegalgrp.com
                                                   SOUTHWEST LEGAL GROUP
                                                   22440 Clarendon Street, Suite 200
                                                   Woodland Hills, CA 91367
                                                   Tel: (818) 591-4300
                                                   Fax: (818) 591-4315

                                                   *Counsel for Plaintiff and the Putative Class*

1

## CERTIFICATE OF SERVICE

2        I certify that on <u>May 19, 2015</u>, a copy of the foregoing document was filed in accordance

3   with the protocols for e-filing in this district, and will be served pursuant to Rule 5 of the FEDERAL

4   RULES OF CIVIL PROCEDURE on all counsel of record who have consented to electronic notification

5   *via* CM/ECF.

6

7        Michael E. Chase
         mchase@boutinjones.com
8        Bashar S. Ahmad
         bahmad@boutinjones.com
9        Gabrielle D. Boutin
         gboutin@boutinjones.com
         BOUTIN JONES INC.
10       555 Capital Mall, Suite 1500
         Sacramento, CA 95814
11       *Attorneys for Defendant,*
         *Paramount Equity Mortgage, LLC*
12

13                                          _____*/s/ W. Craft Hughes*_____
                                            W. Craft Hughes
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28