1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                           EASTERN DISTRICT OF CALIFORNIA

10

11   MATTHEW SCOTT ROBINSON,                    No.  2:14-cv-02359-TLN-CKD
     individually and on behalf of all others
12   similarly situated,

13                    Plaintiff,                 **ORDER**

14          v.

15   PARAMOUNT EQUITY MORTGAGE,
     LLC,
16
                      Defendant.
17

18

19          The instant case is a putative class action alleging violations of the Telephone Consumer

20   Protection Act ("TCPA"), 47 U.S.C. § 227.  The matter is before the Court on Plaintiff Matthew

21   Scott Robinson's ("Plaintiff") motion for preliminary approval of a class settlement reached with

22   Defendant Paramount Equity Mortgage, LLC ("Defendant").  (ECF No. 22.)  Defendant does not

23   oppose the motion.  (ECF No. 24.)  The Court has carefully considered the proposed settlement.

24   Plaintiff's motion is hereby GRANTED.

25      I.      FACTUAL AND PROCEDURAL BACKGROUND

26          Within the meaning of the TCPA, an automatic telephone dialing system or "auto-dialer"

27   is a device that uses a random or sequential number generator to produce and store telephone

28   numbers, which the auto-dialer then calls.  47 U.S.C. § 227(a)(1).  The TCPA generally prohibits

1

1   anyone from placing calls to a cellular phone using an auto-dialer.  47 U.S.C. § 227(b)(1)(A).

2   The TCPA also generally prohibits anyone from placing calls that use an artificial or prerecorded

3   voice to deliver a message.  *Id.*  Finally, the TCPA and its implementing regulations generally

4   prohibit placing unsolicited calls to anyone registered on the National Do Not Call Registry.  47

5   U.S.C. § 227(c); 47 C.F.R. § 64.1200(c).

6       Plaintiff filed this lawsuit on October 8, 2014, and filed a First Amended Complaint on

7   February 19, 2015.  (Compl., ECF No. 1; First Amended Compl. ("FAC"), ECF No. 17.)

8   Plaintiff alleges that Defendant violated the TCPA by using an auto-dialer to make unsolicited

9   calls to Plaintiff's cellular phone and the cellular phones of other class members, or by causing

10   such calls to be made.  (FAC ¶¶ 94–96, ECF No. 17.)  Plaintiff also alleges that Defendant

11   violated the TCPA by using artificial or prerecorded voices to deliver messages to Plaintiff and

12   other class members.  (FAC ¶¶ 94–96, ECF No. 17.)  In addition, Plaintiff alleges that he was

13   registered on the National Do Not Call Registry when Defendant called him.  (FAC ¶¶24, 24,

14   ECF No. 17.)  Plaintiff alleges that there are thousands of class members who received similar

15   calls.  (FAC ¶¶ 70, 79, ECF No. 17.)  Defendant denies Plaintiff's allegations and does not admit

16   any liability.  (Stip. of Settlement and Release ("Stip. of Settlement") ¶ 37, ECF No. 22-1.)

17       Plaintiff and Defendant (collectively "the Parties") undertook discovery and settlement

18   negotiations, and eventually reached the instant agreement set forth in their Stipulation of

19   Settlement and Release ("Stipulation of Settlement").  (ECF No. 22-1.)  Pursuant to terms set

20   forth in the Stipulation of Settlement, the Parties propose to settle this lawsuit as a class action.

21   (Stip. of Settlement, ECF No. 22-1.)  The proposed settlement class ("Settlement Class") is

22   defined as:

23          All persons whom Defendant called for marketing purposes on a
            cellular telephone without prior express written consent from
24          October 16, 2013 to May 15, 2015, and all persons whom
            Defendant called on a telephone number which was registered on
25          the National Do Not Call Registry without prior express written
            consent from October 16, 2013 to May 15, 2015.
26

27   (Stip. of Settlement ¶ 8, ECF No. 22-1.)  Federal Rule of Civil Procedure 23(e) requires court

28   approval before a class action may be settled. Fed. R. Civ. P. 23(e).  Consistent with that

2

1   requirement, the Parties now seek preliminary approval of their proposed settlement before notice

2   of the proposed settlement is sent to members of the Settlement Class.  (Pl.'s Mot. for Prelim.

3   Approval of Class Action Settlement ("Mot.") 1:23–2:19, ECF No. 22.)

4       **II.        SUMMARY OF THE PROPOSED SETTLEMENT**

5           The Court briefly summarizes the relevant details of the proposed settlement.  The full

6   terms of the proposed settlement are set forth in the Stipulation of Settlement.  (ECF No. 22-1.)

7           A.   The Settlement Class

8           "All persons whom Defendant called for marketing purposes on a cellular telephone

9   without prior express written consent from October 16, 2013 to May 15, 2015, and all persons

10  whom Defendant called on a telephone number which was registered on the National Do Not Call

11  Registry without prior express written consent from October 16, 2013 to May 15, 2015."  (Stip. of

12  Settlement ¶ 8, ECF No. 22-1.)

13          B.   Settlement Fund

14          Defendant agrees to establish a common settlement fund ("Settlement Fund") in an

15  amount "not to exceed $660,000."  (Stip. of Settlement ¶ 19, ECF No. 22-1.)  The Settlement

16  Fund will be used to compensate members of the Settlement Class, to pay an enhancement award

17  to Plaintiff, and to pay for attorney's fees and costs incurred by class counsel.  (Stip. of

18  Settlement ¶ 19, ECF No. 22-1.)

19          C.   Compensation for Class Members

20          All members of the Settlement Class who do not opt out of the settlement and who submit

21  a valid claim will be entitled to a pro rata share of the Settlement Fund, up to $200 per class

22  member.  (Stip. of Settlement ¶¶ 17, 21, ECF No. 22-1.)

23          D.   Attorney's Fees

24          Pursuant to the Stipulation of Settlement, "Defendant shall not object to or oppose an

25  application to the Court by counsel for Plaintiff and the Settlement Class for an award of up to

26  $199,500 in [attorney's] fees, plus up to $15,000 in costs and expenses."  (Stip. of Settlement ¶

27  24, ECF No. 22-1.)

28  ///

1    E.  Enhancement Award to Plaintiff

2          Pursuant to the Stipulation of Settlement, "Defendant shall not object to or oppose an

3    application to the Court by the named Plaintiff for a service payment (enhancement award) of up

4    to $10,000."  (Stip. of Settlement ¶ 25, ECF No. 22-1.)

5    F.  Distribution of Settlement Fund

6          The Settlement Fund will be distributed as follows: First, attorney's fees and costs will be

7    deducted from the Settlement Fund and an enhancement award will be paid to Plaintiff.  (Stip. of

8    Settlement ¶¶ 21, ECF No. 22-1.)  After that, all members of the Settlement Class who do not opt

9    out and who submit a valid claim will receive a pro-rata share of the settlement fund not to

10   exceed $200 per eligible Settlement Class member.  (Stip. of Settlement ¶ 21, ECF No. 22-1.)  If

11   any money remains in the Settlement Fund after all claims have been paid, the remaining funds

12   will be distributed to Privacy Rights Clearinghouse as a *cy pres* recipient.  (Stip. of Settlement ¶

13   21, ECF No. 22-1.)  Privacy Rights Clearinghouse is a California nonprofit with the mission of

14   engaging, educating, and empowering individuals to protect privacy.  (Stip. of Settlement ¶ 21,

15   ECF No. 22-1.)  No amount of the settlement fund will revert back to Defendant.  (Stip. of

16   Settlement ¶ 21, ECF No. 22-1.)

17   G.  Release

18         Under the terms of the settlement, class members who do not opt out will release their

19   claims against Defendant and affiliated persons for telephone calls made in violation of state or

20   federal law that could have been brought in the instant lawsuit.  (Stip. of Settlement ¶ 28, ECF

21   No. 22-1.)  Class members also agree to release any and all rights conferred by California Civil

22   Code § 1542, or any state, federal, or common law equivalent.  (Stip. of Settlement ¶ 29, ECF No.

23   22-1.)  California Civil Code § 1542 states: "A general release does not extend to claims which

24   the creditor does not know or suspect to exist in his or her favor at the time of executing the

25   release, which if known by him or her must have materially affected his or her settlement with the

26   debtor."  Cal. Civ. Code § 1542.

27   ///

28   ///

4

### III.   ANALYSIS

The Ninth Circuit has declared a strong judicial policy favoring the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  But in cases like the instant one, where the parties reach a settlement agreement before any class is certified, courts must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

The first question—should this class be certified?—is controlled by Rule 23(a) and 23(b).  Fed. R. Civ. P. 23(a), (b).  Although the Parties agree that the proposed class should be certified for the purposes of settlement, the Court cannot simply rely on their agreement in the interest of promoting settlement.  Unlike fully litigated class actions, class action settlements do not provide courts with future opportunities "to adjust the class, informed by the proceedings as they unfold." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  As a result, the Court must pay "undiluted, even heightened" attention to the requirements of Rule 23(a) and (b).  *Id.*  The second question—should this proposed settlement be approved?—is guided by Rule 23(e) and a balancing of several factors.  *Staton*, 327 F.3d at 959.  The Court must carefully consider whether the proposed settlement is "fundamentally fair, adequate, and reasonable" while recognizing it is "the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Id.* at 959–60.

The approval of a class action settlement takes place in two phases.  In the first phase, "the [C]ourt preliminarily approve[s] the [s]ettlement pending a fairness hearing, temporarily certifie[s] the Class . . . and authorizes notice to be given to the Class." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008) (some alterations in original).  *See also* Newberg on Class Actions § 13:10 (5th ed.).  In the second phase, after notice is given to class members, the Court will hold a fairness hearing to consider class members' objections to (1) treating the litigation as a class action and (2) the terms of the settlement.  *Alberto*, 252 F.R.D. at 659.  In the instant Order, the Court considers whether the proposed settlement warrants preliminary approval and lays the groundwork for a future fairness hearing.  *Id.*  After the fairness hearing, the Court will make a final determination as to whether the Parties should be allowed to settle the case according to the

1    terms of the Stipulation of Settlement.

2          A.   Certification of the Settlement Class

3          A class must clear two hurdles prior to certification.  First, the class must satisfy the

4    requirements of Rule 23(a), which apply to all class actions.  Fed. R. Civ. P. 23(a).  Second, the

5    class must fit within at least one of the three categories of class action enumerated in Rule 23(b).

6    Fed. R. Civ. P. 23(b); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

7                *i.*     *Rule 23(a)*

8          Rule 23(a) provides four perquisites that must be met before a class may be certified.  Fed.

9    R. Civ. P. 23(a).  Those prerequisites are commonly referred to as numerosity, commonality,

10   typicality, and adequacy of representation.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th

11   Cir. 1998).

12               a.   Numerosity

13         The first Rule 23(a) prerequisite is numerosity.  The class must be "so numerous that

14   joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The numerosity requirement

15   does not impose a precise numerical threshold.  *Gen. Tel. Co. of the Nw. v. Equal Employment*

16   *Opportunity Comm'n*, 446 U.S. 318, 330 (1980).  In the instant case, there are approximately

17   22,998 members of the Settlement Class.  (Hughes Decl. ¶ 14, ECF No. 22-6.)  Plainly, this class

18   is so numerous that joinder of all its members is impracticable.  *Cf. Staton*, 327 F.3d at 953

19   (finding numerosity to be satisfied by a 15,000 member class).

20               b.   Commonality

21         The second Rule 23(a) prerequisite is commonality.  There must be "questions of law or

22   fact that are common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality exists when class

23   members' claims depend upon a common contention that is "capable of classwide resolution—

24   which means that determination of its truth or falsity will resolve an issue that is central to the

25   validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  Class members' claims

26   need not be identical to satisfy the commonality requirement.  Shared legal issues stemming from

27   divergent factual predicates will suffice, as will disparate legal issues stemming from a shared

28   core of pertinent facts.  *Staton*, 327 F.3d at 953.

1   Here, members of the Settlement Class share statutory claims for violations of the TCPA.

2   Plaintiff alleges that Defendant used auto-dialers and/or artificial or prerecorded voices to make

3   unsolicited calls to him and other class members.  (FAC ¶¶ 94–97, ECF No. 17.)  Plaintiff also

4   alleges that Defendant placed some of those calls to people whose phone numbers are listed on

5   the National Do Not Call Registry.  (FAC ¶ 105, ECF No. 17.)  Plaintiff alleges that Defendant

6   knowingly and intentionally violated the TCPA.  (FAC ¶ 98, ECF No. 17.)  Plaintiff's allegations

7   give rise to several common questions, including but not limited to: (1) whether Defendant used

8   an auto-dialer or prerecorded message to make unsolicited calls to class members on their cellular

9   phones, without their written consent; (2) whether Defendant's conduct violated the TCPA; (3)

10  whether Defendant acted willfully; (4) whether Defendant systematically made calls to people

11  whose phone numbers were registered on the National Do Not Call Registry.  These are the

12  operative questions in the instant case, and they are the same for all class members.  Thus, the

13  class action vehicle can "resolve an issue that is central to the validity of each one of the claims in

14  one stroke."  *Dukes*, 564 U.S. at 350.

15                              c.   Typicality

16  The third Rule 23(a) prerequisite is typicality.  The representative plaintiff's claims must

17  be "typical of the claims . . . of the class."  Fed. R. Civ. P. 23(a)(3).  The purpose of the typicality

18  requirement is to ensure that the representative plaintiff and the class members' interests are

19  aligned.  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).  "Under

20  [Rule 23(a)'s] permissive standards, representative claims are 'typical' if they are reasonably co-

21  extensive with those of absent class members; they need not be substantially identical."  *Hanlon*,

22  150 F.3d at 1020.  "The test of typicality is whether other members have the same or similar

23  injury, whether the action is based on conduct which is not unique to the named plaintiffs, and

24  whether other class members have been injured by the same course of conduct."  *Wolin*, 617 F.3d

25  at 1175.

26  In the instant case, the class claims are the same as Plaintiff's—namely, that Defendant

27  unlawfully made unsolicited calls using an auto-dialer and that Defendant called people registered

28  on the National Do Not Call Registry.  There is no indication that Plaintiff's claims are unique in

7

1   any way.  The Settlement Class includes "[a]ll persons whom Defendant called for marketing

2   purposes on a cellular telephone without prior express written consent from October 16, 2013 to

3   May 15, 2015" and "all persons whom Defendant called on a telephone number which was

4   registered on the National Do Not Call Registry without prior express written consent from

5   October 16, 2013 to May 15, 2015."  (Stip. of Settlement ¶ 8, ECF No. 22-1.)  Plaintiff alleges

6   that Defendant called him for marketing purposes on his cellular phone during the relevant period

7   and also called him during the relevant period even though he was registered on the National Do

8   Not Call Registry.  (FAC ¶¶ 1–3, ECF No. 17.)  His claims are typical of the class.

9                          d.  Adequacy of Representation

10         The final Rule 23(a) prerequisite is adequacy of representation.  "[T]he representative

11   parties [must] fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In

12   determining whether that requirement is met, the Court asks two questions: (1) do the

13   representative plaintiff and his counsel have any conflicts of interest with other class members

14   and (2) will the representative plaintiff and his counsel prosecute the action vigorously on behalf

15   of the class?  *Staton*, 327 F.3d at 957 (citing *Hanlon*, 150 F.3d at 1020).  The adequacy of

16   representation requirement "tend[s] to merge" with the commonality and typicality requirements

17   because all three are aimed at the same essential questions: "whether under the particular

18   circumstances maintenance of a class action is economical and whether the named plaintiff's

19   claim and the class claims are so interrelated that the interests of the class members will be fairly

20   and adequately protected in their absence."  *Dukes*, 564 U.S. at 349 n.5.

21         The first question is whether there are conflicts of interest.  Here, Plaintiff asserts that he

22   "shares the same interests in securing relief for the claims in this case as every other member of

23   the proposed settlement class and there is no evidence of any conflict of interest."  (Mot. 10:14–

24   16, ECF No. 22.)  As discussed above, Plaintiff's claims are essentially identical to those of other

25   members of the Settlement Class.  At this time, the Court is unaware of any evidence that

26   suggests a conflict between the interests of class members and the interests of either Plaintiff or

27   his counsel.  The Settlement Class does not appear to include any members whose claims Plaintiff

28   cannot or would not represent fairly and adequately because the class is limited by date range and

8

1    by the type of conduct alleged.  (Stip. of Settlement ¶ 8, ECF No. 22-1.)

2         The second question is whether Plaintiff and his counsel will prosecute the action

3    vigorously.  "Although there are no fixed standards by which 'vigor' can be assayed,

4    considerations include competency of counsel and, in the context of a settlement-only class, an

5    assessment of the rationale for not pursuing further litigation."  *Hanlon*, 150 F.3d at 1021.

6    Plaintiff's counsel has extensive experience in TCPA class action litigation and has often served

7    as class counsel in such cases.  (Hughes Decl. ¶¶ 2–4, ECF No. 22-6.)  Plaintiff's counsel has also

8    devoted significant resources to investigating and prosecuting the case, and Plaintiff assures the

9    Court that his counsel will continue to do so "throughout [the case's] pendency."  (Mot. 11:1,

10   ECF No. 22.)  Plaintiff himself has also assisted his counsel throughout the development of this

11   lawsuit and settlement, dedicating his own time to developing the case against Defendant and

12   involving himself in the mediation and settlement efforts.  (Hughes Decl. ¶ 33, ECF No 22-6.)  At

13   this time, the Court finds no reason to believe that Plaintiff and his counsel are anything other

14   than competent.

15        Why Plaintiff and his counsel elected to settle rather than pursue further litigation is a

16   more difficult question because settlement agreements often "are presented with a 'bargain

17   proffered for approval . . . without the benefit of an adversarial investigation.'"  *Hanlon*, 150 F.3d

18   at 1021 (quoting *Amchem*, 521 U.S. at 621).  Plaintiff's counsel declares that settlement was the

19   right course "given the inherent risk of litigation, the risk relative to class certification, the

20   amount that each Settlement Class member could recover at trial, and the costs of pursuing such

21   litigation."  (Hughes Decl. ¶ 25, ECF No. 22-6.)  Absent any indication to the contrary, that

22   calculation, informed by counsel's extensive experience in TCPA class actions, suffices at this

23   stage.  The adequacy of representation requirement is satisfied.

24             *ii.      Rule 23(b)*

25        A proposed class action must also fit within at least one of the three categories of class

26   actions laid out in Rule 23(b).  Fed. R. Civ. P. 23(b); *Dukes*, 564 U.S. at 345.  Here, Plaintiff

27   seeks certification under Rule 23(b)(3).  (Mot. 11:7–14, ECF No. 22.)  Rule 23(b)(3) provides

28   that a class may be certified if that Court finds that "the questions of law and fact common to

                                        9

1   class members predominate over any questions affecting only individual members, and that a

2   class action is superior to other available methods for fairly and efficiently adjudicating the

3   controversy." Fed. R. Civ. P. 23(b)(3). These requirements are commonly known as

4   predominance and superiority. *See Amchem*, 521 U.S. at 615.

5                                   a.  Predominance

6            Common questions of law and fact must predominate over individual questions. Fed. R.

7   Civ. P. 23(b)(3). The predominance inquiry assesses whether the proposed class is "sufficiently

8   cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "This analysis

9   presumes that the existence of common issues of fact or law have been established pursuant to

10  Rule 23(a)(2)," but it goes a step further and focuses on the relationship between common and

11  individual issues. *Hanlon*, 150 F.3d at 1022. "When common questions present a significant

12  aspect of the case and they can be resolved for all members of the class in a single adjudication,

13  there is clear justification for handling the dispute on a representative rather than on an individual

14  basis." *Id.*

15           Here, the common questions discussed in conjunction with Rule 23(a)(2) also

16  predominate over any individual issues. Again, those common questions include: (1) whether

17  Defendant used an auto-dialer or prerecorded message to make unsolicited calls to class members

18  on their cellular phones, without their written consent; (2) whether Defendant's conduct violated

19  the TCPA; (3) whether Defendant acted willfully; and (4) whether Defendant systematically

20  made calls to people whose phone numbers were registered on the National Do Not Call Registry.

21  At this time, the Court is unaware of any individual questions that may arise in the case other than

22  the calculation of statutory damages. Individual damages calculations cannot defeat certification.

23  *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010); *Blackie v. Barrack*,

24  524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question

25  and does not defeat class action treatment."). Based on the foregoing, the Court finds that

26  common issues predominate.

27  ///

28  ///

b. Superiority

Finally, a Rule 23(b)(3) class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  If there are no viable alternatives to a class action, the class action method is necessarily superior.  *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001).

In the instant case, there are approximately 22,998 members of the proposed settlement class.  (Hughes Decl. ¶ 14, ECF No. 22-6.)  The TCPA fixes statutory damages at $500 for each violation, with the possibility of treble damages if a court finds that a defendant violated the Act "willfully or knowingly."  47 U.S.C. § 227(b)(3); *id.* at § 227(c)(5).  Many class members would have little incentive to prosecute their own claims because the opportunity for recovery pales in comparison to the expense and burden of litigation.  *Cf. Las Vegas Sands*, 244 F.3d at 1163 (recognizing that, in a case involving "claims for relatively small individual sums" of up to $1,330, the disparity between optimal recovery and litigation costs would prevent many class members from proceeding individually).  This fact alone supports certification.  *Wolin*, 617 F.3d at 1176.  Moreover, class action adjudication in the instant case is superior to multifarious lawsuits brought by individual class members across the country, because Defendant is subject to personal jurisdiction in this District and venue is proper.  (Def.'s Answer to FAC ("Answer") ¶¶ 10, 12–13, ECF No. 21.)  Finally, there are not likely to be any difficulties in managing this case as a class action because the proposal is that there will be no trial.  *Amchem*, 521 U.S. at 620. The Court finds that the superiority requirement is met.

B.  Rule 23(e): Fairness, Adequacy, and Reasonableness of the Proposed Settlement

Having concluded that class treatment appears to be warranted, the Court now considers whether the proposed settlement is fair, adequate, and reasonable.  Fed. R. Civ. P. 23(e)(2); *Alberto*, 252 F.R.D. at 664.  In making this inquiry, the Court should weigh the strength of Plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the stage of the proceedings; and the value of the settlement offer.  *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 301 (E.D. Cal. 2011).  "Given that some of these 'fairness' factors cannot be

1  fully assessed until the Court conducts the final approval hearing, 'a full fairness analysis is

2  unnecessary at this stage.'" *Tijero v. Aaron Bros., Inc.,* 301 F.R.D. 314, 324 (N.D. Cal. 2013)

3  (quoting *Alberto,* 252 F.R.D. at 665).

4        Preliminary approval of a settlement and notice to the proposed class is appropriate if 1)

5  the proposed settlement appears to be the product of "serious, informed, noncollusive

6  negotiations," 2) the proposed settlement has no obvious deficiencies, 3) the proposed settlement

7  does not improperly grant preferential treatment to class representatives or segments of the class,

8  and 4) the proposed settlement falls with the range of possible approval. *Collins,* 274 F.R.D. at

9  301–02 (citing *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

10  The Court evaluates those factors in turn.

11                 *i.    Settlement Negotiations*

12        The settlement process began in January 2015 when the Parties commenced informal

13  discovery and exchanged confidential documents related to the case. (Stip. of Settlement ¶ 5,

14  ECF No. 22-1.) According to the Parties, they "achieved a reasonable sense of the strengths and

15  weaknesses of their claims" through that process. (Stip of Settlement ¶ 5, ECF No. 22-1.) In

16  February 2015, the Parties attended mediation with a retired judge who acted as an independent,

17  third-party neutral. (Stip. of Settlement ¶ 5, ECF No. 22-1.) The Parties reached a settlement

18  during that mediation, subject to confirmatory discovery and this Court's approval. (Stip. of

19  Settlement ¶ 5, ECF No. 22-1.) The Parties represent that they did not discuss attorney's fees or

20  costs until after a tentative settlement agreement had been reached regarding the class claims.

21  (Stip. of Settlement ¶ 5, ECF No. 22-1.) The Stipulation of Settlement recounts the confirmatory

22  discovery process as follows:

23          [O]n February 26, 2015 Plaintiff's counsel sent a combine [sic]
        fifty-six (56) Requests for Production of Documents and

24          Interrogatories to Defendant, in addition to the one-hundred and
        twenty-two (122) previously sent written discovery requests. On

25          April 1, 2015, Plaintiff received and reviewed Defendant's
        responses and production of documents. Defendant produced over

26          33,500 pages of documents and four separate audio recordings, all
        reviewed and analyzed by Plaintiff's counsel to confirm the claims

27          of the Settlement Class in this Action. As a result of what
        Plaintiff's counsel learned from the documents and information

28          produced by Defendant, Plaintiff's counsel served a third-party

subpoena for production of documents to Azevedo Marketing
Solutions ("AVS") in Santa Rosa, California, on April 1, 2015 to
confirm the representations made by Defendant in its discovery
responses.   On April 20, 2015, Plaintiff's counsel received,
reviewed, and confirmed the additional information and documents
produced by AVS in response to the subpoena.  Plaintiff's counsel
also received and reviewed supplemental responses to a number of
Plaintiff's Interrogatories.

(Stip. of Settlement ¶ 6, ECF No. 22-1.)  The instant motion for preliminary approval of the class

settlement was filed on May 19, 2015.  (Mot., ECF No. 22.)

On the current record, the proposed settlement appears to be the product of informed,

noncollusive negotiations.  The Parties exchanged information prior to mediation, negotiated their

settlement before a neutral mediator, and did not finalize their proposed settlement until

confirmatory discovery after mediation.  (Stip. of Settlement ¶ 5, ECF No. 22-1.)  "The fact that

the [P]arties reached an agreement before an experienced mediator, while commendable, does not

preclude a detailed review of the settlement terms." *Alberto*, 252 F.R.D. at 663.  Nevertheless, at

the preliminary approval stage, the Court is satisfied that the settlement was not the product of

collusion or uninformed decision making.

*ii.*     *Lack of Obvious Deficiencies*

The proposed settlement provides for a Settlement Fund of up to $660,000.  (Stip. of

Settlement ¶ 19, ECF No. 22-1.)  Under the terms of the proposed settlement, the Settlement Fund

will be used to pay the valid claims of class members who do not opt out, to pay an enhancement

award to Plaintiff, and to pay attorney's fees and costs.  (Stip. of Settlement ¶ 19, ECF No. 22-1.)

To receive payment under the settlement, a class member must submit a valid claim and not

timely opt out of the class.  (Stip. of Settlement ¶ 17, ECF No. 22-1.)  Settlement funds will be

distributed to eligible class members on a pro rata basis up to $200, to be paid out of the

Settlement Fund after attorney's fees, costs, and Plaintiff's enhancement award have been

deducted.  (Stip. of Settlement ¶ 21, ECF No. 22-1.)

There is nothing obviously deficient about how settlement funds will be distributed.

There may be some class members who do not opt out, thereby releasing their claims against

Defendant, but who also do not submit a valid claim form and therefore do not receive payment

under the settlement.  Nevertheless, it is not uncommon for a settlement to require class members to submit valid claims, even though some class members may fail to do so, going uncompensated for releasing their claims.  *E.g.*, *Tijero*, 301 F.R.D. at 319–20.

At this time, the Court has reservations about the attorney's fees award.  Before the Court can conclude that a settlement is fair and adequate, the Court must "carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement."  *Staton*, 327 F.3d at 963.  The Court has discretion to use either the percentage method or the lodestar method to calculate attorney's fees in common fund cases.  *Alberto*, 252 F.R.D. at 667 (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994)).  "As always, when determining [attorney's] fees, the district court should be guided by the fundamental principle that fee awards out of common funds be '*reasonable under the circumstances*.'"  *Id.* at 1296 (emphasis in original) (quoting *State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990)).  In the Ninth Circuit, the benchmark for attorney's fees using the percentage method is 25%.  *Hanlon*, 150 F.3d at 1029.  But the Ninth Circuit has also stated that "[t]he 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases.  Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case."  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

According to the Stipulation of Settlement, attorney's fees and costs may comprise up to 32.5% of the settlement fund, and attorney's fees alone may comprise up to roughly 30%.[1]  Plaintiff's counsel avers that it will seek an award of approximately 28%.  (Hughes Decl. ¶ 34, ECF No. 22-6.)  Although nothing in the current record suggests that the proposed settlement is the product of collusion, neither does the current record provide direct support for either a 25% award or a 28% award.  Plaintiff's counsel declares that it will submit a "separate application for counsel's fees and costs detailing why [it] should be entitled to the additional 3% over the benchmark award of 25% for attorney's fees."  (Hughes Decl. ¶ 34, ECF No. 22-6.)  That

---

[1]     The value of the Settlement Fund will be up to $660,000.  (Stip. of Settlement ¶ 19, ECF No. 22-1.)  The Stipulation of Settlement states that attorney's fees will be up to $199,500 and that costs will be up to $15,000.  (Stip. of Settlement ¶ 24, ECF No. 22-1.)  $199,500 (attorney's fees) + $15,000 (costs) = $214,500.  $214,500 (attorney's fees and costs) ÷ $660,000 (Settlement Fund) = .325 = 32.5%.  Even excluding costs, attorney's fees alone will amount to over 30%.  $199,500 (attorney's fees) ÷ $660,000 (Settlement Fund) ≈ .302 ≈ 30.2%.

1  application should also provide a justification for why the 25% benchmark is itself reasonable.

2          *iii.*      *No Improper Preferential Treatment*

3         The Court also has concerns about the propriety of a $10,000 enhancement award for

4  Plaintiff.  "[N]amed plaintiffs, as opposed to designated class members who are not named

5  plaintiffs, are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977 (emphasis

6  added).  To ensure that an incentive award is not excessive, the Court considers "the number of

7  named plaintiffs receiving incentive payments, the proportion of the payments relative to the

8  settlement amount, and the size of each payment." *Id.*

9         In the instant case, the Stipulation of Settlement contemplates a $10,000 enhancement

10  award for Plaintiff.  (Stip. of Settlement ¶ 25, ECF No. 22-1.)  This award represents 1.5% of the

11  total settlement fund of $660,000.  Plaintiff cites *Villegas v. J.P. Morgan Chase & Co.*, No. 09-

12  cv-00261-SBA, 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012), to illustrate that a $10,000

13  incentive award does not necessarily preclude preliminary approval.  (Mot. 16:8–10, ECF No.

14  22.)  But in *Villegas*, the settlement fund at the preliminary approval stage was worth $9,225,000,

15  so a $10,000 incentive award was only .1% of the settlement fund.  *Villegas*, No. 09-cv-00261-

16  SBA, 2012 WL 5878390, at *2, 7.  Here, the proposed enhancement award constitutes a much

17  greater portion of the overall Settlement Fund, so *Villegas* does not automatically sanction such

18  an award.  The proposed $10,000 enhancement award in this case also appears highly

19  disproportionate to the payments other members of the Settlement Class will receive.  After

20  attorney's fees, litigation costs, and Plaintiff's enhancement award are deducted from the

21  settlement fund, there will be roughly $435,000 in the fund to compensate class members.

22  (Hughes Decl. ¶ 16, ECF No. 22-6.)  If every member of the Settlement Class submits a valid

23  claim, each class member will receive less than $19.[2]  Plaintiff's counsel estimates based on

24  claim-submission rates in past cases that class members who submit valid claims will receive

25  "anywhere [from] $100 or more."  (Hughes Decl. ¶ 17, ECF No. 22-6.)  In either case, there is a

26  large disparity between what class members will receive and what Plaintiff will receive.

27  

28     [2]    The approximate value of the Settlement Fund less attorney's fees, costs, and Plaintiff's proposed enhancement award is $435,000.  (Hughes Decl. ¶ 16, ECF No. 22-6.)  $435,000 ÷ 22,998 class members ≈ $18.91.

1    Plaintiff's counsel declares that Plaintiff has been actively involved in the settlement of the

2    instant case:

3             Plaintiff has regularly consulted with me and my Firm throughout
               this case regarding its progress, and has supplied documents about
4             the claims and allegations made against [Defendant].  He also
               provided his opinions on the terms of the class relief being
5             negotiated at mediation and throughout the drafting of the
               settlement documents. . . . Plaintiff is the proposed Class
6             Representative for the Settlement Class and has actively and
               aggressively represented the proposed class throughout this
7             litigation.  Plaintiff was always available to provide his input on the
               litigation, gather evidence and other information that proved helpful
8             to the prosecution.  The enhancement is fair given the amount of the
               overall settlement and the time and effort Plaintiff spent on
9             assisting our Firm in the prosecution of this case.

10   (Hughes Decl. ¶ 33, ECF No. 22-6.)  At the time specified in the Conclusion of this Order,

11   Plaintiff should present specific evidence of his efforts in this case justifying the large

12   discrepancy between his enhancement award and the payments to unnamed class members.

13   *Alberto*, 252 F.R.D. at 669.  Although the size of the enhancement award does not prevent

14   preliminary approval of the settlement, it may be subject to reduction before final approval.

15                            *iv.      Range of Possible Approval*

16            In order to determine whether a settlement falls within the range of possible approval, a

17   court must focus on "substantive fairness and adequacy" and "consider [the] expected recovery

18   balanced against the value of the settlement offer."  *Collins,* 274 F.R.D. at 302.

19            In the instant case, potential recovery is fixed by the TCPA: $500 per violation, with

20   treble damages for knowing and willful violations.  47 U.S.C. § 227(b)(3); *id.* at 227(c)(5).  The

21   most a class member will receive under the settlement is $200.  (Stip. of Settlement ¶ 21, ECF

22   No. 22-1.)  Although there is a disparity between the potential recovery and the value of the

23   settlement, Plaintiff's counsel avers that risks associated with class certification and ongoing

24   litigation justify lower compensation in exchange for certainty of recovery.  (Hughes Decl. ¶ 25,

25   ECF No. 22-6.)  At the preliminary approval state, the Court finds that the proposed settlement

26   falls within the range of possible approval.

27   ///

28   ///

16

C. <u>The Notice Plan</u>

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon,* 150 F.3d at 1025.  For a class certified under Rule 23(b)(3), the Court must direct to class members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  That notice must "clearly and concisely state, in plain, easily understood language," the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the class member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).

Here, the Notice Plan satisfies all of those requirements.  Defendant represents that it has mailing addresses for roughly 99% of the settlement class.  (Stip. of Settlement ¶ 23(a), ECF No. 22-1.)  After the instant Order issues, Defendant will provide those names and addresses to the Settlement Administrator.  (Stip. of Settlement ¶ 23(a), ECF No. 22-1.)  The Settlement Administrator will then perform any necessary address updates and verifications, and mail the Postcard Notice (ECF No. 22-3) to each of the identified settlement class members.  (Stip. of Settlement ¶ 23(a), ECF No. 22-1.)  In addition to directing notice by mail, the Settlement Administrator will publish a website at www.PESettlement.com (or a similar name if the proposed name is unavailable) that will set forth a summary of the settlement terms and provide instructions for how class members can opt out, make claims, object, or otherwise participate in the settlement.  (Stip. of Settlment ¶ 23(b), ECF No. 22-1.)  The settlement website will also provide PDFs of the Stipulation of Settlement (ECF No. 22-1), complaint (ECF No. 17), answer (ECF No. 21), claim form (ECF No. 22-2), opt-out form (ECF No. 22-5), long-form notice (ECF No. 22-4), and the instant Order.  (Stip. of Settlement ¶ 23(b), ECF No. 22-1.)

The Postcard Notice adequately sets forth the details of the case and settlement.  It describes what the case is about, who is included, the settlement terms, relevant dates, and how a class member may appear before the Court.  (Postcard Notice, ECF No. 22-3.)  The Postcard

Notice also sets forth in bold typeface that class members must submit a valid claim form to be compensated and that the settlement will affect class members' legal rights.  (Postcard Notice, ECF No. 22-3.)

The documents that will be sent to members of the Settlement Class currently contain placeholder dates highlighted in yellow, to be updated after the instant Order issues.  (*E.g.*, Postcard Notice, ECF No. 22-3.)  Some of those dates are highlighted placeholders with respect to the month and day, but have an out-of-date year that is not highlighted in yellow.  For example, the opt-out form currently states "This Request for Exclusion from the Settlement Form Must Be Postmarked No Later Than [DATE], 2015."  (Opt-out Form, ECF No. 22-5.)  The Parties shall review all documents that will be sent to members of the Settlement Class to ensure that the dates indicated are accurate and comply with the deadlines set forth in the Conclusion of the instant Order.  Subject to compliance with that requirement, the Court finds that the Notice Plan is the best practicable method under the circumstances.

## IV. CONCLUSION

For the reasons set forth above, the Court hereby orders as follows:

1. The Settlement Class is provisionally certified for settlement purposes in accordance with the terms of the Parties' Stipulation of Settlement.

2. If the Stipulation of Settlement does not receive the Court's final approval, should final approval be reversed on appeal, or should the Stipulation of Settlement otherwise fail to become effective for any reasons, the Court's provisional grant of class certification shall be vacated without further action or order of the Court.

3. The Stipulation of Settlement is preliminarily approved and will be subject to final approval at the fairness hearing.

4. Plaintiff Matthew Scott Robinson is appointed as class representative for the purpose of carrying out the Parties' Stipulation of Settlement.

5. W. Craft Hughes and Jarrett L. Ellzey of Hughes Ellzey, LLP are appointed as class counsel for the purpose of carrying out the Parties' Stipulation of Settlement.

6. CPT Group, Inc. is approved and appointed as Settlement Administrator.

18

7. The Parties shall update all Notice Plan documents to ensure that the dates indicated are accurate and comply with the deadlines set forth herein.  Provided the Parties comply with that directive, the Court approves, as to form and content, the Notice Plan.

8. Consistent with ¶ 27 of the Parties' Stipulation of Settlement, any objections to the proposed settlement must be served on the Parties and filed with the Court no later than 90 days from the date the Postcard Notices are first mailed.

9. Members of the Settlement Class who object to the proposed settlement are not required to appear at the final fairness hearing.  However, persons wishing to be heard orally in opposition to the approval of the proposed settlement are required to state in their written objection whether they intend to appear at the hearing. Persons who intend to object to the proposed settlement and desire to present evidence at the final fairness hearing must include in their written objections the identity of any person from whom they may obtain a declaration and exhibits they intend to introduce into evidence at the final fairness hearing.

10. Plaintiff shall file motions for attorney's fees and litigation expenses no later than 14 days before the date by which members of the Settlement Class must file and deliver their written objections to the proposed settlement.  Plaintiff shall file documentation supporting his enhancement award at the same time.

11. The Parties shall meet and confer as to possible dates for the final fairness hearing and file with the Court a proposed date within 30 days of the entry of this Order.

12. The Court may continue the final fairness hearing without further notice to members of the Settlement Class.

13. The Parties shall file briefing within 30 days of the entry of this Order on whether the Parties provided notice required by 28 U.S.C. § 1715.

///

///

///

IT IS SO ORDERED.


DATED:   JANUARY 09, 2017


Troy L. Nunley
United States District Judge