1  Michael R. Dufour – SBN 290981
   mdufour@swlegalgrp.com
2  SOUTHWEST LEGAL GROUP
   22440 Clarendon Street, Suite 200
3  Woodland Hills, CA 91367
   Tel: (818) 591-4300
4  Fax: (818) 591-4315

5  W. Craft Hughes (Admitted *Pro Hac Vice*)
   craft@hughesellzey.com
6  Jarrett L. Ellzey (Admitted *Pro Hac Vice*)
   jarrett@hughesellzey.com
7  HUGHES ELLZEY, LLP
   Galleria Tower I
8  2700 Post Oak Boulevard, Suite 1120
   Houston, TX 77056
9  Tel: (713) 554-2377
   Fax: (888) 995-3335

10

11  *Counsel for Plaintiff and the Putative Class*

12              **IN THE UNITED STATES DISTRICT COURT**

13              **EASTERN DISTRICT OF CALIFORNIA**

14                  **SACRAMENTO DIVISION**

15  MATTHEW SCOTT ROBINSON, individually )  Case No.  2:14-cv-02359-TLN-CKD
    and on behalf of all others similarly situated, )
16                                              )  **UNOPPOSED MOTION AND**
            *Plaintiff*,                        )  **MEMORANDUM IN SUPPORT OF**
17                                              )  **FINAL APPROVAL OF**
    v.                                          )  **CLASS ACTION SETTLEMENT**
18                                              )
    PARAMOUNT EQUITY MORTGAGE, LLC, )  Date: July 13, 2017
19                                              )  Time: 2:00 p.m.
            *Defendant*.                        )  Judge: Hon. Troy L. Nunley
20                                              )  Action Filed: October 8, 2014

21

22                      **NOTICE OF MOTION**

23          NOTICE IS HEREBY GIVEN that on July 13, 2017 at 2:00p.m. (PST), or at such other

24  time as may be set by the Court, Plaintiff Matthew Scott Robinson will respectfully move the Court,

25  pursuant to Federal Rule of Civil Procedure 23(e) and L.R. 205, for entry of an unopposed Order

26  granting final approval of the Parties' Settlement as fair, reasonable and adequate for the Class, and

27  to occur at the Robert T. Matsui United States Courthouse, Courtroom 2, 15th Floor, 501 I Street,

28  Sacramento, CA 95814, before the Honorable Troy L. Nunley. In support of this unopposed Motion,

Plaintiff relies on the accompanying Memorandum of Law, the Declaration of W. Craft Hughes, any papers filed in reply, and all other proceedings in this litigation.

Accordingly, Plaintiff respectfully requests that this Motion be granted and that the Court enter the Parties' proposed Final Approval Order and Entry of Judgment.  The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, oral argument of counsel, all documents in the record, and any other matter that may be submitted at the hearing. Defendant Paramount Equity Mortgage, LLC does not oppose this motion.

Dated:  June 1, 2017.                                  Respectfully Submitted,

MATTHEW SCOTT ROBINSON,
individually and on behalf of the Class
of similarly situated individuals,


_____/s/ W. Craft Hughes_____
W. Craft Hughes (Admitted *Pro Hac Vice*)
craft@hughesellzey.com
Jarrett L. Ellzey (Admitted *Pro Hac Vice*)
jarrett@hughesellzey.com
**HUGHES ELLZEY, LLP**
Galleria Tower I
2700 Post Oak Boulevard, Suite 1120
Houston, TX 77056
Tel: (713) 554-2377
Fax: (888) 995-3335

Michael R. Dufour – SBN 290981
mdufour@swlegalgrp.com
**SOUTHWEST LEGAL GROUP**
22440 Clarendon Street, Suite 200
Woodland Hills, CA 91367
Tel: (818) 591-4300
Fax: (818) 591-4315

*Counsel for Plaintiff and the Class*

## **Table of Contents**

I.  INTRODUCTION ..................................................................................................1

II.  SUMMARY OF THE ACTION......................................................................2

    A.  Plaintiff's Allegations and the Litigation History......................................2

    B.  Settlement Discussions, Mediation, and Resolution .................................3

III.  THE SETTLEMENT AND NOTICE PROGRAM.........................................5

    A.  Class Definition.........................................................................................7

    B.  Monetary Relief, Notice, and Settlement Administration Expenses..........7

    C.  Release .....................................................................................................10

    D.  Incentive Award ......................................................................................10

    E.  Attorney's Fees and Expenses ................................................................11

IV.  ARGUMENT.................................................................................................11

    A.  The Class Should Be Certified For Final Approval Of The Settlement ...................11

        1.  The Elements of Rule 23(a) Are Satisfied.....................................12

        2.  The Requirements of Rule 23(b)(3) Are Also Met ........................16

    B.  Final Approval of the Settlement is Warranted ......................................18

        1.  The Settlement is Procedurally Fair ..............................................19

        2.  The Settlement is Substantively Fair.............................................20

V.  CONCLUSION ..............................................................................................21

1

## **Table of Authorities**

2

3                                                                                                    **Page**

**Cases**

4   *Amchem Prods. Inc. v. Windsor*,
        521 U.S. 591 (1997) ...................................................................................................11, 16, 18
5

    *Andrews Farms v. Calcot, Ltd.*,
6        258 F.R.D. 640 (E.D. Cal. 2009) .................................................................................12

7   *Boring v. Bed Bath & Beyond of Cal. LLC*,
        2013 WL 6145706 (N.D. Cal. Nov. 21, 2013)............................................................19
8
    *Chamberlan v. Ford Motor Co.*,
9        223 F.R.D. 524 (N.D. Cal. 2004).................................................................................18

10  *Ching v. Siemens Indus., Inc.*,
        2013 WL 6200190 (N.D. Cal. Nov. 26, 2013).............................................................21
11
    *Cordy v. USS-Posco Indus.*,
12       2014 WL 212587 (N.D. Cal. Jan. 17, 2014) ...............................................................21

13  *Eisen v. Carlisle & Jacquelin*,
        417 U.S. 156 (1974)........................................................................................................8
14
    *Estrella v. Freedom Financial Network, LLC*,
15       2010 WL 2231790 (N.D. Cal., June 2, 2010) .............................................................14

16  *Hanlon v. Chrysler Corp.*,
        150 F.3d 1011 (9th Cir. 1998)..............................................................................passim
17
    *Hanon v. Dataproducts Corp.*,
18       976 F.2d 497 (9th Cir. 1992).......................................................................................14

19  *Harris v. Marketing Corp.*,
        2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ............................................................20
20
    *Holloway v. Full Spectrum Lending*,
21       2007 WL 7698843 (C.D. Cal. June 26, 2007) ............................................................18

22  *In re Tableware Antitrust Litig.*,
        484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................20, 21
23
    *Lane v. Facebook, Inc.*,
24       696 F.3d 811 (9th Cir. 2012) *cert. denied*, 134 S. Ct. 8....................................................7

25  *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
        244 F.3d 1152 (9th Cir. 2001).....................................................................................17
26
    *Mitchell v. Cate*,
27       2014 WL 3689287 (E.D. Cal. July 23, 2014) .............................................................13

28

**Table of Authorities**
(continued)

Page

*Moshogiannis v. Security Consultants Group, Inc.*,
    2012 WL 423860 (N.D. Cal., Feb. 8, 2012) ....................................................19

*Murray v. GMAC Mortg. Corp.*,
    434 F.3d 948 (7th Cir. 2006)...........................................................................18

*Otey v. CrowdFlower, Inc.*,
    2014 WL 1477630 (N.D. Cal. 2014) .................................................................7

*Parra v. Bashas', Inc.*,
    536 F.3d 975 (9th Cir. 2008)...........................................................................13

*Pierce v. Cnty. of Orange*,
    526 F.3d 1190 (9th Cir. 2008)........................................................................16

*Reibstein v. Rite Aid Corp.*,
    761 F. Supp. 2d 241 (E.D. Pa. 2011) .............................................................12

*Tijero v. Aaron Bros., Inc.*,
    2013 WL 6700102 (N.D. Cal. Dec. 19, 2013) ...............................................21

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996)..........................................................................17

*Vandervort v. Balboa Capital Corp.*,
    287 F.R.D. 554 (C.D. Cal. 2012) ...................................................................18

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F. Supp. 2d 1114 (E.D. Cal. 2009)..........................................................12

*Villegas v. J.P. Morgan Chase & Co.*,
    2012 WL 5878390 (N.D. Cal. Nov. 21, 2012)...............................................21

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ...............................................................12, 13, 15, 16

*Williams v. Costco Wholesale Corp.*,
    2010 WL 761122 (S.D. Cal. Mar. 4, 2010) ...................................................20

*Wolin v. Jaguar Land Rover North America, LLC*,
    617 F.3d 1168 (9th Cir. 2010)...................................................................14, 17

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010)........................................................................17

**Statutes**

47 U.S.C § 227 ............................................................................................passim

**Rules**

**Table of Authorities**
(continued)

Page

FED. R. CIV. P. 23(a) ....................................................................... 11, 12, 14, 16

FED. R. CIV. P. 23(b) ................................................................................... 16

FED. R. CIV. P. 23(b)(3) ......................................................................... 12, 16

FED. R. CIV. P. 23(c) ................................................................................ 8, 9

FED. R. CIV. P. 23(e) ............................................................................. 7, 9, 11

FED. R. CIV. P. 23(g) ................................................................................... 16

**Other Authorities**

NEWBERG ON CLASS ACTIONS (5th ed. 2014) ........................................... 9, 12

1

2

## MEMORANDUM OF LAW IN SUPPORT OF

## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

3

4

5

6

7

8

9

10

11

12

13

Plaintiff Matthew S. Robinson ("Plaintiff"), on behalf of himself and the Class,[1] respectfully submits this memorandum of law in support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement.  The Parties' Stipulation of Settlement and Release is attached hereto as **Exhibit 1**, and incorporated herein for all purposes ("Stipulation of Settlement" or "Settlement"). On January 10, 2017, the Court entered an Order[2] granting preliminary approval of the Settlement and directed that notice of the Settlement be given to the Class, among other things. In accord with that Order, the Notice was issued to the Class and more than 300 valid claims from Class members were received. Plaintiff now moves the Court to enter the Parties proposed Final Approval Order and Entry of Judgment, certifying the Class and granting final approval of the Settlement as being fair, reasonable and adequate, pursuant to FED. R. CIV. P. 23.[3]

14

## I.    INTRODUCTION

15

16

17

18

19

20

Plaintiff and Defendant Paramount Equity Mortgage, LLC ("PEM" or "Defendant") reached an agreement to settle this class action litigation for a $660,000 non-reversionary cash payment. The proposed Settlement warrants final approval. The result here is not only fair, reasonable and adequate but is commendable given the circumstances. This Settlement will provide a certain, tangible and immediate benefit to Class Members and will avoid the costs, uncertainties and risk of receiving no redress attendant with continued litigation.

21

22

23

24

No class member decided to opt-out, and not a single objection was received at the time of this filing, June 1, 2017, three weeks after the May 10, 2017 deadline to object. *See* Decl. of Tim Cunningham (**Ex. 3**). This is not a coupon settlement. The Defendant is not providing an unwanted product to the class members at an illusory inflated price. The class

25

26

[1] Unless otherwise stated, all capitalized terms used in this Memorandum are as defined in the Stipulation of Settlement filed 05/19/2015; *see also* Dkt. No. 22-1 (Stipulation of Settlement).

27

[2] *See* Dkt. No. 27 (Order Granting Preliminary Approval, dated 01/10/2017) (the "Order").

28

[3] Plaintiff and his counsel have filed a separate motion contemporaneously herewith for approval of attorneys' fees and costs to Plaintiff's Counsel and a Service Award to Plaintiff.

1  members who submitted valid claims will receive $200/each from the Common Fund. Any

2  amount not cashed will go to the *cy pres* recipient, Privacy Right Clearinghouse (PRC), to help

3  achieve its mission of protecting individual privacy rights. Stip. Settlement, ¶ 21, **Ex. 1**.

## II.  SUMMARY OF THE ACTION

5          On October 8, 2014, Plaintiff filed his Class Action Complaint on behalf of a putative

6  class that were injured as a result of the alleged actions of Paramount Equity Mortgage, LLC

7  ("PEM" or "Defendant") (the "Action"). On February 19, 2015, Plaintiff filed his First

8  Amended Class Action Complaint ("FAC") alleging violations of the TELEPHONE CONSUMER

9  PROTECTION ACT, 47 U.S.C. §§ 227, *et seq.* ("TCPA") because he and other class members

10  were registered on the National Do Not Call Registry ("DNC") at the time Defendant called

11  them. The TCPA limits the use of automatic telephone dialing systems ("ATDS"), artificial

12  or prerecorded voice messages, SMS text messages, and fax machines. As of October 16,

13  2013, unless the recipient has given prior express written consent, the TCPA and Federal

14  Communications Commission ("FCC") rules under the TCPA generally prohibit any call

15  made using automated telephone equipment or an artificial or prerecorded voice to an

16  emergency line, a hospital emergency number, a physician's office, a hospital/health care

17  facility/elderly room, a cellular telephone, or any service for which the recipient is charged

18  for the call.  The TCPA and FCC rules also generally prohibit any call to a person registered

19  on the National Do Not Call Registry without prior express written consent.

20          **A.      Plaintiff's Allegations and the Litigation History**

21          The Action alleges, *inter alia,* that PEM violated the TELEPHONE CONSUMER

22  PROTECTION ACT ("TCPA"), 47 U.S.C. § 227, *et seq.*, by causing unsolicited calls to be made

23  to Plaintiff's and other class member's cellular telephones through the use of an auto-dialer

24  and/or artificial or pre-recorded or artificial voice message.[4] **Ex. 2**, Hughes Decl. ¶ 6; *see also*

25  Dkt. No. 17 at ¶¶ 1-5. Plaintiff alleges that between September 8, 2014 and September 16, 2014,

26  Defendant contacted Plaintiff on his cellular telephone number *via* an ATDS eight times

27

28          [4] The Declaration of W. Craft Hughes is attached hereto as **Exhibit 2**, and incorporated herein for all purposes ("Hughes Decl.").

1   without first obtaining Plaintiff's consent. **Ex. 2**, Hughes Decl. ¶ 7.  Plaintiff further alleges that

2   Defendant's conduct in calling Plaintiff was willful and knowing. *Id.*

3      Defendant's records indicate that Plaintiff was actually called twelve times by

4   Defendant on his cellular telephone. *Id.*  Defendant claims it had Plaintiff's consent to call him

5   on his cell phone, and obtained such consent before the FCC rules changed to require written

6   consent.  Defendant claims it did not use a dialer with "a random or sequential number

7   generator" and thus did not use an ATDS.  Finally, Defendant claims it did not use any artificial

8   or prerecorded voice in any call made to Plaintiff.  Defendant does not admit any liability,

9   including liability for violating the TCPA.

10      On October 31, 2014, Defendant filed an Answer to Plaintiffs' Original Class Action

11   Complaint. *See* Dkt. No. 10.  On November 21, 2014, Defendant filed its First Amended Answer to

12   Plaintiff's Original Class Action Complaint. *See* Dkt. No. 11.  On April 2, 2015, Defendant filed its

13   Answer to Plaintiff's FAC. *See* Dkt. No. 21.

14      **B.     Settlement Discussions, Mediation, and Resolution**

15      PEM has vigorously denied all of the allegations in their entirety. To date, no class has been

16   certified and no court has made any findings that Defendant engaged in any wrongdoing or in any

17   wrongful conduct or otherwise acted improperly or in violation of any state law, rule or regulation,

18   with respect to the issues presented in this action.

19      In January of 2015, the Parties commenced informal discovery and exchanged confidential

20   documents related to the claims and defenses at issue in this Action. **Ex. 2**, Hughes Decl. ¶ 9.  The

21   Parties achieved a reasonable sense of the strengths and weaknesses of their claims through informal

22   discovery and the exchange of documents.  On February 13, 2015, all Parties and their counsel

23   attended mediation with former Texas District Court Judge, the Hon. Susan Soussan (Ret.), an

24   independent third-party neutral, and thereafter reached a settlement during mediation subject to

25   confirmatory discovery and approval of the Court. *Id.* Class counsel's attorney's fee was never

26   negotiated or discussed until after the tentative settlement of the class' claims was reached through

27   arms-length negotiations and agreed upon by the Parties at mediation. **Ex. 2**, Hughes Decl. ¶ 9.

28      After mediation and the Parties' agreement to settle this Action, Plaintiff's counsel began

1    conducting confirmatory discovery. Specifically, on February 26, 2015 Plaintiff's counsel sent a

2    combined fifty-six (56) Requests for Production of Documents and Interrogatories to Defendant, in

3    addition to the one-hundred and twenty-two (122) previously sent written discovery requests. **Ex. 2**,

4    Hughes Decl. ¶ 10. On April 1, 2015, Plaintiff received and reviewed Defendant's responses and

5    production of documents.  Defendant produced over 33,500 pages of documents and four separate

6    audio recordings, all reviewed and analyzed by Plaintiff's counsel to confirm the claims of the

7    Settlement Class in this Action. *Id*. As a result of what Plaintiff's counsel learned from the documents

8    and information produced by Defendant, Plaintiff's counsel served a third-party subpoena for

9    production of documents to Azevedo Marketing Solutions ("AVS") in Santa Rosa, California, on

10   April 1, 2015 to confirm the representations made by Defendant in its discovery responses. *Id*. On

11   April 20, 2015, Plaintiff's counsel received, reviewed, and confirmed the additional information and

12   documents produced by AVS in response to the subpoena. *Id*. Plaintiff's counsel also received and

13   reviewed supplemental responses to a number of Plaintiff's Interrogatories. *Id*.

14          The Parties were able to engage in informed, arms'-length negotiations of possible

15   settlement alternatives and were able to reach a resolution of their dispute and ultimately entered

16   into a more detailed, formalized settlement agreement. All terms of the Parties' settlement agreement

17   are set forth in the Stipulation of Settlement and release between Plaintiff, on behalf of the class, and

18   PEM. *See* **Ex. 1**.  According to Defendant's records, PEM made telephone calls to approximately

19   22,998 unique telephone numbers of individuals in the proposed settlement class ("Settlement

20   Class") during the Class Period. *See* **Ex. 1**, Stipulation of Settlement ¶ 23(a); and **Ex. 2**, Hughes

21   Decl. ¶¶ 14, 29. The "Class Period" is defined as the period from October 16, 2013 to May 15, 2015,

22   inclusive, and the Settlement Class includes Plaintiff. *See* **Ex. 1** Stipulation of Settlement ¶ 8.

23          On May 19, 2015, Plaintiff filed a motion for preliminary approval (Dkt. 22) of the

24   Settlement, along with a copy of the Parties' Settlement Agreement.[5] On January 10, 2017, the Court

25          [5] The Settlement will benefit a Class consisting of "All persons whom Defendant called for marketing purposes
26   on a cellular telephone without prior express written consent from October 16, 2013 to May 15, 2015, and all persons
     whom Defendant called on a telephone number which was registered on the National Do Not Call Registry without
27   prior express written consent from October 16, 2013 to May 15, 2015." **Ex. 1** Stipulation of Settlement ¶ 8 (Dkt. 22-
     1). If approved, the Settlement will resolve all claims asserted by the Parties. *Id*. at ¶¶ 9, 13, 44. The Settlement provides
     that Authorized Claimants will receive equal shares of the Net Settlement Amount, consistent with the Plan of
28   Allocation. *Id.* ¶¶ 17-18.

1  entered the Order (Dkt. 27) (the "Preliminary Approval Order"), which preliminarily: certified the

2  Class, approved the Settlement, and appointed Plaintiff as the Class Representative, Plaintiff's

3  Counsel as Class Counsel and CPT Group, Inc. ("CPT") as the Claims Administrator. Dkt. 27 at p.

4  18. The Preliminary Approval Order also, among other things, approved the proposed form of Notice

5  and Claim Form and directed that the Claims Administrator provide Notice of the Settlement to the

6  Class. *Id.* at pp. 18-20.

7  **III.     THE SETTLEMENT AND NOTICE PROGRAM**

8           The Stipulation of Settlement provides an excellent result. The value of the benefits

9  provided to the class by this settlement exceed $700,000. *See* **Ex. 1**, Stipulation of Settlement p. 2.

10  The Stipulation of Settlement provides that PEM will establish a $660,000 non-reversionary

11  common settlement fund from which injured class members will receive a *pro rata* share of up to

12  $200 per class member. *See* **Ex. 3**, Cunningham Decl. ¶ 17; **Ex. 1** Stipulation of Settlement ¶¶ 20,

13  21(a).

14           The Parties agreed to the appointment of CPT Group, Inc. ("CPT Group")[6] to act as

15  Settlement Administrator and to provide notice to the proposed class in the manner set out below.

16  *See* **Ex. 1**, Stipulation of Settlement ¶ 15. CPT Group has extensive experience providing notice of

17  class actions and administering class action settlements. **Ex. 3**, Cunningham Decl. ¶ 2. CPT received

18  the Court-approved text for the Notices from Counsel on January 16, 2017, prepared a draft of the

19  Notice for mailing to the class members, and received approval from the parties. **Ex. 3**, Cunningham

20  Decl. ¶ 3. A copy of the Notice is attached as Exhibit A to **Ex. 3**, Cunningham Decl.

21           The costs of notice and settlement administration, which are estimated to be approximately

22  $43,000, shall be paid by Defendant. *See* **Ex. 1**, Stipulation of Settlement ¶ 16. As of May 24, 2017,

23  there were Four (4) invalid responses due to duplicate submissions from the same class member,

24  CPT did not receive any requests for exclusion, and there are no objections to the Settlement. **Ex. 3**,

25  Cunningham Decl. ¶¶ 13-15.

26           On January 20, 2017, CPT received a data file from Counsel containing class members'

27

28           [6] The Declaration of CPT's case manager, Tim Cunningham, is attached hereto as **Exhibit 3**, and incorporated herein for all purposes ("Cunningham Decl.").

1   names and last-known mailing addresses ("Class Data List".) The finalized Class Data List contained

2   Twenty-Two Thousand Nine Hundred Ninety-Eight (22,998) Class Members. **Ex. 3**, Cunningham

3   Decl. ¶ 4.

4        On January 25, 2017 CPT caused a National Change of Address (NCOA) search to be

5   performed in attempt to update the class list of addresses as accurately as possible. A search of this

6   database provides updated addresses for any individual who has moved in the previous four years

7   and has notified the U.S. Postal Service of his or her change of address. **Ex. 3**, Cunningham Decl. ¶

8   5. On January 26, 2017, CPT performed a Skip Trace using Accurint, one of the most comprehensive

9   address databases available. It utilizes hundreds of different databases supplied by credit reporting

10  agencies, public records, and a variety of other national databases. The Skip Trace was performed

11  for 52 class members for whom address information was not available. Of these 52 class members,

12  an updated address was returned for 22 class members prior to the initial mailing. **Ex. 3**, Cunningham

13  Decl. ¶ 6.

14       On February 9, 2017, the Notices were mailed via U.S. first-class mail to all identified class

15  members, except for the 30 individuals remaining for whom an address was not found after skip

16  trace effort. The Notice provided a summary of the settlement, the date of the final hearing, the case

17  website address, and also the toll-free case hotline number. **Ex. 3**, Cunningham Decl. ¶ 7.

18       On May 8, 201 7, CPT posted an update to the case website informing Class Members that

19  the final hearing date was continued to July 13, 2017 at 2:00p.m. **Ex. 3**, Cunningham Decl. ¶ 8. As

20  of the date of CPT's declaration, One Hundred Seventy-Two (172) Notices were returned by the

21  Post Office, none of which had a forwarding address. **Ex. 3**, Cunningham Decl. ¶ 9. CPT performed

22  a Skip Trace on all returned mail with no affixed forwarding address. **Ex. 3**, Cunningham Decl. ¶ 9.

23       As a result of either Skip Trace or re-mail requests from Class Members, a total of One

24  Hundred Sixty-Six (166) Notices were re-mailed to date. A total of Eleven (11) Notices were

25  ultimately undeliverable, as no better address was provided from the Post Office or obtained through

26  Skip Trace. **Ex. 3**, Cunningham Decl. ¶ 10. As of the date of CPT's declaration, a total of Three

27  Hundred Thirty-Seven (337) responses were received by CPT, of which Three Hundred Thirty-Three

28  (333) are claims. **Ex. 3**, Cunningham Decl. ¶ 11. Of the Three Hundred Thirty-Three (333) claims,

1   One (1) is late and Fourteen (14) are currently deficient. **Ex. 3**, Cunningham Decl. ¶ 12.

2           The law favors settlement, particularly in class actions and other complex cases where

3   substantial resources can be conserved by avoiding lengthy trials and appeals. *Otey v. CrowdFlower,*

4   *Inc.*, 2014 WL 1477630, *4 (N.D. Cal. 2014) ("The Ninth Circuit maintains a 'strong judicial policy'

5   that favors the settlement of class actions.").   Rule 23(e) mandates that a court can approve a

6   proposed class action settlement if it is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).

7   The Ninth Circuit generally requires a trial court to evaluate both the fairness of the settlement

8   process and the adequacy of the settlement's terms. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819

9   (9th Cir. 2012) *cert. denied*, 134 S. Ct. 8 (2013) ("A number of factors guide the district court in

10  making [the settlement fairness] determination, including: 'the strength of the plaintiffs' case; the

11  risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class

12  action status throughout the trial; the amount offered in settlement; the extent of discovery completed

13  and the stage of the proceedings; the experience and views of counsel; the presence of a

14  governmental participant; and the reaction of the class members to the proposed settlement"). The

15  key terms of the Stipulation of Settlement are briefly summarized and listed below.

16          **A.      Class Definition**

17          The Settlement Class is defined as "All persons whom Defendant called for marketing

18  purposes on a cellular telephone without prior express written consent from October 16, 2013 to

19  May 15, 2015, and all persons whom Defendant called on a telephone number which was registered

20  on the National Do Not Call Registry without prior express written consent from October 16, 2013

21  to May 15, 2015." *See* **Ex. 1**, Stipulation of Settlement ¶ 8. This proposed settlement class definition

22  is substantively identical to the class definition contained in Plaintiff's FAC. *See* Dkt. No. 17 at ¶

23  73. The Settlement Class includes Plaintiff, but does not include current employees of Defendant or

24  the Court or its staff.

25          **B.      Monetary Relief, Notice, and Settlement Administration Expenses**

26          PEM agreed to establish a $660,000 non-reversionary settlement fund (the "Settlement

27  Fund") from which each member of the Settlement Class who submits a valid claim confirming they

28  received an unsolicited call from PEM to their cellular telephone shall be entitled—after payment of

1   notice and administration costs, attorneys' fees, and an incentive award—to a *pro rata* distribution

2   of up to two-hundred dollars. *See* **Ex. 1**, Stipulation of Settlement ¶ 21(a). A total of Three Hundred

3   Thirty-Three (333) valid claims were submitted, assuming the late and deficient claims are cured

4   and accepted. **Ex. 3**, Cunningham Decl. ¶ 16. The Settlement Fund is $660,000.00 and will have the

5   following anticipated deductions: attorneys' fees of $199,500.00, litigation costs of $15,000.00, and

6   the class representative enhancement payment of $10,000.00. **Ex. 3**, Cunningham Decl. ¶ 17.

7   Settlement administration expenses of $43,000.00 will be paid separately by Defendant. **Ex. 3**,

8   Cunningham Decl. ¶ 17.

9          Pursuant to the terms of the settlement, the Net Settlement Fund, currently estimated to be

10   $435,500.00, shall be divided by the number of valid claimants, up to a maximum individual

11   settlement payment of $200.00 per Eligible Settlement Class Member. **Ex. 3**, Cunningham Decl. ¶

12   18. Based on settlement calculations at this time, each valid claimant shall receive an estimated

13   $200.00 each. The total estimated claimed amount of $66,600.00 represents 15.29% of the Net

14   Settlement Fund available to the Class. The remaining unclaimed funds in the Settlement Fund shall

15   be distributed to the non-profit corporation Privacy Rights Clearinghouse ("PRC")[7] as a *cy pres*

16   recipient. Their mission is to engage, educate and empower individuals to protect privacy. **Ex. 3**,

17   Cunningham Decl. ¶ 19. CPT's charge for services rendered to perform its duties and responsibilities

18   pursuant to the terms of the settlement is $43,000.00. This includes all costs incurred to date, as well

19   as estimated costs involved in completing the settlement. **Ex. 3**, Cunningham Decl. ¶ 20.

20          To satisfy the requirements of both Rule 23 and Due Process, "[f]or any class certified under

21   Rule 23(b)(3), the court must direct to class members the best notice practicable under the

22   circumstances, including individual notice to all members who can be identified through reasonable

23   effort." FED. R. CIV. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

24   Rule 23(c)(2)(B) also provides that the substance of the "notice must clearly and concisely state in

25   plain, easily understood language" the nature of the action, the definition of the class to be certified,

26   the class claims and defenses at issue, as well as explain that class members may enter an appearance

27

28          [7] PRC is a California nonprofit corporation with 501(c)(3) tax exempt status. *Id.* Their mission is to engage, educate and empower individuals to protect privacy (https://www.privacyrights.org).

1  through counsel if so desired, request to be excluded from the settlement class, and that the effect of

2  a class judgment shall be binding on all class members. FED. R. CIV. P. 23(c)(2)(B). Notice must be

3  "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of

4  the action and afford them an opportunity to present their objections." NEWBERG ON CLASS ACTIONS,

5  § 8.15 (5th ed. 2014). Rule 23 similarly advises that "[t]he court must direct notice in a reasonable

6  manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(1).

7       Here the Parties agreed on a notice plan, described in **Ex. 1**, Stipulation of Settlement ¶¶

8  23, 26-27, that satisfies these requirements (the "Notice Plan"), and Plaintiff respectfully requests

9  this Court approve the Notice Plan. *See* **Ex. 3**, Cunningham Decl. ¶ 3; **Ex. 2**, Hughes Decl. ¶¶ 17-

10  20, 22-23. The Notice Plan specifically provides, among other things, the following:

11       •       Defendant paid for all notice costs including the notice costs incurred by the

12  Settlement Administrator. Defendant made telephone calls to approximately 22,998 unique

13  telephone numbers in the Settlement Class during the Class Period, and Defendant

14  represents it has been provided mailing addresses by approximately 99% of the recipients

15  of those calls. The mailing addresses were obtained by through leads submitted directly to

16  Azevedo Marketing Solutions ("AVS"), then provided to Defendant, which is expected to

17  produce a high percentage of accurate mailing addresses for members of the Settlement

18  Class.

19       •       Notice was made to the Settlement Class through (1) Postcard Notice by

20  Regular Mail, and (2) a Settlement Website published by the Settlement Administrator on

21  the Internet at the URL www.PESettlement.com (or a similar name if that one is not

22  available) ("Settlement Website"). The Settlement Website will remain active for six

23  months after the Settlement Effective Date then automatically expire.

24       •       The Settlement Website set forth a summary of the terms of the settlement,

25  and will state the means by which Settlement Class members may communicate with the

26  Settlement Administrator (including, but not limited to, the Settlement Administrators

27  business name, address, phone number, and e-mail address), instructions on how to make a

28  claim (both electronically and by mail) and deadline(s) associated therewith, instructions

1   on how to Opt-Out of the Settlement and deadline(s) associated therewith, instructions on

2   how to file and objection and deadline(s) associated therewith, and a toll-free telephone

3   number which Settlement Class members may call to reach the Settlement Administrator

4   for questions.

5       •       The Settlement Website shall provides, free of charge, a viewable, printable

6   and downloadable copy, in PDF file format, of each of the following documents: this

7   Settlement Agreement; the Complaint; the Answer; the Court's Order preliminarily

8   approving the settlement and certifying the Settlement Class; Settlement Claim Form

9   (**Exhibit 1-A**), Postcard Notice (**Exhibit 1-B**), Long Form Notice (**Exhibit 1-C**), and Opt-

10  Out Form (**Exhibit 1-D**).

11      The notice program implemented in this case resulted in a 1.45% total claim rate.   These

12  figures are consistent with the recent observation of the Third Circuit that "consumer claim filing

13  rates rarely exceed seven percent, even with the most extensive notice campaigns." *Sullivan v. DB*

14  *Investments, Inc.,* 667 F.3d 273, 329 n. 60 (3d Cir.2011) (en banc) (quoting finding of special

15  master).  *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 296 (6th Cir. 2016), *cert. denied*

16  *sub nom. Blackman v. Gascho*, 137 S. Ct. 1065, 197 L. Ed. 2d 176 (2017), and *cert. denied sub nom.*

17  *Zik v. Gascho*, 137 S. Ct. 1065, 197 L. Ed. 2d 176 (2017).  Accordingly, the number of claims falls

18  within the generally acceptable range.

19      **C.**     **Release**

20      In exchange for the relief described above, the Defendant, and each of its related and

21  affiliated entities will receive a full release of all claims arising under federal or state law out of any

22  telephone call they received from Defendant (but not including any claims based upon goods or

23  services provided by Defendant), which were brought or could have been brought in the Action,

24  including without limitation all claims for violating the TCPA, 47 U.S.C. § 227 ("the Released

25  Claims"). *See* **Ex. 1**, Stipulation of Settlement ¶ 28 for full release language.

26      **D.**     **Incentive Award**

27      In recognition of Plaintiff's time and effort serving as class representative, class counsel

28  will petition the Court for an incentive award not to exceed $10,000. *See* **Ex. 1**, Stipulation of

1   Settlement ¶ 25. PEM has agreed not to oppose this request. Should the Court award an incentive
2   award in an amount less than that requested, the difference will remain in the settlement fund to pay
3   valid claims or, if funds remain after paying all valid claims, be given to the *cy pres* recipient. *Id*.

4   **E.   Attorney's Fees and Expenses**

5       Class counsel will petition the Court for reasonable attorneys' fees and reimbursement of
6   costs from the settlement fund. *See* **Ex. 1**, Stipulation of Settlement ¶ 24. Class counsel have agreed
7   to petition the court for no more than $199,500 in attorneys' fees, plus up to $15,000 in costs and
8   expenses, both payable from the Settlement Fund, and PEM has also agreed not to oppose class
9   counsel's request. Should the Court award of fees and expenses in an amount less than that requested,
10  the difference will remain in the settlement fund to pay valid claims or, if funds remain after paying
11  all valid claims, be given to the *cy pres* recipients. *Id*.

12  **IV.   ARGUMENT**

13      Rule 23(e) of the Federal Rules of Civil Procedure provides that "[t]he claims, issues or
14  defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the
15  court's approval." FED. R. CIV. P. 23(e). The Settlement here will provide a tangible and valuable
16  recovery to Class Members and avoid the uncertainties and expense of continued litigation. In
17  seeking final approval of the Settlement, Plaintiff also seeks to have the Class certified for purposes
18  of the Settlement so that Class Members may receive the benefits of the Settlement. *Accord Amchem*
19  *Prods., Inc. v. Windsor*, 521 U.S. 591, 597 (1997). As demonstrated below, certification of the Class
20  and final approval of the Settlement is warranted.

21      **A.   The Class Should Be Certified For Final Approval Of The Settlement**

22      Rule 23(a) provides that a class action may be maintained if: (1) the class is so numerous
23  that joinder of all members is impracticable; (2) there are questions of law or fact common to the
24  class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of
25  the class; and (4) the representative parties will fairly and adequately protect the interests of the
26  class. FED. R. CIV. P. 23(a). In addition, Rule 23(b)(3) requires that "questions of law or fact common
27  to class members predominate over any questions affecting only individual members, and that a
28  class action is superior to other available methods for fairly and efficiently adjudicating the

1   controversy." FED. R. CIV. P. 23(b)(3); *accord Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 247-

2   48 (E.D. Pa. 2011).

3                    **1.      The Elements of Rule 23(a) Are Satisfied**

4        As demonstrated below, each of the elements of Rule 23 are satisfied.

5                         **(a)      Numerosity**

6        The first prerequisite to class certification under Rule 23 is that the "class is so numerous

7   that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1); *see also Andrews Farms v.*

8   *Calcot, Ltd.*, 258 F.R.D. 640, 651 (E.D. Cal. 2009), order clarified on reconsideration, 268 F.R.D.

9   380 (E.D. Cal. 2010) (holding that a class of at least 2,264 members satisfied numerosity requirement

10  for class certification); *see also* NEWBERG ON CLASS ACTIONS, § 3.12 (5th ed. 2014). There is no

11  specific  minimum  number  of  proposed  class  members  required  to  satisfy  the  numerosity

12  requirement, but generally a class of forty or more members is considered sufficient. *Vasquez v.*

13  *Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (concluding that the

14  presence of 150 class members would satisfy the numerosity requirement).

15       Here, based on information provided by PEM, the Settlement Class consists of 22,998

16  individuals. *See* **Ex. 1**, Stipulation of Settlement ¶ 23(a); **Ex. 2**, Hughes Decl. ¶¶ 14, 29. Accordingly,

17  the proposed class is so numerous that joinder of their claims is impracticable, and the numerosity

18  requirement is easily satisfied.

19                        **(b)      Commonality**

20       Second, Rule 23 requires that "there are questions of law or fact common to the class." FED.

21  R. CIV. P. 23(a)(2). Commonality is demonstrated when the claims of all class members "depend

22  upon a common contention," with "even a single common question" sufficing. *Dukes*, 131 S. Ct. at

23  2545, 2557 (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.

24  1998) ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a

25  common core of salient facts coupled with disparate legal remedies within the class.") The common

26  contention must be of such a nature that it is capable of class-wide resolution, and that the

27  "determination of its truth or falsity will resolve an issue that is central to the validity of each one of

28  the claims in one stroke." *Dukes*, 131 S. Ct. at 2545. Moreover, the permissive standard of

1    commonality provides that "[w]here the circumstances of each particular class member vary but

2    retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra*

3    *v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008); *see also Mitchell v. Cate*, No. 2:08-CV-

4    01196 TLN, 2014 WL 3689287, at *6 (E.D. Cal. July 23, 2014) (finding commonality was satisfied

5    when defendant's express policy was utilized on all male inmates).

6            Here, the class shares identical statutory claims under the TCPA premised on Plaintiff's

7    allegations that PEM violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227,

8    *et seq.*, by causing unsolicited calls to be made to Plaintiff's and other class member's cellular

9    telephones through the use of an auto-dialer and/or artificial or pre-recorded or artificial voice

10   message without their prior express written consent. *See* **Ex. 2**, Hughes Decl. ¶ 6.  Plaintiff alleges

11   that PEM made the same unsolicited telephone calls to each class member. These common factual

12   predicates lead to numerous common questions, such as (1) whether PEM violated the TCPA by

13   causing unsolicited calls to be made Class Members' cellular telephones through the use of an auto-

14   dialer and/or artificial or pre-recorded or artificial voice message without their prior express written

15   consent, (2) whether the violations were willful, (3) whether Defendant systematically made

16   telephone calls to consumers who did not previously provide Defendant and/or its agents with prior

17   express written consent to receive such phone calls after October 16, 2013, and (4) whether

18   Defendant systematically made telephone calls to consumers whose telephone numbers were

19   registered with the National Do Not Call Registry, among others. *See* Dkt. No. 17 at ¶ 81.  Any

20   factual variations among class members, such as differences in the number of calls they received,

21   the time of day when a call was received, or at what geographical location the calls were received,

22   have no bearing on these common legal questions. All proposed Class Members share the common

23   interest of determining whether PEM's unsolicited calls were lawful and whether they are entitled

24   to statutory damages under the TCPA for Defendant's allegedly willful violations. *See* **Ex. 2**, Hughes

25   Decl. ¶ 30. Under these circumstances, the requirements that common questions of law and/or fact

26   exist among the Settlement Class members, and will predominate over individual questions, are

27   satisfied for purposes of certifying the proposed Class for settlement. Answering these questions,

28   regardless of the outcome, will resolve the allegations for the whole class "in one stroke," thereby

1  effectuating "class wide resolution." Thus, the proposed settlement class meets the requirement of

2  commonality.

3                                  **(c)**      **Typicality**

4          Rule 23 next requires that the class representative's claims be typical of those of the putative

5  class she seeks to represent. FED. R. CIV. P. 23(a)(3). The typicality requirement ensures that "the

6  interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land*

7  *Rover North America, LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Typicality is measured under a

8  permissive standard and does not require that the representative's claims be substantially identical,

9  but only that they are "reasonably co-extensive with [the claims] of absent class members…"

10 *Hanlon*, 150 F.3d at 1020. Typicality is present when a defendant acts uniformly toward the class

11 members, where that uniform conduct results in injury to the class members, and where the named

12 plaintiffs suffer a similar injury to that of the class members as a result. *Hanon v. Dataproducts*

13 *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

14         In the instant case, Plaintiff has the same claims and interests as the proposed Settlement

15 Class. Every member of the proposed Settlement Class (including Plaintiff) alleges PEM violated

16 the TCPA by causing unsolicited calls to be made to Plaintiff's and other class member's

17 cellular telephones through the use of an auto-dialer and/or artificial or pre-recorded or

18 artificial voice message without prior express written consent. *See* **Ex. 2**, Hughes Decl. ¶¶ 6, 31;

19 *see also* Dkt. No. 17 at ¶¶ 1-5.  As such, the typicality requirement is satisfied. *See, e.g., Estrella v.*

20 *Freedom Financial Network, LLC*, C-09-03156-SI, 2010 WL 2231790, at *10 (N.D. Cal., June 2,

21 2010) ("[B]ecause plaintiffs' allegations are amenable to proving reliance on a class-wide basis, and

22 because [defendant] does not argue that any of its customers received disclosure statements that were

23 materially different from those received by the named plaintiffs, [plaintiffs] are typical of the

24 proposed class.").

25                                  **(d)**      **Adequacy**

26         Finally, Rule 23(a) requires that the proposed class representative has and will continue to

27 "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). To determine if

28 representation is in fact adequate, the Court must ask "(1) do the named plaintiffs and their counsel

1   have any conflicts of interest with other class members and (2) will the named plaintiffs and their

2   counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Further,

3   where a plaintiff's claims are found to be typical of those of the class, appointing that plaintiff as the

4   class representative will also ensure that interests of the class remain adequately protected. *See*

5   *Dukes*, 131 S. Ct. at 2551 n.5 (discussing how the fulfillment of the typicality requirement usually

6   also supports a finding of adequacy because an adequate representative will have claims that are

7   typical of those of the class.)

8         Here, Plaintiff clearly meets the requirements to be named class representative in this case.

9   *See* **Ex. 2**, Hughes Decl. ¶¶ 32-33.  First, as discussed above, Plaintiff shares the same interests in

10  securing relief for the claims in this case as every other member of the proposed settlement class and

11  there is no evidence of any conflict of interest. Next, Plaintiff has demonstrated his continued

12  willingness to vigorously prosecute this case, has regularly consulted with his counsel, has aided in

13  the prosecution of the litigation, has supplied documents about the claims and allegations made

14  against PEM, has reviewed documents and the proposed settlement, provided his opinions on the

15  terms of the class relief negotiated at mediation and throughout the drafting of the settlement

16  documents, and has indicated his desire to continue protecting the interests of the class though

17  settlement or continued litigation. *See* **Ex. 2**, Hughes Decl. ¶ 33.  As such, he should be appointed

18  as representative of the class.

19        Plaintiff's counsel similarly will continue to adequately protect the interest of the proposed

20  Settlement Class. Proposed class counsel have regularly engaged in major complex litigation,

21  obtained numerous verdicts in civil trials, have extensive experience in consumer TCPA class action

22  lawsuits, and have been appointed class counsel in these efforts. *See, e.g.*, **Ex. 2**, Hughes Decl. ¶¶ 2-

23  4. Moreover, class counsel have diligently investigated, prosecuted, and dedicated substantial

24  resources to the claims in this action, and will continue to do so throughout its pendency. *Id.* at ¶¶ 9-

25  12, 15, 24.  As such, the Plaintiff and proposed class counsel will adequately represent the members

26  of the Settlement Class and their interests.

27        Under Rule 23, "a court that certifies a class must appoint class counsel...[who] must fairly

28  and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B). In making this

Plaintiff's Motion for Final Approval                    15                    Case No. 2:14-cv-02359-TLN
of Class Action Settlement Agreement

1  determination, the Court must consider the following attributes of counsel: (1) work in identifying

2  or investigating potential claims; (2) experience in handling class actions or other complex litigation,

3  and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources

4  committed to representing the class. FED. R. CIV. P. 23(g)(1)(A)(i–iv).

5        As discussed above, proposed class counsel have extensive experience in prosecuting

6  similar class actions and other complex litigation. *See* **Ex. 2**, Hughes Decl. ¶¶ 2-4, 9-12, 15, 24. They

7  have been appointed as class counsel in several other class action matters. *Id*. Specific to this case,

8  proposed class counsel have diligently investigated this matter by dedicating substantial resources

9  to the investigation of the claims at issue, which has included exchange of information with PEM's

10 attorneys. *Id*. Accordingly, the Court should confirm the appointment of W. Craft Hughes and Jarrett

11 L. Ellzey of Hughes Ellzey, LLP as class counsel.

12              **2.    The Requirements of Rule 23(b)(3) Are Also Met**

13       Predominance and superiority requirements under Rule 23(b)(3) are also met. In addition

14 to meeting the requirements of Rule 23(a), the proposed settlement class must also satisfy one of the

15 three requirements of Rule 23(b) in order to be certified. *Dukes*, 131 S. Ct. at 2548. Rule 23(b)(3)

16 provides that a class action can be maintained where: (1) the questions of law and fact common to

17 members of the class predominate over any questions affecting only individuals; and (2) the class

18 action mechanism is superior to the other available methods for the fair and efficient adjudication of

19 the controversy. FED. R. CIV. P. 23(b)(3); *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1197 n.5 (9th

20 Cir. 2008). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual

21 interests of the parties can be served best by settling their differences in a single action." *Hanlon*,

22 150 F.3d at 1022. Here, common questions of law and fact predominate, and the present class action

23 is the best method of adjudication. *See* **Ex. 2**, Hughes Decl. ¶¶ 26, 30-31.

24                        **(a)    Predominance**

25       The predominance requirement focuses on whether the proposed class is sufficiently

26 cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623. Predominance exists

27 "[w]hen common questions present a significant aspect of the case and they can be resolved for all

28 members of the class in a single adjudication…" *Hanlon*, 150 F.3d at 1022. Here, as noted above,

1  the common factual and legal questions presented are (1) whether PEM violated the TCPA by

2  causing unsolicited calls to be made Class Members' cellular telephones through the use of an auto-

3  dialer and/or artificial or pre-recorded or artificial voice message without their prior express written

4  consent, (2) whether the violations were willful, (3) whether Defendant systematically made

5  telephone calls to consumers who did not previously provide Defendant and/or its agents with prior

6  express written consent to receive such phone calls after October 16, 2013, and (4) whether

7  Defendant systematically made telephone calls to consumers whose telephone numbers were

8  registered with the National Do Not Call Registry, among others. *See* Dkt. No. 17 at ¶ 81. These

9  common questions can be resolved for all members of the proposed class in a single adjudication,

10  and are the central focus of this class action. Indeed the only even potentially individual issues in

11  this litigation are the amount of statutory damages each class member suffered for TCPA violations.

12  But this issue is insufficient to defeat certification, and the common questions predominate. *See*,

13  *e.g.*,*Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) (holding that

14  individual nature of damages does not defeat class certification).

15                                  **(b)    Superiority**

16          Finally, certification of this suit as a class action is superior to other methods available to

17  fairly, adequately, and efficiently resolve the claims of the class. Lack of a viable alternative to a

18  class action necessarily means that a class action satisfies the superiority requirement. "[I]f a

19  comparative evaluation of other procedures reveals no other realistic possibilities, this [superiority]

20  portion of Rule 23(b)(3) has been satisfied." *Local Joint Executive Bd. of Culinary/Bartender Trust*

21  *Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (citations omitted). To meet the

22  requirement of superiority, a plaintiff must show that a class action is the "most efficient and

23  effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175–76; *see also Valentino v.*

24  *Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996) (describing a class action as superior

25  when it will reduce the costs inherent in litigation and "no realistic alternative exists" for the class

26  members). "Where recovery on an individual basis would be dwarfed by the cost of litigating on an

27  individual basis, this factor weighs in favor of class certification." *Wolin*, 617 F.3d at 1175.

28  Moreover, the class action mechanism is superior to individual actions in consumer cases with

1   thousands of members as "Rule 23(b)(3) was designed for situations such as this…in which the

2   potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."

3   *Holloway v. Full Spectrum Lending*, No. 06-cv-5975, 2007 WL 7698843, at *9 (C.D. Cal. June 26,

4   2007) (quoting *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006)). Finally, as in

5   this action, when parties have already negotiated a compromise, courts need not focus on issues that

6   could surface at trial, because a finally approved settlement would extinguish the need for one.

7   *Amchem*, 521 U.S. at 620.

8        Here, the proposed settlement class is comprised of approximately 22,998 persons and, if

9   each were to pursue their claims against PEM individually, they would each need to provide nearly

10  the same—if not identical—legal and factual arguments and evidence. *See* **Ex. 1**, Stipulation of

11  Settlement ¶ 23(a); and **Ex. 2**, Hughes Decl. ¶¶ 14, 29.  The result would be thousands of trials at

12  enormous expense to the proposed class members, PEM, and the courts. Comparing the relative

13  small amount of damages each class member seeks to recover—*i.e.*, the portion of their statutory

14  damages under the TCPA—with the costs of actually prosecuting those claims makes clear that

15  individual class members would have little incentive to pursue them on their own. *See Vandervort*

16  *v. Balboa Capital Corp.*, 287 F.R.D. 554, 562 (C.D. Cal. 2012) (holding that a class action is superior

17  to maintaining individual claims for a small amount of damages). Where, as here, individual

18  recoveries for Plaintiff and the proposed class would be small and, but for the class action, would

19  likely not even be pursued, the practical utility of the class action mechanism under federal law is

20  apparent. *See Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 527 (N.D. Cal. 2004).

21       Accordingly, this class action is the superior method for adjudicating the controversy

22  between the Parties, and, as all requirements of class certification under Rule 23 are met, the

23  proposed settlement class should be certified.

24              **B.      Final Approval of the Settlement is Warranted**

25       "Class action settlements are entitled to a 'presumption of fairness, adequacy, and

26  reasonableness' when 'reached in arm's-length negotiations between experienced, capable counsel

27  after meaningful discovery.'" *In re Facebook, Inc. IPO Secs. & Derivative Litig.*, MDL No. 12-

28  2389, 2015 U.S. Dist. LEXIS 152668, at *7 (S.D.N.Y. Nov. 9, 2015) (quoting *Wal-Mart Stores,*

1   *Inc. v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005) (citations omitted); *accord In re Telik, Inc.*

2   *Secs. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) (settlements that are the product of "arm's-

3   length negotiations conducted by experienced, capable counsel" enjoy a presumption of fairness).

4   "Courts in this Circuit give considerable weight and deference to the views of experienced counsel

5   as to the merits of an arms-length settlement." *Moore v. GMAC Mortg.*, No. 07-cv-4296, 2014 U.S.

6   Dist. LEXIS 181431, at *9 (E.D. Pa. Sept. 19, 2014) (citing *In re Auto. Refinishing Paint Antitrust*

7   *Litig.*, MDL 1426, 2004 U.S. Dist. LEXIS 29161, at *7 (E.D. Pa. Sept. 27, 2004)). "'[T]he

8   participation of an independent mediator in settlement negotiations virtually insures [sic] that the

9   negotiations were conducted at arm's length and without collusion between the parties.'" *In re*

10  *ViroPharma Inc. Secs. Litig.*, No. 12-cv-2714, 2016 U.S. Dist. LEXIS 8626, at *24 (E.D. Pa. Jan.

11  25, 2016) (citation omitted).

12          Here, the Settlement was the result of arm's-length negotiations among experienced counsel

13  well-versed in the strengths and weaknesses of the claims.  The Settlement was reached after

14  engaging in informal fact discovery concerning the parties' claims and defenses.  The Settlement

15  was not only a product of informed, arm's-length negotiations, but also substantial proceedings

16  conducted under the auspices of the Parties' independent mediator, Hon. Susan Soussan.

17  Accordingly, the Settlement is procedurally fair.

18                    **1.      The Settlement is Procedurally Fair**

19          First, the proposed settlement is the product of serious, informed, non-collusive

20  negotiations. *See* **Ex. 1**, Stipulation of Settlement ¶¶ 5-7, 10; **Ex. 2**, Hughes Decl. ¶¶ 9-12, 25.

21  Settlement negotiations are generally found to be non-collusive when reached with the assistance of

22  a third-party neutral, *see, e.g., Boring*, 2013 WL 6145706, at *7, and are found to have been informed

23  where the parties exchanged evidence and information prior to negotiations. *See*, *e.g.*, *Moshogiannis*

24  *v. Security Consultants Group, Inc.*, No. 5:10-CV-05971-EJD, 2012 WL 423860, at *5 (N.D. Cal.,

25  Feb. 8, 2012) (holding that settlement was fair, reasonable, and adequate where, *inter alia*, "the

26  parties conducted a significant amount of informal discovery…"). Here, the Parties engaged in the

27  informal exchange of information and decided to broach the issue of possible settlement. *See* **Ex. 1**,

28  Stipulation of Settlement ¶¶ 5-7; **Ex. 2**, Hughes Decl. ¶¶ 9-12. In fact, all settlement negotiations

1   were conducted after the exchange of information and in the presence of former Texas District Court

2   Judge, the Hon. Susan Soussan (Ret.), an independent third-party neutral, and thereafter reached a

3   settlement during mediation subject to confirmatory discovery and approval of the Court. *Id.* As

4   such, this first factor is satisfied. *See*, *e.g.*, *Williams v. Costco Wholesale Corp.*, No. 02-cv-2003,

5   2010 WL 761122, at *5 (S.D. Cal. Mar. 4, 2010) ("Plaintiff ha[d] sufficient information from

6   investigation and from informal discovery to have a clear view of the strengths and weaknesses of

7   the case and to support the settlement."); *Harris v. Marketing Corp.*, No. 08-cv-5198, 2011 WL

8   1627973, at *8 (N.D. Cal. Apr. 29, 2011) ("With the Court's prior rulings as guidance, the parties

9   were in a position to assess the strengths and weaknesses of their arguments and evidence, and make

10   an informed decision about the risks associated with proceeding…to trial.").

11       The notice program implemented in this case resulted in a 1.45% total claim rate.   These

12   figures are consistent with the recent observation of the Third Circuit that "consumer claim filing

13   rates rarely exceed seven percent, even with the most extensive notice campaigns." *Sullivan v. DB*

14   *Investments, Inc.,* 667 F.3d 273, 329 n. 60 (3d Cir.2011) (en banc) (quoting finding of special

15   master).  *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 296 (6th Cir. 2016), *cert. denied*

16   *sub nom. Blackman v. Gascho*, 137 S. Ct. 1065, 197 L. Ed. 2d 176 (2017), and *cert. denied sub nom.*

17   *Zik v. Gascho*, 137 S. Ct. 1065, 197 L. Ed. 2d 176 (2017).  Accordingly, the number of claims falls

18   within the generally acceptable range, and the settlement is procedurally fair.

19                    **2.       The Settlement is Substantively Fair**

20       Second, there are no obvious deficiencies in the proposed settlement. While Plaintiff

21   believes that the class would have been certified and that he would have ultimately succeeded at

22   summary judgment or trial, balancing the strength of the class's claims against the legal and factual

23   obstacles remaining, Plaintiff and class counsel concluded that accepting the relief afforded by the

24   proposed settlement was in the best interest of the class. *See* **Ex. 1**, Stipulation of Settlement ¶¶ 7,

25   10; **Ex. 2**, Hughes Decl. ¶¶ 25-26, 28. In light of the monetary relief under the settlement (especially

26   when weighed against continued litigation), the agreement here is not certainly not "obviously

27   deficient." *See, e.g., Tableware*, 484 F. Supp. 2d at 1080 ("Based on [the] risk and the anticipated

28   expense and complexity of further litigation, the court cannot say the proposed settlement is

1  obviously deficient…"); *Tijero v. Aaron Bros., Inc.*, No. C 10-01089-SBA, 2013 WL 6700102, at

2  *8 (N.D. Cal. Dec. 19, 2013) ("[T]here are no obvious deficiencies. To the contrary, the settlement

3  confers tangible monetary benefits to the class…"); *Ching*, 2013 WL 6200190, at *6 (finding "no

4  obvious deficiencies" in settlement providing monetary relief to class).

5       Third, the settlement provides no preferential treatment to any individual member of the

6  proposed settlement class. Under the settlement, everyone in the class is treated exactly the same:

7  each class member seeking to recover a portion of the Settlement Fund must submit exactly the same

8  claim form, and each class member submitting a valid claim form will receive the same *pro rata*

9  distribution from the Fund. *See* **Ex. 1**, Stipulation of Settlement ¶¶ 19-21; **Ex. 2**, Hughes Decl. ¶¶

10  17-20. While Plaintiff will be seeking from this Court an incentive award in recognition of the time

11  and effort he spent acting as class representative, such awards are common and in no way preclude

12  preliminary approval. *See, e.g.*, *Villegas v. J.P. Morgan Chase & Co.*, No. 09-cv-00261, 2012 WL

13  5878390, at *7 (N.D. Cal. Nov. 21, 2012); *Cordy*, 2014 WL 212587, at *1, 3.

14       Finally, this settlement falls well within the range of possible approval. In evaluating this

15  factor, "courts primarily consider plaintiffs' expected recovery balanced against the value of the

16  settlement offer." *Tableware*, 484 F. Supp. 2d at 1080. The monetary relief here places the settlement

17  well within the range of possible approval as discussed more fully (above). The settlement in the

18  present case satisfies each of the four factors generally considered by courts in this district on

19  preliminary approval, this Court should—consistent with the Ninth Circuit's strong judicial policy

20  favoring settlement—finally approve the Settlement.

21  **V.    CONCLUSION**

22       For the foregoing reasons, Plaintiff respectfully requests this Court grant this Motion and

23  enter the Parties' proposed Final Approval Order and Entry of Judgment.

24

25

26

27

28

1    Dated:  June 1, 2017.                          Respectfully Submitted,

2                                                   MATTHEW SCOTT ROBINSON,
                                                    individually and on behalf of the Class
3                                                   of similarly situated individuals,

4
                                                    _____/s/ W. Craft Hughes_____
5                                                   W. Craft Hughes (Admitted *Pro Hac Vice*)
                                                    craft@hughesellzey.com
6                                                   Jarrett L. Ellzey (Admitted *Pro Hac Vice*)
                                                    jarrett@hughesellzey.com
7                                                   HUGHES ELLZEY, LLP
                                                    Galleria Tower I
8                                                   2700 Post Oak Boulevard, Suite 1120
                                                    Houston, TX 77056
9                                                   Tel: (713) 554-2377
                                                    Fax: (888) 995-3335
10
                                                    Michael R. Dufour – SBN 290981
11                                                  mdufour@swlegalgrp.com
                                                    SOUTHWEST LEGAL GROUP
12                                                  22440 Clarendon Street, Suite 200
                                                    Woodland Hills, CA 91367
13                                                  Tel: (818) 591-4300
                                                    Fax: (818) 591-4315
14
                                                    *Counsel for Plaintiff and the Putative Class*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2      I certify that on <u>June 1, 2017</u>, a copy of the foregoing document was filed in accordance

3  with the protocols for e-filing in this district, and will be served pursuant to Rule 5 of the FEDERAL

4  RULES OF CIVIL PROCEDURE on all counsel of record who have consented to electronic notification

5  *via* CM/ECF.

6

7      Michael E. Chase
       mchase@boutinjones.com
8      Bashar S. Ahmad
       bahmad@boutinjones.com
9      Gabrielle D. Boutin
       gboutin@boutinjones.com
10     BOUTIN JONES INC.
       555 Capital Mall, Suite 1500
11     Sacramento, CA 95814
       *Attorneys for Defendant,*
12     *Paramount Equity Mortgage, LLC*

13                              _____/s/ W. Craft Hughes_____
                                W. Craft Hughes
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28