Michael R. Dufour – SBN 290981
mdufour@swlegalgrp.com
SOUTHWEST LEGAL GROUP
22440 Clarendon Street, Suite 200
Woodland Hills, CA 91367
Tel: (818) 591-4300
Fax: (818) 591-4315

W. Craft Hughes (Admitted *Pro Hac Vice*)
craft@hughesellzey.com
Jarrett L. Ellzey (Admitted *Pro Hac Vice*)
jarrett@hughesellzey.com
HUGHES ELLZEY, LLP
Galleria Tower I
2700 Post Oak Boulevard, Suite 1120
Houston, TX 77056
Tel: (713) 554-2377
Fax: (888) 995-3335

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| MATTHEW SCOTT ROBINSON, individually and on behalf of all others similarly situated, <br><br>     *Plaintiff,* <br><br> v. <br><br> PARAMOUNT EQUITY MORTGAGE, LLC, <br><br>     *Defendant.* | Case No. 2:14-cv-02359-TLN-CKD <br><br> **CLASS ACTION** <br><br> **PLAINTIFF'S NOTICE OF AND MOTION FOR APPROVAL OF ATTORNEYS' FEES AND EXPENSES** <br><br> Date: July 13, 2017 <br> Time: 2:00 p.m. <br> Judge: Hon. Troy L. Nunley <br> Action Filed: October 8, 2014 |

NOTICE IS HEREBY GIVEN that on July 13, 2017 at 2:00p.m. (PST), or at such other time as may be set by the Court, Class Counsel will request this Court grant an award of $165,000 in attorneys' fees (which equals 25% of the common fund created for the class) and reimbursement of $9,185.33 in costs, and to occur at the Robert T. Matsui United States Courthouse, Courtroom 2, 15th Floor, 501 I Street, Sacramento, CA 95814, before the Honorable

Troy L. Nunley. In support of this unopposed Motion, Plaintiff relies on the accompanying Memorandum of Law, the Declaration of W. Craft Hughes, any papers filed in reply, and all other proceedings in this litigation.

Accordingly, Plaintiff respectfully requests that this Motion be granted.  The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, oral argument of counsel, all documents in the record, and any other matter that may be submitted at the hearing. Defendant Paramount Equity Mortgage, LLC does not oppose this motion.

Dated:  June 1, 2017.                                    Respectfully Submitted,

MATTHEW SCOTT ROBINSON,
individually and on behalf of the Class
of similarly situated individuals,


_____/s/ W. Craft Hughes_____
W. Craft Hughes (Admitted *Pro Hac Vice*)
craft@hughesellzey.com
Jarrett L. Ellzey (Admitted *Pro Hac Vice*)
jarrett@hughesellzey.com
**HUGHES ELLZEY, LLP**
Galleria Tower I
2700 Post Oak Boulevard, Suite 1120
Houston, TX 77056
Tel: (713) 554-2377
Fax: (888) 995-3335

Michael R. Dufour – SBN 290981
mdufour@swlegalgrp.com
**SOUTHWEST LEGAL GROUP**
22440 Clarendon Street, Suite 200
Woodland Hills, CA 91367
Tel: (818) 591-4300
Fax: (818) 591-4315

*Counsel for Plaintiff and the Class*

## Table of Contents

I.      INTRODUCTION ................................................................................................ 1

II.     PROCEEDINGS TO DATE ................................................................................ 2

III.    BACKGROUND ................................................................................................. 3

    A.    The Settlement Represents an Excellent Result for the Class ..................... 5

    B.    Class Counsel Undertook Considerable Risk In Prosecuting this Action .................. 5

IV.     CLASS ACTIONS ARE IMPORTANT IN OUR JUDICIAL SYSTEM ......................... 6

V.      ARGUMENT ...................................................................................................... 7

    A.    The Requested Fee Award is Fair, Reasonable, and Justified .................... 7

        1.    The Requested Fee is Presumptively Reasonable Because it Resulted from Arm's Length Negotiations .......................................................... 10

        2.    The Court Should Apply the Percentage-of-the-Fund Method ...................... 11

        3.    Class Counsel's Fee Request is Warranted under the Percentage-of-the-Fund Method .......................................................................................... 12

            (a)    Class Counsel obtained an excellent result ........................................... 13

            (b)    The risks of litigation support the requested fee ................................... 14

            (c)    The requisite skill and quality of work support the fee ......................... 14

            (d)    The undertaking of this action on a contingency-fee basis supports the requested fee ................................................................................... 15

        4.    A Lodestar-Plus Multiplier Cross-Check Supports the Requested Fees ......... 16

            (a)    Class Counsel's lodestar is reasonable ................................................. 16

            (b)    A multiplier is warranted ....................................................................... 17

    B.    The Payment of Costs is Fair and Reasonable ........................................... 18

    C.    Plaintiff's Incentive Award is Reasonable ................................................. 19

VI.     CONCLUSION ................................................................................................... 21

1

2

### Table of Authorities

3      **Cases**                                                                   **Page**

4      *Adams v. AllianceOne,*
            Case No. 08-CV-0248-JAH (S.D. Cal. Sept. 28, 2012)......................................9
5
       *Barcia v. Contain-A-Way, Inc.,*
6           2009 U.S. Dist. LEXIS 17118 (S.D. Cal. 2009) ...............................................4

7      *Behrens v. Wometco Enter., Inc.,*
            118 F.R.D. 534 (S.D. Cal. 1988).....................................................................12
8
       *Bert v. AK Steel Corp.,*
9           2008 WL 4693747 (S.D. Ohio Oct. 23, 2008).................................................11

10     *Blum v. Stevenson,*
            465 U.S. 886 (1994)........................................................................................17
11
       *Boeing Co. v. Van Gemert,*
12          444 U.S. 472 (1980)..........................................................................................8

13     *Boyce v. Sports and Fitness,*
            Case No. 03-CV-2140-BEN (BLM) (S.D. Cal. Jan. 24, 2006) .........................9
14
       *Craft v. County of San Bernardino,*
15          624 F. Supp. 1113 (C.D. Cal. 2008) ....................................................4, 17, 18

16     *Davis v. City and County of San Francisco,*
            976 F.3d 1536 (9th Cir. 1992)........................................................................17
17
       *Dennis v. Kellogg Co.,*
18          2010 WL 4285011 (S.D. Cal. Oct. 14, 2010) ................................................11

19     *Di Gacomo v. Plains All Am. Pipeline,*
            2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 18, 2001) ..............................18
20
       *Fadhl v. City and County of San Francisco,*
21          859 F.2d 649 (9th Cir. 1986)..........................................................................18

22     *Fischel v. Equit. Life Assurance Soc'y,*
            307 F.3d 997 (9th Cir. 2002)..........................................................................16
23
       *Fitzgerald v. City of Los Angeles,*
24          2003 U.S. Dist. LEXIS 27382 (C.D. Cal. Dec. 8, 2003) ................................20

25     *Garner v. State Farm,*
            2010 U.S. Dist. LEXIS 49482 (N.D. Cal. Apr. 22, 2010) ..............................12
26
       *Glass v. UBS Fin. Servs., Inc.,*
27          2007 WL 221862 (N.D. Cal. 2007) ................................................................16

28

## Table of Authorities
### (continued)

Page

*Graham et al. v. Overland Solutions, Inc.*,
Case No. 10-CV-00672-BEN-BLM (S.D. Cal. Jan. 30, 2013)............................................9

*Gulf Oil Co. v. Bernard*,
101 S. Ct. 2193 (1981) ...............................................................................................6

*Gutierrez v. Barclays Group*,
No. 10-CV-01012-DMS-BGS (S.D. Cal. March 12, 2012)................................................9

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)........................................................................8, 10, 16

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ..........................................................................................10, 13

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989) ....................................................................8, 12

*In re Apple Computer, Inc. Derivative Litig.*,
2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008)...........................................10

*In re Bluetooth Headset Products Liability Litigation*,
654 F.3d 935 (9th Cir. 2011).................................................................................8, 9

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*,
2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005) ...........................................13

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. 2005)........................................................................4

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...................................................................19

*In re M.D.C. Holdings Sec. Litig.*,
1990 U.S. Dist. LEXIS 15488 (S.D. Cal. Aug. 30, 1990) .......................................4, 13

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1996) .....................................................................5, 19

*In re Mego Fin. Corp. Sec. Lit.*,
2123 F.3d 454 (9th Cir. 2000)............................................................................12, 20

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)................................................................................13

*In re Omnivision Techs, Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...............................................................passim

*In re SeraCare Life Sciences, Inc. Securities Litigation*,
No. 05-CV-02335-JLS-CAB (S.D. Cal. Sept. 24, 2008)................................................9

**Table of Authorities**
(continued)

Page

*In re Trans Union Corp. Privacy Litig.*,
    211 F.R.D. 328 (N.D. Ill 2002)..........................................................................6

*In re Washington Public Power Supply System Securities Litigation*,
    19 F.3d 1291 (9th Cir. 1994)...........................................................8, 12, 15, 18

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975).....................................................................16, 18

*Knight v. Red Door Salons, Inc.*,
    2009 U.S. Dist. LEXIS 1149 (N.D. Cal. Feb. 2, 2009)....................................12

*Langille v. EMC Corporation, Inc.*,
    No. 07-CV-0651 (S.D. Cal. July 9, 2008)........................................................10

*Larson v. Sprint Nextel Corp.*,
    2010 WL 239934 (D.N.J. Jan. 15, 2010) .........................................................10

*Lewis v. Starbucks Corp.*,
    2008 WL 416690 (E.D. Cal. September 11, 2008).............................................7

*Linney v. Cellular Alaska Part.*,
    1997 U.S. Dist. LEXIS 24300 (N.D. Cal. 1997)...............................................20

*Linney v. Cellular Alska Partnership*,
    151 F.3d 1234 (9th Cir. 1998)..........................................................................13

*Lopez v. Youngblood*,
    2011 U.S. Dist. LEXIS 99289 (E.D. Cal., Sept. 2, 2011)..................................18

*Louie v. Kaiser Found. Health Plan, Inc.*,
    2008 U.S. Dist. LEXIS 78314 (S.D. Cal. 2008) ..............................................20

*Mainstream Mktg. Servs. v. FTC*,
    284 F. Supp. 2d 1266 (D. Colo. 2003).............................................................7

*Milliron v. T-Mobile USA, Inc.*,
    2009 WL 3345762 (D.N.J. Sept. 14, 2009) .....................................................10

*Mills v. Electric Auto-Lite Co.*,
    396 U.S. 375 (1970).......................................................................................19

*Mills v. Electric Auto-Lite Co.*,
    90 S. Ct. 616 (1970).........................................................................................5

*Morris v. Lifescan, Inc.*,
    54 Fed. Appx. 663 (9th Cir. 2003)....................................................................8

*Opson v. Hanesbrands Inc.*,
    2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009) .................................20

**Table of Authorities**
(continued)

Page

*Ordick v. UnionBancCal Corp.*,
  2012 U.S. Dist. LEXIS 171413 (N.D. Cal. Dec. 3, 2012) ...............................20

*Parker v. Time Warner Entm't Co., L.P.*,
  331 F.3d 122 (2d Cir. 2003) ..............................................................6

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
  483 U.S. 711 (1987) .......................................................................18

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009)............................................................19

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,
  2010 WL 2486346 (C.D. Cal. June 15, 2010) ....................................10

*Serrano v. Unruh*,
  32 Cal. 3d 621 (1982) .....................................................................17

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003).........................................................8, 19

*Steiner v. Am. Broad. Co.*,
  248 Fed. Appx. 780 (9th Cir. Cal. 2007) ..........................................17

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993) .......................................................11, 18

*Takas et al. v. A.G. Edwards & Sons, Inc.*,
  No. 04-CV-1852-JAH (NLS) (S.D. Cal. Nov. 5, 2007) ......................9

*Torres v. Nutrisystem, Inc.*,
  289 F.R.D. 587 (2013) ....................................................................13

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996)..............................................................6

*Van Vranken v. Atlantic Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ...................................................20

*Vasquez v. Coast Roofing*,
  2010 U.S. Dist. LEXIS 21159 (E.D. Cal. 2010) ..................................8

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002).....................................................passim

*West v. Circle K Stores, Inc.*,
  2006 U.S. Dist. LEXIS 76558 (E.D. Cal. 2006) ...............................20

*Woo v. The Home Loan Group*,
  2008 WL 3925854 (S.D. Cal. 2008) ...................................................8

**Table of Authorities**
(continued)

Page

*Young v. Polo Retail, LLC,*
 2007 U.S. LEXIS 27269 (N.D. Cal. 2007) ......................................................... 4

**Statutes**

47 U.S.C § 227(c)(5) ......................................................................................................... 6

47 U.S.C. § 227 *et seq* ..................................................................................................... 1

**Rules**

FED. R. CIV. P. 23(e) .......................................................................................................... 8

**Other Authorities**

*Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008,*
 7 Journal of Empirical Legal Studies 248 (2010) ....................................................... 9

*Individuals Within The Aggregate: Relationships, Representation, And Fees,*
 71 N.Y.U. L.Rev. 296 (1996) ....................................................................................... 6

MCLAUGHLIN ON CLASS ACTIONS § 6.7 (8th ed) ......................................................... 11

Moore's Fed. Prac. § 23.03 ............................................................................................. 6

NATIONAL LAW JOURNAL,
 *Annual Law Firm Billing Survey,* (January 5, 2015) ...................................... 14

NEWBERG ON CLASS ACTIONS (4th ed. 2002) .......................................................... 11, 12

*The Diminishing Role of the Private Attorney General in Antitrust and Securities Class Action*
 *Cases Aided by the Supreme Court,*
 4 J. Bus. & Tech. L. 167 (2009) ................................................................................. 7

The Implication of Economic Theory for Private Enforcement of Law Through Class and
 Derivative Actions,
 86 Colum. L. Rev. 669 (1986) .................................................................................... 6

**MEMORANDUM OF LAW IN SUPPORT OF**

**PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND EXPENSES**

Counsel for Plaintiff Matthew Scott Robinson ("Plaintiff") respectfully submit this Memorandum of Law in support of their accompanying Unopposed Motion for an Award of Attorneys' Fees and Expenses and Service Award to Plaintiff.[1] Defendant does not oppose this motion. Plaintiff relies on the Stipulation of Settlement (Exhibit 1), Declaration of W. Craft Hughes (Exhibit 2), and Declaration of Tim Cunningham (Exhibit 3).

## I.      INTRODUCTION

Class Counsel for plaintiff Matthew Scott Robinson seeks approval of payment of attorneys' fees and costs in the aggregate amount of $174,185.33.  As discussed in the Motion for Preliminary Approval of Class Action Settlement, the Parties voluntarily agreed upon this payment during the course of mediation and the follow up negotiations that amicably resolved the current dispute. (Dkt. No 34 ("Preliminary Approval Motion") In addition, Plaintiff's counsel also seeks an incentive payment of $10,000 to be paid to Robinson as the Class Representative for his efforts in both bringing and helping to prosecute this matter.

In 2014, Plaintiff brought this action arising from unsolicited telephone calls to Plaintiff's cellular phone call by means of an "automatic telephone dialing system" and/or using an "artificial or prerecorded voice" in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.,* ("TCPA"). The Parties were able to resolve the dispute early during litigation, with the assistance of a respected third-party neutral, Hon. Susan Soussan [Ret.]. Subsequently on January 10, 2017, this Court granted Preliminary Approval. (Dkt. No. 27). Pursuant to the Preliminary Approval Order, the Court, among other things: (i) preliminarily certified (for settlement purposes only) a class of plaintiffs (hereinafter referred to as the "Class Members") with respect to the claims asserted in the Action; (ii) preliminarily approved the proposed settlement; (iii) appointed Plaintiff Robinson as the Class Representative; (iv) appointed W. Craft Hughes and Jarrett L. Ellzey of HUGHES ELLZEY, LLP

---

[1] Unless otherwise stated, all capitalized terms used in this Memorandum are as defined in the Stipulation of Settlement filed 05/19/2015; *see also* Dkt. No. 22-1 (Stipulation of Settlement).

1  as Class Counsel; and (v) set the date and time of the Final Approval Hearing for July 13,

2  2017, at 2:00 P.M. (Dkt. No. 33).

3          To date, there have been no objections to the Class Settlement or the attorneys' fees

4  and costs reimbursement request by Plaintiff.

5          By this Motion, and as detailed in the supporting declaration filed herewith, Plaintiff's

6  counsel seeks an award of attorneys' fees and costs.

7  **II.        PROCEEDINGS TO DATE**

8          On or about October 8, 2014, a putative class action Complaint was filed against

9  defendant Paramount Equity Mortgage, LLC (hereinafter referred to as "PEM" or

10  "Defendant") in this Court, commencing civil litigation, entitled *Matthew Scott Robinson v.*

11  *Paramount Equity Mortgage, LLC*, Case No. 2:14-cv-02359 asserting claims under the TCPA.

12  Based on those allegations, Plaintiff sought $500 per negligent violation, $1,500 for each

13  intentional violation, and injunctive relief.  Plaintiff's claims were brought on behalf of a class

14  of individuals registered with the National Do-Not-Call list ("DNC") who allegedly received

15  telephone calls to their mobile phones from PEM without consent using an automatic telephone

16  dialing system or artificial or prerecorded voice technology. (Dkt. No. 1.)

17          On February 13, 2015, the Parties attended a full-day mediation with the Hon. Susan

18  Soussan, [Ret.] in Houston, Texas. Plaintiff Robinson traveled from Austin to attend the

19  mediation in Houston. *See Hughes Decl.*, ¶ 33, **Ex. 2**. The Parties were successful in reaching

20  a global resolution of the case at mediation, but engaged in numerous subsequent discussions

21  through e-mails and telephone calls to finalize the details of the agreement.

22          Class Counsel has been intimately involved in every aspect of this case and analyzed

23  and reviewed all activity in connection with this matter. Prior to approving the Settlement,

24  Class Counsel commenced confirmatory discovery to ensure that the class was being protected.

25  *See* Stip. of Settlement, **Ex. 1.** On May 19, 2015, Plaintiff filed a Motion for Preliminary

26  Approval of Class Settlement and Certification of Settlement Class. (Dkt. No. 22.) On January

27  10, 2017, this Court issued an Order Preliminary Approving Class Settlement and Certifying

28

1  a Settlement Class. (Dkt. No. 27.) Currently pending before this Court is Plaintiff's request for

2  attorneys' fees and costs, and an incentive award for Robinson.

3  **III.     BACKGROUND**

4        The parties settled this matter early in litigation. However, the parties were well

5  informed of the factual and legal challenges each side faced in protracted litigation.  The parties

6  determined that an expeditious class-wide resolution of the parties' disputes would benefit all

7  parties and the putative class members. In this regard, the parties participated in extensive

8  settlement discussions even after a full-day mediation with Judge Susan Soussan [Ret.]. As a

9  result of these continuous efforts, the current settlement provides a substantial financial benefit

10 to each and every class member.

11       The compromised settlement reached with the guidance of Judge Soussan created a

12 fund to be established by Defendant in the maximum amount of $660,000 for payment to Class

13 Members ("Settlement Fund"), plus an additional $43,000 for administration of the claims,

14 payment of an incentive award to Plaintiff for brining and litigating this action, and for

15 attorneys' fees and costs incurred by Class Counsel. In consideration of this Settlement Fund,

16 Plaintiff, on behalf of the class, will dismiss this action and unconditionally release and

17 discharge Defendant from all claims relating to the action.

18       Based upon this substantial settlement, Class Counsel respectfully moves this Court

19 for an award of $165,000 in attorneys' fees (which equals 25% of the common fund created

20 for the class) and reimbursement of $9,185.33 in costs. In common fund cases such as the

21 current matter, the Ninth Circuit's benchmark for attorneys' fee is 25% of the fund created for

22 the benefit of the Class, plus recovery of costs. *See Vizcaino v. Microsoft Corp.*, 290 F.3d

23 1043, 1049 (9th Cir. 2002) ("*Vizcaino*").

24       In the instant matter, Class Counsel have incurred 241.8 hours in attorney time and

25 their billable rate of $625/hour is reasonable and within the hourly rates charged for the same

26 services in the community. Class Counsel also incurred $9,185.33 in costs litigating this

27 matter. *See Declaration of W. Craft Hughes in Support of Plaintiff's Motion for Attorneys'*

28

*Fees and Costs and Class Representative Incentive Award.* ("*Hughes Decl.*"), ¶¶ 34-44, **Ex. 2.**

The hours per partner are below:

| Name | Hours | Rate/Hr. | Total |
|------|-------|----------|-------|
| W. Craft Hughes | 132.5 | $625 | $  82,812.50 |
| Jarrett L. Ellzey | 109.3 | $625 | $  68,312.50 |
| Jennifer Baumann | 27.5 | $215 | $    5,912.50 |
| **Total Combined Lodestar** | **182.1** | | **$ 157,037.50** |

*Id.*

Here, Class Counsel seeks attorneys' fees and costs within the Ninth Circuit's benchmark and well within the range commonly awarded in comparable cases.[2] The request is also well supported by a lodestar plus multiplier cross-check, if the Court chooses to perform such an optional cross-check. Said cross-check reveals the fee amount requested by Class Counsel would result in a multiplier of merely 1.05, which is well below the acceptable range for such multipliers established by the Ninth Circuit. *Id.* at 1051; and, fn. 6. Furthermore, the hours were not inflated and a result of make work. Class Counsel was efficient and Courts have stressed that early settlements should be incentivized as long as they are fair and reasonable. *In re M.D.C. Holdings Sec. Litig.*, 1990 U.S. Dist. LEXIS 15488, at *21, 32 (S.D. Cal. Aug. 30, 1990) (awarding 30% fee where settlement obtained "in a very short amount of time" and finding that class counsel should be rewarded, not penalized, for achieving early

---

[2]   "Federal courts have consistently approved attorney's fee awards over the 25% benchmark." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *18 (C.D. Cal. 2005). "The 25% [benchmark] is substantially below the average class fund fee nationally..." *Craft v. County of San Bernardino*, 624 F. Supp. 1113, 1125 (C.D. Cal. 2008). Indeed, in "most common fund cases, the award exceeds the benchmark." *Young v. Polo Retail, LLC*, 2007 U.S. LEXIS 27269, at *22 (N.D. Cal. 2007) (awarding 31%); *see also Barcia v. Contain-A-Way, Inc.*, 2009 U.S. Dist. LEXIS 17118, at *15 (S.D. Cal. 2009) ("[t]he requested fee falls at the bottom end of the Ninth Circuit's benchmark of 25% to 40% of a common fund...").

1  success on behalf of the class). If parties were not incentivized, the inevitable result would be

2  additional litigation and wasted Court time.

3      In light of the strong result, and for the reasons discussed below, Class Counsel

4  respectfully request the Court grant this fee request and cost reimbursement in full, and

5  approve the incentive award for Plaintiff Robinson.

6      **A.    The Settlement Represents an Excellent Result for the Class**

7      The Settlement Agreement provides that Defendant will pay $660,000.00 into a non-

8  reversionary Common Benefit Fund. *See* Stip. of Settlement (**Ex. 1**); Decl. of Tim Cunningham

9  (**Ex. 3**). No class member decided to opt-out, and not a single objection was received at the

10  time of this filing, June 1, 2017, three weeks after the May 10, 2017 deadline to object. *See*

11  Decl. of Tim Cunningham (**Ex. 3**).

12      This is not a coupon settlement. The Defendant is not providing an unwanted product

13  to the class members at an illusory inflated price. The class members who submitted valid

14  claims will receive $200/each from the Common Fund. Any amount not cashed will go to the

15  *cy pres* recipient, Privacy Right Clearinghouse (PRC), to help achieve its mission of protecting

16  individual privacy rights. Stip. Settlement, ¶ 21, **Ex. 1**.

17      **B.    Class Counsel Undertook Considerable Risk In Prosecuting this Action**

18      Class Counsel litigated this matter on a pure contingency-fee basis while expending

19  considerable amount of time and incurring costs potentially without any monetary gain in the

20  event of an adverse judgment.[3] Moreover, this action was especially risky given the various

21  defenses potentially available to Defendant. Namely, class members faced the factual defense

22  of whether prior express consent was provided, which Defendant would likely argue requires

23  an individualized inquiry. There was also the risk of this Court denying class certification

24  based on a lack of ascertainability.

25

26      _____

27      [3]  "Reasonable costs and expenses incurred by an attorney who creates or preserves a
common fund are reimbursed proportionately by those class members who benefit from the
settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing

28  *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970)).

1    Additionally, other Courts view awards of aggregate, statutory damages with

2   skepticism and reduce such awards – even after a plaintiff prevails on the merits – based on

3   due process grounds. *See, e.g., Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 122, 22 (2d

4   Cir. 2003) ("[T]he potential for devastatingly large damages awards, out of all reasonable

5   proportion to the actual harm suffered by members of the Plaintiffs class, may raise due process

6   issues"); *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 350-351 (N.D. Ill 2002)

7   (declining to certify a class where it "could result in statutory damages of over $19 billion,

8   which is grossly disproportionate to any actual damage").

9    Finally, there is the risk of losing a jury trial, and even if Plaintiff did prevail, any

10  recovery could be delayed for years by an appeal.  Despite these numerous issues the settlement

11  provides a substantial benefit to class members without further delay.

12  **IV.    CLASS ACTIONS ARE IMPORTANT IN OUR JUDICIAL SYSTEM**

13  "Class actions serve an important function in our system of civil justice," *Gulf Oil Co. v. Bernard*,

14  452 U.S. 89, 99, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981), as they reduce litigation costs and promote

15  greater efficiency, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996), as well as

16  "provide aggrieved persons a remedy when individual litigation is economically unrealistic," such

17  as in this case where the maximum recovery per negligent violation is only $500 (47 U.S.C. §

18  227(c)(5)).[4]

19   "Probably to a unique degree, American law relies upon private litigants to enforce

20  substantive provisions of law that in other legal systems are left largely to the discretion of public

21  enforcement agencies." John C. Coffee, Jr., <u>Understanding the Plaintiff's Attorney: The Implication</u>

22  <u>of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions</u>, 86

23  Colum. L. Rev. 669, 669 (1986). "In class actions, lawyers have been called 'private attorneys

24  general,' a term that links the class lawyer to the state's or the 'people's' lawyer."[5]

25   [4] Thomas D. Rowe, Jr., *State and Foreign Class-Actions Rules and Statutes: Differences from

26  - and Lessons for? - Federal Rule 23* (2007) 35 W. St. U. L. Rev. 147, 155 (quoting 5 James Wm.
    Moore et al., Moore's Fed. Prac. § 23.03 at 23-35).

27   [5] Judith Resnik, Dennis E. Curtis & Deborah R. Hensler, *Individuals Within The Aggregate:

28  Relationships, Representation, And Fees*, 71 N.Y.U. L.Rev. 296, 320 (1996).

> *The prospect of these often large fees creates an incentive for plaintiff attorneys to file lawsuits on behalf of proposed class members.* In fact, these incentives have created a cottage industry for lawyers and plaintiffs who compete to fulfill this 'private attorney general' function. These lawsuits can both compensate deserving plaintiffs and deter illegal conduct. Conventionally, compensation is considered a private goal, and deterrence a public goal, but in reality, actions by both private and public attorneys can lead to both compensation and deterrence.

Carl W. Hittinger & Jarod M. Bona, *The Diminishing Role of the Private Attorney General in Antitrust and Securities Class Action Cases Aided by the Supreme Court*, 4 J. Bus. & Tech. L. 167, 169 (2009) (emphasis added). "Unless class counsel are adequately compensated, class and derivative litigation will be undersupplied in the legal market."[6] Without adequate compensation to class action attorneys in TCPA cases such as this one, millions of consumers would likely go uncompensated for violations of their statutory rights, especially since "consumers find that using the TCPA's private right of action is very complex and time-consuming." *Mainstream Mktg. Servs. v. FTC*, 284 F. Supp. 2d 1266, 1273 (D. Colo. 2003) (citing 68 Fed. Reg. at 4629 (2003)).

## V.     ARGUMENT

Class Counsel asserts that (A) the requested fee award is fair, reasonable, and justified; (B) the payment of costs is fair and reasonable; and (C) the named Plaintiff's incentive award is reasonable.

### A.     The Requested Fee Award is Fair, Reasonable, and Justified

Class Counsel respectfully moves this Court for an award of $165,000 in attorneys' fees (which equals 25% of the $660,000 common fund created for the class) and reimbursement of $9,185.33 in costs.[7] As explained by the Ninth Circuit, "[a]ttorneys' fees provisions included in

---

[6] Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, Cornell Law Faculty Working Paper, Paper 64, p. 2 (2009).

[7] Courts regularly award 25% fee requests in consumer class actions. *See Lewis v. Starbucks Corp.*, 2008 WL 416690 (E.D. Cal. September 11, 2008) (approving 25% fee request); and *Woo*

1    proposed class action settlement agreements are, like every other aspect of such agreements, subject

2    to the determination whether the settlement is 'fundamentally fair, adequate, and reasonable.'"

3    *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) ("*Staton*") (quoting Fed. R. Civ. P. 23(e)).[8]

4    The "common fund" doctrine applies where, as here, a litigation results in the recovery of a certain

5    and calculable fund on behalf of a group of beneficiaries. *Id.* The Ninth Circuit and other federal

6    courts have long recognized that when counsel's efforts result in the creation of a common fund that

7    benefits unnamed class members, counsel have an equitable right to be compensated from that fund

8    for counsel's efforts in creating said fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)

9    (noting that the "lawyer who recovers a common fund…is entitled to a reasonable attorney's fee

10   from the fund as a whole"); *Staton*, 327 F.3d at 967; *In re Washington Pub. Power Supply System*

11   *Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("[T]hose who benefit in the creation of a fund should

12   share the wealth with the lawyers whose skill and effort helped create it.")

13          Where counsel for a class seeks fees based on a percentage of the total settlement value,

14   courts most commonly use one of two methods to determine whether the request is reasonable:

15   "percentage-of-the-fund" or "lodestar/multiplier." *Staton*, 327 F.3d at 963-64; *Vizcaino*, 290 F.3d at

16   1048-49; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("*Hanlon*").  However, it

17   is clear that courts prefer a "percentage-of-the-fund" model over a "lodestar-multiplier" approach in

18   cases where it is possible to ascertain the value of the settlement. *See In Re Activision Securities*

19   *Litigation,* 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989) (holding that the percentage method is

20   preferred over the lodestar method and finding it encourages efficiencies and early resolution); s*ee*

21   *also In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 (9th Cir. 2011)

22   ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed

23   courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming

24   task of calculating the lodestar."); *In re Omnivision Techs, Inc*., 559 F. Supp. 2d 1036, 1046 (N.D.

25

26   *v. The Home Loan Group*, 2008 WL 3925854 (S.D. Cal. 2008) (same).

27          [8]    The 25% fee request is reasonable in this matter. *See, e.g., Morris v. Lifescan, Inc.*, 54 Fed.
     Appx. 663 (9th Cir. 2003) (approving award of 33% of settlement fund); and *Vasquez v. Coast*
28   *Roofing*, 2010 U.S. Dist. LEXIS 21159 (E.D. Cal. 2010) (same).

Cal. 2008) ("*Omnivision*") ("[U]se of the percentage method in common fund cases appears to be dominant.") "Though courts have discretion to choose which calculation method they use, their discretion must be exercised as to achieve a reasonable result." *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d at 942.

An empirical study, based on 18 years of published opinions on settlements in 689 common fund class action and shareholder derivative settlements in both state and federal courts found that: (1) 83 percent of cases employed the percentage-of-the-recovery method, and (2) the number of courts employing the lodestar method has declined over time, from 13.6 percent during 1993-2002 to 9.6 percent from 2003 to 2008. *Theodore Eisenberg & Geoffrey P. Miller, Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, 7 Journal of Empirical Legal Studies 248, at 267-69 (2010). *Accord,* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and their Fee Awards,* 7 Journal of Empirical Legal Studies, 2010 at 25 (finding, in a similar empirical study of 688 settlements approved by federal district courts during 2006 and 2007, nearly 69 percent of courts employed the percentage-of-the-settlement method, nearly 12 percent employed the lodestar method, and 20 percent did not report which method they used).

Significantly, California courts have awarded 25% *or more* of the settlement fund as attorneys' fees on numerous occasions. *See Graham et al. v. Overland Solutions, Inc.*, Case No. 10-CV-00672-BEN-BLM (S.D. Cal. Jan. 30, 2013) (30% in attorney's fees); *Boyce v. Sports and Fitness*, Case No. 03-CV-2140-BEN (BLM) (S.D. Cal. Jan. 24, 2006) (29% in attorneys' fees); *Adams v. AllianceOne*, Case No. 08-CV-0248-JAH (S.D. Cal. Sept. 28, 2012) (awarding $2.7 million in attorneys' fees in a TCPA class action, representing 30% of the settlement fund); *In re SeraCare Life Sciences, Inc. Securities Litigation*, No. 05-CV-02335-JLS-CAB (S.D. Cal. Sept. 24, 2008) (awarding $4,600,000 in attorneys' fees, representing 25% of the settlement fund); *Takas et al. v. A.G. Edwards & Sons, Inc.*, No. 04-CV-1852-JAH (NLS) (S.D. Cal. Nov. 5, 2007) (award of attorneys' fees in a TCPA class action in the amount of $6 million, representing 28.17% of the settlement fund); *Gutierrez v. Barclays Group*, No. 10-CV-01012-DMS-BGS (S.D. Cal. March 12, 2012) (awarding attorneys' fees in a TCPA class action in the amount of $1,580,000, representing

1  the 25% benchmark); *see also Langille v. EMC Corporation, Inc.*, No. 07-CV-0651 (S.D. Cal. July

2  9, 2008) (awarding 25% percent of settlement fund).

3  　　　Here, Class Counsel's request for fees is reasonable under—and warrants application of—

4  the percentage-of-the-fund analysis. The reasonableness of Class Counsel's fee award request is

5  confirmed by a lodestar plus multiplier cross-check, which courts in the Ninth Circuit may choose

6  to employ at their discretion.

7  　　　　　**1.**　　**The Requested Fee is Presumptively Reasonable Because it Resulted**

8  　　　　　　　　**from Arm's Length Negotiations**

9  　　　As the United States Supreme Court has explained: "A request for attorneys' fees should

10  not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."

11  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). While the Court must perform its own evaluation

12  to verify that the requested fees are reasonable and not the product of collusion, it should give weight

13  to the judgment of the parties and their counsel where, as here, the fees were agreed to at arm's

14  length negotiations after the parties agreed on the key deal terms. *See, e.g. In re Apple Computer,*

15  *Inc. Derivative Litig.*, 2008 U.S. Dist. LEXIS 108195, at *12 (N.D. Cal. Nov. 5, 2008). Here, Class

16  Counsel negotiated with Defendant to reach an agreed-upon fee amount that was deemed reasonable

17  based upon the benefits achieved for the class and applicable legal principles, and did so only after

18  the Parties reached an agreement on the other key terms. Further, the fee amount, like the settlement

19  itself, was agreed upon under the auspices and with the assistance of an experienced, well respected

20  former judge and mediator, the Honorable Susan Soussan (Ret.). This fact serves as "independent

21  confirmation that the fee was not the result of collusion or a sacrifice of the interests of the class."

22  *Hanlon*, 150 F.3d at 1029.[9] Under these circumstances, the Court may give weight to the judgment

23  of the parties and their counsel regarding reasonable fees.

24  　　　　[9]　　*Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009)
(approving a settlement after a one-day mediation before a retired federal judge and noting that

25  "the participation of an independent mediator in settlement negotiation virtually insures that the
negotiations were conducted at arm's length and without collusion between the parties");

26  *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010)
(approving settlement after a one-day mediation and noting that "the assistance of an experienced

27  mediator in the settlement process confirms that the settlement is non-collusive (emphasis added)";
*Larson v. Sprint Nextel Corp.*, 2010 WL 239934, at *11 (D.N.J. Jan. 15, 2010) (same); *Bert v. AK*

28

1          **2.      The Court Should Apply the Percentage-of-the-Fund Method**

2          The most fair and efficient way to calculate a reasonable fee where, as here, contingency-

3    fee litigation has produced a common fund is by awarding class counsel a percentage of the total

4    fund. 4 Herbert B. Newberg, *Newberg on Class Actions* § 14:6 (4th ed. 2002 and Supp. 2004)

5    ("*Newberg*"). There is a logical and important policy reason behind choosing to apply the

6    percentage-of-the-fund method, rather than the lodestar method, in common fund cases:

7                "Unlike the lodestar method which can encourage class counsel to devote

8                unnecessary hours to generate a substantial fee, under the [percentage-of-

9                the-fund] method, the more the attorney succeeds in recovering money for

10               the client, and the fewer legal hours expended to reach that result, the higher

11               dollar amount of fee the lawyer earns. Thus, one of the primary advantages

12               of the [percentage-of-the-fund] method is that it is thought to equate the

13               interests of class counsel with those of the class members and encourage

14               class counsel to prosecute the case in an efficient manner."

15   *Id.*

16         The percentage-of-the-fund method comports with the legal marketplace, where counsel's

17   success is frequently measured in terms of the result counsel has achieved. *See Swedish Hosp. Corp.*

18   *v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases "the monetary amount of the

19   victory is often the true measure of [counsel's] success"). By assessing the amount of the fee in

20   terms of the amount of the benefit conferred on the class, the percentage method "more accurately

21   reflects the economics of litigation practice" which "given the uncertainties and hazards of litigation,

22   must necessarily be result-oriented." *Id.* Moreover, it most efficiently aligns the incentives of the

23   class members and their counsel and thus encourages counsel to spend their time efficiently, and to

24   focus on maximizing the relief available to the class, rather than their own lodestar hours. *Vizcaino,*

25   _____

26   *Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008); 2 McLaughlin on Class Actions
     § 6:7 (8th ed) ("A settlement reached after a supervised mediation receives a presumption of

27   reasonableness and the absence of collusion (emphasis added)."); and, *Dennis v. Kellogg Co.*, 2010
     WL 4285011, at *4 (S.D. Cal. Oct. 14, 2010) (the parties engaged in a "full-day mediation

28   session," thus establishing that the proposed settlement was noncollusive (emphasis added).").

1   290 F.3d at 1050 fn. 5; *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989).

2   Finally, it comports with the established practice in the private legal market to reward attorneys for

3   taking the risk of nonpayment by paying said attorneys a premium for successfully resolving

4   contingency-fee cases. *See In re Washington*, 19 F.3d at 1299; *see Newberg* § 14:6. "[I]f this 'bonus'

5   methodology did not exist, very few lawyers could take on the representation of the class client

6   given the investment of substantial time, effort, and money, especially in light of the risks of

7   recovering nothing." *In re Washington*, 19 F.3d at 1300 (quoting *Behrens v. Wometco Enter., Inc.*,

8   118 F.R.D. 534, 548 (S.D. Cal. 1988) aff'd, 899 F.3d 21 (11th Cir. 1990)).

9        For these reasons, the percentage-of-the-fund method is applied more frequently than the

10   lodestar-plus-multiplier method in common fund cases in the Ninth Circuit. "[U]se of the percentage

11   method in common fund cases appears to be **dominant**." *Omnivision*, 559 F. Supp. 2d at 1046

12   (emphasis added).

13       Thus, Class Counsel requests that the Court use the standard percentage-of-the-fund

14   approach to determining the award of attorneys' fees in this action.

15   **3.    Class Counsel's Fee Request is Warranted under the Percentage-of-the-**

16   **Fund Method**

17       Class Counsel's request for an award of $165,000 in attorneys' fees (which equals 25%

18   of the common fund created for the class) and reimbursement of $9,185.33 in costs —is fair

19   and reasonable under the circumstances of this case. In the Ninth Circuit the "benchmark"

20   percentage is 25% of the common fund with costs and expenses awarded on top of this amount.

21   Moreover, courts in this circuit often award a percentage of the fund that is greater than the 25%

22   benchmark. *Omnivision*, 559 F. Supp. 2d at 1047 ("[I]n most common fund cases, the award exceeds

23   th[e] benchmark."); *see also Vizcaino*, 290 F.3d at 1048-1050 (awarding 28%); *Garner v. State*

24   *Farm*, 2010 U.S. Dist. LEXIS 49482, at *5-6 (N.D. Cal. Apr. 22, 2010) (awarding 30%); *Knight v.*

25   *Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 1149, at*17 (N.D. Cal. Feb. 2, 2009) (same).[10] Based

26   on this authority, Class Counsel's request for the benchmark award is conservative and justifiable.

27

28       [10]   *See also In re Mego*, 213 F.3d at 457, 463 (9th Cir. 2000) (affirming fee award of one-third of common fund); *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, 2005 U.S. Dist. LEXIS

1   Courts consider a number of factors to determine the appropriate percentage to apply,

2   including: (a) the results achieved; (b) the risk of litigation; (c) the skill required and the quality of

3   work; (d) the contingent nature of the fee; and, (e) awards made in similar cases. *Vizcaino*, 290 F.3d

4   at 1048-1050; *Omnivision*, 559 F. Supp. 2d at 1046. Plaintiff contends that all of these factors favor

5   approval of the Plaintiff's 25% fee award requested here.

6   **(a)   Class Counsel obtained an excellent result**

7   The results obtained for the class are generally considered to be the most important factor

8   in determining the appropriate fee award in a common fund case. *See Hensley v. Eckerhart*, 461

9   U.S. 424, 435 (1983); *Omnivision*, 559 F. Supp. 2d at 1046; *see also* Federal Judicial Center, *Manual*

10   *for Complex Litigation*, § 27.71, p. 336 (4th Ed. 2004) (the "fundamental focus is on the result

11   actually achieved for class members") (citing Fed. R. Civ. P. 23(h) committee note).  Standing alone,

12   this factor supports Class Counsel's fee request.  As stated above, the settlement required Defendant

13   to pay $660,000.00 into a non-reversionary common fund. This settlement achieved by Class

14   Counsel provides significant monetary relief for class members despite numerous decisions that

15   have refused to certify such class actions. *See Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587 (2013).

16   Furthermore, the fact that the Settlement Fund does not constitute the maximum measure of statutory

17   damages potentially available to the Class does not merit deviation from the 25% benchmark. "The

18   proposed settlement is not to be judged against a hypothetical or speculative measure of what might

19   have been achieved by the negotiators" because "the very essence of a settlement is compromise, a

20   yielding of absolutes and abandoning of highest hopes." *Linney v. Cellular Alska Partnership*, 151

21   F.3d 1234, 1242 (9th Cir. 1998) ("*Linney*"); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

22   454, 459 (9th Cir. 2000) (settlement of only a fraction of potential recovery fair given nature of

23   claims and facts of case.  This is particularly true where, as here, the settlement was reached at

24   arm's length through protracted negotiations by experienced counsel before an experienced mediator

25   _____

26   13627, at *29 (C.D. Cal. June 10, 2005) (awarding one-third of fund); *In re M.D.C. Holdings Sec. Litig.*, 1990 U.S. Dist. LEXIS 15488, at *21, 32 (S.D. Cal. Aug. 30, 1990) (awarding 30% fee

27   where settlement obtained "in a very short amount of time" and finding that class counsel should be rewarded, not penalized, for achieving early success on behalf of the class).

28

1    and former judge. Moreover, the parties were only able to resolve the dispute following extensive

2    factual investigation, confirmatory discovery of the claims and issues, and after taking into

3    consideration the risks involved in the action. Thus, the requested 25% award is reasonable.

4    **(b)    The risks of litigation support the requested fee**

5    "The risk that further litigation might result in Plaintiffs not recovering at all, particularly a

6    case involving complicated legal issues, is a significant factor in the award of fees." *Omnivision*,

7    559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048 (risk of dismissal or loss on class

8    certification is relevant to evaluation of a requested fee).

9    Here, there was a realistic risk that the Court would refuse to certify the class based upon

10   individualized issues of consent and/or individualized questions of whether the class was

11   ascertainable. While Plaintiff believes the law is in his favor on this matter, Plaintiff is also aware

12   of cases that reject this position, although on seemingly distinguishable grounds.

13   Moreover, there is the risk of losing a jury trial, and even if Plaintiff did prevail, any

14   recovery could be delayed for years by an appeal. Despite these numerous issues the settlement

15   provides a substantial benefit to class members without further delay which renders Class Counsel's

16   fee award request reasonable.

17   **(c)    The requisite skill and quality of work support the fee**

18   The "prosecution and management of a complex class action requires unique legal skills

19   and abilities" that are to be considered when evaluating fees. *Omnivision*, 559 F. Supp. 2d at 1047.

20   Class Counsel are experienced class action litigators who have successfully prosecuted complex

21   consumer cases, and who have become particularly skilled and experienced in litigating privacy

22   related class actions. *See Hughes Decl.*, **Ex. 2**. In addition, Class Counsel spent significant time

23   thoroughly investigating the factual and legal claims involved in this Action, including during

24   confirmatory discovery.

25   The hourly rates sought here are justified in this legal community as other plaintiff's counsel

26   with similar experience are awarded fees at a higher rate, and rates charged by other firms are indeed

27   higher than the rates charged here. *See* NATIONAL LAW JOURNAL, *Annual Law Firm Billing Survey*,

28   (January 5, 2015). That survey indicates that most California law firms in the survey, or California

1  offices of national law firms, have median billing rates for partners that clearly support the $625/hour

2  sought here by Class Counsel.[11]

3        Plaintiff submits the hourly rate of $625 sought to be confirmed by Class Counsel on behalf

4  of the Representative Plaintiff and the Class is reasonable and within the hourly rates charged for

5  the same services within the community are entirely fair and reasonable given counsel's experience,

6  qualifications and expertise.

7        Class Counsel's skill and expertise, reflected in the prompt and significant settlement,

8  support the fee request.

9              **(d)**      **The undertaking of this action on a contingency-fee basis**

10                            **supports the requested fee**

11        The Ninth Circuit has long recognized that the public interest is served by rewarding

12  attorneys who assume representation on a contingent basis to compensate them for the risk that they

13  might be paid nothing at all for their work. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19

14  F.3d at 1299 ("Contingent fees that may far exceed the market value of the services if rendered on

15  a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent

16  representation for Plaintiffs who could not afford to pay on an hourly basis regardless of whether

17  they win or lose"); *Vizcaino*, 290 F.3d at 1051 (courts reward successful class counsel in contingency

18  cases "for taking risk of nonpayment by paying them a premium over their normal hourly rates").

19  Class Counsel prosecuted this matter on a purely contingent basis while agreeing to advance all

20  necessary expenses and knowing that Class Counsel would only receive a fee if there was a recovery.

21  In pursuit of this litigation, Class Counsel have spent considerable outlays of time and money by,

22  among other things, (1) investigating the action; (2) conducting legal research relating to the alleged

23  

---

24      [11]   According to the NATIONAL LAW JOURNAL, almost three years ago in October of 2014, partners at California law firms were billing far in excess of $625/hour. For example, IRELL &

25  MANELLA in Los Angeles billed its partners out at an average rate of $890/hour, with a low of $800/hour and a high of $975/hour. (Ranked #18) MORRISON & FOERSTER in San Francisco was

26  billing its partners out at an average rate of $865/hour, with a low of $595/hour and a high of $1,195/hour. (Ranked #21) COOLEY in Palo Alto billed its partners out at an average $820/hour,

27  with a low of $660/hour and a high of $990/hour. (Ranked #29) MANATT, PHELPS & PHILLIPS in Los Angeles was billing its partners out at an average rate of $740/hour, with a low of $640/hour

28  and a high of $795/hour. (Ranked #47)

1   claims; (3) conducting discovery; (4) negotiating the settlement, including a full-day mediation; (5)

2   assisting in the administration of the Settlement; and (6) responding to class members' inquiries.

3       Class Counsel expended these resources despite the risk that Class Counsel would never be

4   compensated at all. Thus, Class Counsel's "substantial outlay, when there is a risk that none of it

5   will be recovered, further supports the award of the requested fees" in this matter. *Omnivision*, 559

6   F. Supp. 2d at 1047.

7       **4.   A Lodestar-Plus Multiplier Cross-Check Supports the Requested Fees**

8       A court applying the percentage-of-the-fund method may use the lodestar method as a

9   "cross-check on the reasonableness of a percentage figure." *Vizcaino*, 290 F.3d at 1050.  However,

10   a cross-check is optional.  *See Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476, at *48 (N.D.

11   Cal. Jan. 26, 2007) (finding that "where the early settlement resulted in a significant benefit to the

12   class," there is no need "to conduct a lodestar cross-check").  If the Court chooses to perform such

13   a cross-check in this matter, it will confirm that a 25% fee award is reasonable.

14       The first step in the lodestar-multiplier approach is to multiply the number of hours counsel

15   reasonably expended by a reasonable hourly rate. *Hanlon*, 150 F.3d at 1029.  Once this raw lodestar

16   figure is determined, the Court may then adjust that figure based upon its consideration of many of

17   the same "enhancement" factors considered in the percentage-of-the-fund analysis, such as: (1) the

18   results obtained; (2) whether fee is fixed or contingent; (3) the complexity of the issues involved;

19   (4) the preclusion of other employment due to acceptance of the case; and (5) the experience,

20   reputation, and ability of the attorneys. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th

21   Cir. 1975) ("*Kerr*").[12]

22       **(a)   Class Counsel's lodestar is reasonable**

23       The accompanying declaration of Class Counsel set forth the hours of work and billing rates

24   used to calculate their lodestar. As described in said declaration, Class Counsel and their staff have

25

26   ───────────────

[12]   The risk inherent in contingency representation is a critical factor. The Ninth Circuit

27   stresses that "[i]t is an abuse of discretion to fail to apply a risk multiplier when...there is evidence that the case was risky." *Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002); *see also Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *16 (N.D. Cal. 2007).

28

1   devoted a total of 269.3 hours to this litigation, and have a total lodestar to date of approximately

2   $157,037.50. *See Hughes Decl.* ¶¶ 34-44, **Ex. 2**. These amounts do not include the additional time

3   that Class Counsel will spend going forward in implementing the settlement, including overseeing

4   claims administration generally, tasks that can require substantial additional hours not reflected in

5   the multiplier calculated on the current lodestar.

6       Based upon the above, Class Counsel's lodestar is reasonable. Class Counsel prosecuted

7   the claims at issue efficiently and effectively, making every effort to prevent the duplication of work

8   that might have resulted from having multiple firms working on this case. Further, tasks were

9   delegated appropriately among partners and other staff according to their complexity such that the

10  attorneys with higher billing rates billed time only where necessary. In addition, Class Counsel's

11  contemporaneous time records were carefully reviewed and duplicative work was deleted.

12      Similarly, Class Counsel's hourly rates are also reasonable. In assessing the reasonableness

13  of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing

14  in the community for similar services by lawyers of reasonably comparable skill, experience and

15  reputation." *Blum v. Stevenson*, 465 U.S. 886, 895, n.11 (1994); *see also Davis v. City and County*

16  *of San Francisco*, 976 F.3d 1536, 1546 (9th Cir. 1992); and, *Serrano v. Unruh*, 32 Cal. 3d 621, 643

17  (1982). Class Counsel here are experienced, highly regarded members of the bar with extensive

18  expertise in the area of class actions and complex litigation involving consumer claims like those at

19  issue here.

20          **(b)     A multiplier is warranted**

21      The benchmark 25% fee requested by Class Counsel reflects a multiplier of 1.05.  Of note,

22  Courts regularly approve fee awards resulting in multipliers which are significantly higher than the

23  requested multiplier in this matter. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th

24  Cir. 2002) (affirming 28% fee award where multiplier equaled 3.65; and, citing cases approving

25  multipliers in common fund cases going as high as 19.6); *Steiner v. Am. Broad. Co.*, 248 Fed. Appx.

26  780, 783 (9th Cir. Cal. 2007) (upholding 25% fee award yielding multiplier of 6.85, finding that it

27  "falls well within the range of multipliers that courts have allowed"); *Craft v. County of San*

28  *Bernardino*, 624 F. Supp. 1113, 1125 (C.D. Cal. 2008) (approving 25% fee award yielding a

1    multiplier of 5.2 and stating that "there is ample authority for such awards resulting in multipliers in

2    this range or higher").[13]

3         Here, the exceptional monetary relief obtained for the Class; the risks involved with

4    continued litigation; the contingent nature of the fee; the arm's-length nature of difficult and

5    protracted negotiations; and the experience of Class Counsel in litigating privacy class actions,

6    justify a significant multiplier. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.3d at 70; *In re*

7    *Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291, 1299-1300 (9th Cir.

8    1994) ("[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common

9    fund cases" in accord with the "established practice in the private legal market of rewarding

10   attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly

11   rates for winning contingency cases").  A lodestar-plus-multiplier cross-check therefore further

12   supports the reasonableness of the requested 25% fee. In addition, multipliers are effective in

13   encouraging effective counsel to take cases that lack the possibility of fee shifting.  Here, there is no

14   fee-shifting statute and no plaintiff would likely pay any attorney's hourly rate if the potential benefit

15   is limited to a maximum of only $1,500.  Thus, it is unlikely that a consumer would be able to retain

16   counsel to pursue this particular cause of action. *See Pennsylvania v. Delaware Valley Citizens'*

17   *Council for Clean Air*, 483 U.S. 711, 717-19 (1987); and, *Fadhl v. City and County of San Francisco*,

18   859 F.2d 649 (9th Cir. 1986).

19        **B.**     **The Payment of Costs is Fair and Reasonable**

20        Throughout the course of this litigation, Class Counsel had to incur substantial costs totaling

21   $9,185.33. *See Hughes Decl.* ¶¶ 34-44, **Ex. 2**. These costs were necessary to secure the resolution

22

23        [13]   *See also Di Gacomo v. Plains All Am. Pipeline*, 2001 U.S. Dist. LEXIS 25532, at *31 (S.D.

24   Tex. Dec. 18, 2001) (awarding 30% of fund resulting in multiplier of 5.3); *Craft v. County of San*
     *Bernardino*, 624 F. Supp. 1113, 1123-27 (C.D. Cal. 2008)  (awarding 25% of fund which

25   amounted to 5.2  multiplier, in part because of the numerous drawbacks and disincentives
     associated with a pure lodestar approach; and, *Lopez v. Youngblood*, 2011 U.S. Dist. LEXIS 99289,

26   at *10, 39-43 (E.D. Cal., Sept. 2, 2011) (citing *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1266-

27   67 (D.C. Cir. 1993)) (awarding 28.5% of fund and finding that a lodestar cross-check is "not a
     useful reference point").

28

1  of this litigation; thus Class Counsel put forward said costs without assurance that Class Counsel

2  would ever be repaid. "Reasonable costs and expenses incurred by an attorney who creates or

3  preserves a common fund are reimbursed proportionately by those class members who benefit from

4  the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)

5  (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970).  The modest litigation

6  expenses Class Counsel incurred in this case were necessary to secure the resolution of this litigation.

7  *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding

8  that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs,

9  computerized legal research fees, and mediation expenses are relevant and necessary expenses in

10  class action litigation). Based upon the discussion herein, Class Counsel contend that the costs

11  incurred in this matter are fair and reasonable.

12        **C.**    **Plaintiff's Incentive Award is Reasonable**

13        In recognition of Plaintiff's time and effort serving as class representative, class counsel is

14  requesting the Court grant an incentive award of $10,000. *See* Stipulation of Settlement ¶ 25, **Ex. 1**.

15  Defendant PEM has agreed not to oppose this request. Defendant's records indicate Robinson was

16  called twelve (12) times by PEM on his cellular telephone. If this case proceeded to trial, then

17  Plaintiff's statutory damages for willful violations would equal $18,000 (12 calls x $1,500).

18  Moreover, Robinson lives and works in Austin, Texas and incurred travel costs and time away from

19  work to attend the mediation of this case in Houston.

20        As the Ninth Circuit has recognized, "named Plaintiffs, as opposed to designated class

21  members who are not named Plaintiffs, are eligible for reasonable incentive payments." *Staton*, 327

22  F.3d at 977; *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service awards

23  "are fairly typical in class action cases"). Such awards are intended to compensate class

24  representatives for work done on behalf of the class [and] make up for financial or reputational risk

25  undertaken in bringing the action." *Id*. Small incentive awards, such as those requested here, promote

26

27

28

1  the public policy of encouraging individuals to undertake the responsibility of representative

2  lawsuits. The requested modest service award of $10,000 for Plaintiff is well justified.[14]

3         In addition to lending his name to this matter, and thus subjecting himself to public

4  attention, the named Plaintiff was actively engaged in this case from the start. Among other things,

5  he (1) provided information to Class Counsel for the Complaints and other pleadings; (2) reviewed

6  pleadings and other documents; (3) assisted in preparing confirmatory discovery; (4) traveled to

7  Houston to attend the mediation; (5) communicated on a regular basis with counsel and kept himself

8  informed of progress in the litigation and settlement negotiations; (6) made himself available for

9  mediation; and, (7) reviewed and approved the proposed settlement. Robinson's dedication to this

10  action was notable, particularly given the relatively modest personal financial stakes in this case. *See*

11  *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (awarding $100,000

12  incentive award in part on the ground that, "[i]n exchange for his participation, Van Vraken will not

13  receive great personal benefit").

14         Additionally, the amount is reasonable as compared to other class actions awarding

15  incentive payments. *See Opson v. Hanesbrands Inc.*, 2009 U.S. Dist. LEXIS 33900, at *27-28 (N.D.

16  Cal. Apr. 3, 2009) (awarding $5,000 incentive payment and finding that "in general, courts have

17  found that $5,000 incentive payments are reasonable"); *Ordick v. UnionBancCal Corp.*, 2012 U.S.

18  Dist. LEXIS 171413, at *11 (N.D. Cal. Dec. 3, 2012) (awarding $5,000 to named Plaintiffs where

19  "the settlement was reached at the early stages of litigation"); *Fitzgerald v. City of Los Angeles*, 2003

20  U.S. Dist. LEXIS 27382, at *9 (C.D. Cal. Dec. 8, 2003) (awarding $3,500 each to class

21

22  _____

      [14]   Courts have long recognized that a class representative should be compensated for their

23  service to the class. *In re Mego Fin. Corp. Sec. Lit.*, 2123 F.3d 454, 463 (9th Cir. 2000); *West v.

      Circle K Stores, Inc.*, 2006 U.S. Dist. LEXIS 76558, at *26 (E.D. Cal. 2006). Such compensation

24  provides the economic motivation to induce potential plaintiffs to lend their names and support to

      class actions generally. *West*, 2006 U.S. Dist. LEXIS 76558, at *26. And the same incentive fees

25  further ensure that meritorious actions are prosecuted to completion. *Linney v. Cellular Alaska*

      *Part.*, 1997 U.S. Dist. LEXIS 24300, at *23 (N.D. Cal. 1997). A court should order an incentive

26  award when it finds that it is not the product of collusion and does not come at the expense of the

      remaining members of the class. *Louie v. Kaiser Found. Health Plan, Inc.*, 2008 U.S. Dist. LEXIS

27  78314, at *17-18 (S.D. Cal. 2008).

28

representatives in early settlement case). Thus, Class Counsel respectfully requests the Court to approve an incentive award of $10,000 to Robinson.

## VI.     CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court grant Plaintiff's Motion for an award from the Settlement Fund of attorneys' fees and reimbursed costs in the total amount of $174,185.33 and an incentive award in the amount of $10,000 to Robinson.

Dated:  June 1, 2017.                                        Respectfully Submitted,

                                                             MATTHEW SCOTT ROBINSON,
                                                             individually and on behalf of the Class
                                                             of similarly situated individuals,


                                                             _____/s/ W. Craft Hughes_____
                                                             W. Craft Hughes (Admitted *Pro Hac Vice*)
                                                             craft@hughesellzey.com
                                                             Jarrett L. Ellzey (Admitted *Pro Hac Vice*)
                                                             jarrett@hughesellzey.com
                                                             HUGHES ELLZEY, LLP
                                                             Galleria Tower I
                                                             2700 Post Oak Boulevard, Suite 1120
                                                             Houston, TX 77056
                                                             Tel: (713) 554-2377
                                                             Fax: (888) 995-3335

                                                             Michael R. Dufour – SBN 290981
                                                             mdufour@swlegalgrp.com
                                                             SOUTHWEST LEGAL GROUP
                                                             22440 Clarendon Street, Suite 200
                                                             Woodland Hills, CA 91367
                                                             Tel: (818) 591-4300
                                                             Fax: (818) 591-4315

                                                             *Counsel for Plaintiff and the Putative Class*

1

## <u>CERTIFICATE OF SERVICE</u>

2          I certify that on <u>June 1, 2017</u>, a copy of the foregoing document was filed in accordance

3    with the protocols for e-filing in this district, and will be served pursuant to Rule 5 of the FEDERAL

4    RULES OF CIVIL PROCEDURE on all counsel of record who have consented to electronic notification

5    *via* CM/ECF.

6

7          Michael E. Chase
           mchase@boutinjones.com

8          Bashar S. Ahmad
           bahmad@boutinjones.com

9          Gabrielle D. Boutin
           gboutin@boutinjones.com

10         BOUTIN JONES INC.
           555 Capital Mall, Suite 1500

11         Sacramento, CA 95814
           *Attorneys for Defendant,*

12         *Paramount Equity Mortgage, LLC*

13

14                                                      _____*/s/ W. Craft Hughes*_____

15                                                      W. Craft Hughes

16

17

18

19

20

21

22

23

24

25

26

27

28